FILED

2013 APR - 1  PM 12: 45

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

3: 13 CV 704

JUDGE ZOUHARY

| | |
|---|---|
| United States of America, | ) Case No. |
| *ex rel.* **Advocates for Basic Legal** | ) |
| **Equality, Inc.** | ) Judge |
| | ) |
| | ) **COMPLAINT** |
| **Plaintiffs,** | ) **FILED UNDER SEAL** |
| | ) **PURSUANT TO 31 U.S.C. § 3730 (b)(2)** |
| **v.** | ) |
| | ) **DO NOT PLACE ON PACER** |
| **U.S. Bank, N.A.** | ) |
| | ) **DO NOT PLACE IN PRESS BOX** |
| **Defendant.** | ) |

## Preliminary Statement

1.  This is a civil action brought by Advocates for Basic Legal Equality, Inc.

("ABLE" or "Relator"), on behalf of itself and the United States of America ("United

States") against U.S. Bank, N.A. ("U.S. Bank") to recover, under the False Claims Act,

31 U.S.C. §§ 3729 *et seq.* (the "False Claims Act"), damages sustained by, and penalties

owed to, the United States as the result of U.S. Bank having knowingly presented or

caused to be presented to the United States false claims in order wrongfully to collect

insurance payments from the Federal Housing Administration ("FHA"), a constituent

office of the U.S. Department of Housing and Urban Development ("HUD").

2.  The FHA mortgage insurance program seeks to incentivize private

mortgagees, such as U.S. Bank, to extend mortgages at prevailing rates to low- and

moderate-income mortgagors who, while otherwise creditworthy, might not be able to

secure home mortgages on the private market without the benefit of the FHA insurance. In the event of a mortgagor default and foreclosure, the mortgagee may apply to the FHA for insurance benefits to make it whole.

3.  All of Relator's allegations herein concern properties on which U.S. Bank foreclosed and for which it acquired and conveyed title to HUD, as distinguished from other routine mortgage servicing violations.  On information and belief, U.S. Bank made at least 22,586 such conveyance-based claims between 2001 and 2011, and received at least $2,365,601,626 for those claims.

4.  Because of the potential large expense to the Federal Government, HUD does not permit mortgagees to pursue claims for insurance based on foreclosure and conveyance-based claims without fulfilling certain regulatory prerequisites, and has grounds for denying such claims in the event of foreclosures and conveyances achieved without meeting such prerequisites.

5.  As a condition of payment of each of the conveyance-based claims mentioned in the previous two paragraphs, statutes, regulations, contracts and HUD Mortgagee Letters required U.S. Bank to undertake HUD-specified measures to minimize the amount of insurance benefits claimed.

6.  In addition, HUD has required U.S. Bank, since at least 1998, to provide periodic certifications that it has conducted, and will conduct, its FHA-insured lending activities in strict conformance with FHA's requirements.

7.  The FHA provisions at issue in this litigation require U.S. Bank to pursue alternatives to foreclosure in order to minimize the instances in which the federal government must pay insurance benefits to mortgagees when insured loan balances

2

exceed the value of a foreclosed property, and to minimize the payments of such benefits even in circumstances where foreclosure is appropriate.

8.  Pursuant to 24 C.F.R. § 203.606, before U.S. Bank can foreclose upon an FHA-insured loan, and before it can make application for insurance benefits, it must take affirmative steps to determine whether the mortgagor can cure any deficiencies and avoid foreclosure.  These steps include those identified at 24 C.F.R. § 203.604 and 24 C.F.R. § 203.605 and are referred to hereafter as "Loss Mitigation Measures."

9.  FHA's Loss Mitigation Measures protect the FHA and the U.S. Treasury against unwarranted claims for insurance proceeds by mortgagees who have not fulfilled those requirements.

10. As a necessary component of engaging in Loss Mitigation Measures, prior to foreclosing on an FHA-insured mortgage, U.S. Bank is obliged to meet face-to-face with the mortgagor, in order to determine the cause of the default, obtain financial information, establish a repayment schedule, and explore alternatives to foreclosure by seeking to influence the payment habits of mortgagors.  *See* 24 C.F.R. § 203.604.

11. U.S. Bank could not be an eligible FHA mortgagee, and therefore could not have received any insurance payments, without certifying that it would comply with these FHA requirements.

12. Over a period of at least ten years preceding the filing of this Complaint (the "False Claims Period"), U.S. Bank has routinely certified to HUD that it was in full compliance with the requirements mentioned above while, in actuality, it regularly and knowingly disregarded these requirements while annually foreclosing on thousands of FHA-insured loans throughout the country.

3

13. As part of its mission to assist homeowners facing foreclosure, ABLE has consulted with many people whose mortgage loans U.S. Bank foreclosed upon without fulfilling its requirement to engage in the Loss Mitigation Measures.

14. Through these consultations, ABLE has identified multiple representative examples of U.S. Bank's knowing false claims with respect to its compliance with the FHA regulations and entitlement to mortgage insurance benefits. On information and belief, the uniform consistency of U.S. Bank's disregard of the FHA regulations in these instances is representative of its disregard of the regulations with respect to the more than 22,000 instances of foreclosure and application for mortgage insurance benefits mentioned above.

15. ABLE has unique information about how these FHA mortgagors were repeatedly and routinely denied the Loss Mitigation Measures, as required by 24 C.F.R. §§ 203.604 and 203.605, and allegations and transactions alleged herein concerning U.S. Bank's knowingly false claims have not been publicly disclosed.

16. ABLE's own unique contacts, experiences, research, and investigation have confirmed that U.S. Bank's pattern of false certifications and false claims extended to its branches throughout Ohio as illustrated by the characteristic examples provided herein.

17. ABLE's contacts, experiences, and investigation revealed evidence of consistent and widespread failure by U.S. Bank to comply with a broad range of loss mitigation measures required by statutes, regulations, handbooks, and certifications applicable to U.S. Bank.

4

18.     Moreover, because U.S. Bank has standardized its servicing operations throughout the nation, ABLE is informed and believes that U.S. Bank's false certifications and requests for payment from the United States have involved foreclosed properties located across the nation.

19.     Through its knowing noncompliance with HUD regulations governing the FHA mortgage insurance program, during the False Claims Period, U.S. Bank dispossessed more than 22,000 mortgagors who, with the benefit of the FHA requirements, may have avoided a costly foreclosure and retained ownership of their homes.

20.     After foreclosing on these properties, U.S. Bank acquired them and conveyed them to HUD. Because of the decline in housing values and the nature of post-foreclosure sales, HUD was forced to resell the conveyed properties at significant losses, while providing U.S. Bank with a payment of FHA insurance benefits.

21.     On information and belief, during the False Claims Period, U.S. Bank knowingly presented claims to HUD for, and received, more than $2.3 billion in FHA mortgage insurance benefits to which it was not entitled because of its noncompliance with HUD's regulations.

## Jurisdiction and Venue

22. This Court has jurisdiction over the claims brought herein pursuant to 28 U.S.C §§ 1331 and 1345, and 31 U.S.C. § 3730.

23. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as well as 31 U.S.C. § 3732(a), because U.S. Bank is located in this District, U.S. Bank does business in this District, and some of the acts complained of herein took place in this

District.

24. To the best of ABLE's knowledge, prior to the filing of its Complaint under seal, there had been no public disclosure of the allegations or transactions contained in this Complaint. In the event that a public disclosure has occurred, ABLE is an original source as that term is used in the False Claims Act.

25. Prior to filing this Complaint, ABLE made a comprehensive disclosure to the government containing substantially all of the allegations made herein, as well as supporting documents, by service on the Attorney General and the U.S. Attorney for the Northern District of Ohio, as prescribed by the False Claims Act and the Federal Rules of Civil Procedure.

## Parties

26. Advocates for Basic Legal Equality ("ABLE") is an Ohio non-profit corporation dedicated to providing high-quality legal advocacy in civil matters to help low-income individuals and groups in western Ohio achieve self-reliance, equal justice, and economic opportunity. In furtherance of its mission, ABLE advocates for low- and moderate-income families who participate as mortgagors in the FHA single-family insured mortgage program.

27. Defendant U.S. Bank is a for-profit corporation with offices throughout the United States. U.S. Bank is the fifth largest commercial bank in the United States and is nationally chartered and regulated by the U.S. Department of Treasury, Office of the Comptroller of the Currency. Through its corporate predecessors, U.S. Bank has conducted banking activities since 1863. U.S. Bank currently originates or services thousands of FHA-insured home mortgages each year through standardized nationwide

practices. In order to track U.S. Bank's administration of FHA loans, HUD has assigned to U.S. Bank a unique institution ID number, 16001.

## Statutory and Regulatory Framework

### A.     The FHA Mortgage Insurance Program.

28. Pursuant to the National Housing Act of 1934, FHA offers a number of single-family mortgage insurance programs, designed to incentivize private mortgagees to provide mortgage loans to low- and moderate-income mortgagors who might not otherwise qualify for mortgage loans in the conventional mortgage market.

29. FHA mortgage insurance programs help low- and moderate-income families become homeowners by lowering some of the costs of their mortgage loans. FHA mortgage insurance encourages mortgagees to make loans to otherwise creditworthy mortgagors that might not meet conventional underwriting requirements by protecting the mortgagees against defaults on mortgages.

30. To qualify for an FHA-insured mortgage, a mortgagor must meet applicable HUD requirements related to creditworthiness, and must be seeking to purchase a home with a valuation within prescribed parameters.

31. In order to be an eligible mortgagee in the FHA-insured mortgage program, a mortgagee must agree to service such loans in accordance with HUD regulations.

32. Because of the cost of foreclosure and conveyance-based insurance claims, HUD requires mortgagees like U.S. Bank to reduce HUD's risk and to minimize the need for HUD to pay insurance benefits by engaging in Loss Mitigation Measures, which include conducting a face-to-face meeting prior to foreclosing on an FHA-insured mortgage or applying for insurance benefits.

33. Pursuant to 24 C.F.R. §§ 203.361, 203.500, and 203.606, U.S. Bank's eligibility to receive insurance benefits for foreclosure and conveyance-based claims is conditioned on compliance with the HUD-prescribed Loss Mitigation Measures.

34. The FHA mortgage insurance program accepts a fixed level of risk set by statute and HUD rules, and relies upon that level of risk in establishing appropriate mortgage insurance premiums to be paid by mortgagees to offset the costs of paying insurance claims.

35. From the outset of its participation in the FHA program, U.S. Bank has repeatedly certified that it has complied, and will continue to comply, with the statutes governing the FHA program, HUD's regulations, the requirements of its Secretary, handbooks, and Mortgagee Letters, including those related to Loss Mitigation Measures and face-to-face meetings.

**B.      An FHA-Insured Mortgagee Must Certify That it Will Pursue Loss Mitigation Measures.**

36. Beyond the obligation to comply with statutory and regulatory authorities governing the FHA single family insurance program, U.S. Bank must, with respect to each and every mortgage loan through the FHA program, enter into a binding contract with HUD, in which U.S. Bank agrees to comply with HUD's regulations:

> [Upon initiation of insurance on each mortgage,] [t]he Commissioner and the mortgagee are thereafter bound by the regulations in this subpart with the same force and to the same extent as if a separate contract had been executed relating to the insured mortgage, including the provisions of the regulations in this subpart and of the Act.

24 C.F.R. § 203.257.

37. Pursuant to these contracts and regulations adopted by HUD, and in order to protect the financial integrity of the FHA program, a mortgagee must service FHA-

8

insured loans under strict guidelines, including the mandatory Loss Mitigation Measures,

to reduce costs to the United States.  12 U.S.C. § 1715u requires recipients of mortgage

insurance to engage in loss mitigation:

> Upon default or imminent default * * * of any mortgage insured * * * ,
> mortgagees shall engage in loss mitigation actions for the purpose of
> providing an alternative to foreclosure (including but not limited to actions
> such as special forbearance, loan modification, preforeclosure sale,
> support for borrower housing counseling, subordinate lien resolution,
> borrower incentives, and deeds in lieu of foreclosure, as required * * * ),
> as provided in regulations by the [HUD] Secretary.

12 U.S.C. § 1715u(a).

38. Pursuant to 12 U.S.C. § 1715u, HUD has promulgated regulations that require

mortgagees presenting foreclosure and conveyance-based claims to examine their

servicing actions and evaluate Loss Mitigation Measures that can reasonably be expected

to generate the smallest financial loss to HUD.  Specifically, 24 C.F.R. §§ 203.501 and

203.605 require an FHA-insured mortgagee to consider the following alternatives to

foreclosure:  deeds in lieu of foreclosure under 24 C.F.R. § 203.357; pre-foreclosure sales

under 24 C.F.R. § 203.370; partial claims under 24 C.F.R. § 203.414; assumptions under

24 C.F.R. § 203.512; special forbearance under 24 C.F.R. § 203.471 and 24 C.F.R.

§ 203.614; and recasting of mortgages under 24 C.F.R. § 203.616.

39. As a necessary and required part of engaging in Loss Mitigation Measures, 24

C.F.R. § 203.604(b) obligates the mortgagee to "have a face-to-face interview with the

mortgagor, or make a reasonable effort to arrange such a meeting, before three full

monthly installments due on the mortgage are unpaid."

40. HUD specifically defines the "reasonable effort" to arrange a face-to-face

meeting:

> A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

24 C.F.R. § 203.604(d).

41. HUD's regulations have required the face-to-face meeting as a part of the mortgage insurance program since 1976. *See* 41 Fed. Reg. 49738 (Nov. 10, 1976).

42. Through its regulations and handbooks, HUD reminds mortgagees that they must comply with these servicing requirements, including the face-to-face meeting, before initiating foreclosure proceedings. *See* 24 C.F.R. §§ 203.500, 203.606; *Administration of Insured Home Mortgages* (4330.1) ("HUD Handbook 4330.1"), Chapter 7, Section 7-6 (requirement of a "personal interview"); Chapter 7, Section 7-7 (same); Chapter 9, Sections 9-2 and 9-3 (mortgagee may not initiate foreclosure until it has exhausted all other options); *Mortgagee Approval Handbook* (4060.1) ("HUD Handbook 4060.1"), Chapter 7, Sections 7-1, 7-12, 7-12-N, 7-12-R; *Mortgagee's Guide to the Single Family Mortgage Insurance Process* (4155.2) ("HUD Handbook 4155.2"), Chapter 12, Section A.

### C. To Receive the Benefits of the FHA program, Mortgagees Must Promise to Comply with HUD Regulations, Handbooks and Mortgagee Letters.

43. From the outset of a mortgagee's involvement in the FHA program, the mortgagee must certify compliance with HUD regulations, handbooks, and mortgagee letters, as a condition of payment of insurance benefits.

### 1.    Initial Application to Administer FHA-Insured Loans.

44. In order to be approved to administer loans through the FHA program, the mortgagee must submit HUD Form 92001-A.  Form 92001-A requires the mortgagee to certify compliance with HUD regulations, FHA handbooks, and mortgagee letters throughout its participation in the FHA program.  In relevant part, Form 92001-A reads:

> I certify that, upon the submission of this application, and with its submission of each loan for insurance or request for insurance benefits, the applicant has and will comply with the requirements of the Secretary of Housing and Urban Development, which include, but are not limited to, the National Housing Act (12 U.S.C. 1702 *et seq.*) and, HUD's regulations, FHA handbooks, mortgagee letters, and Title I letters and policies with regard to using and maintaining its FHA mortgagee approval.

> \*       \*       \*       \*       \*

> I hereby certify that all of the information I have provided on this form and in any accompanying documentation is true and accurate to the best of my knowledge and belief. I acknowledge that if I knowingly have made any false, fictitious, or fraudulent statement, representation, or certification on this form or on any accompanying documents, I, as well as the applicant, may be subject to administrative action, as well as civil and criminal penalties, including fines and/or imprisonment, under applicable federal law, including but not limited to 18 U.S.C. §§1001, 1010, and 1012, and 31 U.S.C. §§3729 and 3802.

### 2.    Application for Approval of an FHA Branch Office.

45. After receiving approval to administer FHA insured mortgages, the mortgagee may apply for approval of multiple branch offices.  To obtain approval of a branch office, the mortgagee must submit HUD Form 92001-B.  In relevant part, HUD Form 92001-B reads:

> I certify this branch office meets all HUD/FHA requirements.

> \*       \*       \*       \*       \*

I hereby certify that all of the information I have provided on this form and in any accompanying documentation is true and accurate to the best of my knowledge and belief. I acknowledge that if I knowingly have made any false, fictitious, or fraudulent statement, representation, or certification on this form or on any accompanying documents, I, as well as the lender, may be subject to administrative action, as well as civil and criminal penalties, including fines and/or imprisonment, under applicable federal law, including but not limited to 18 U.S.C. §§1001, 1010, and 1012, and 31 U.S.C. §§3729 and 3802.

**D.     Once Approved to Participate in the FHA Program, the Mortgagee Must Regularly Certify That it has Complied, and Will Comply, with the Requirements of the Program to Continue to Receive its Benefits.**

46. To remain eligible to participate in the FHA-insured mortgage program, a mortgagee must submit an annual certification to HUD on each anniversary following the date of initial approval. *See* 24 C.F.R. § 202.3(b).

47. In its current form, FHA's annual certification form requires an FHA-approved mortgagee to certify as follows:

I certify that I know, or am in the position to know, whether the operations of the above-named lender conform to HUD-FHA regulations, handbooks, Mortgagee Letters, Title I Letters, and policies; and that I am authorized to execute this report on behalf of the lender.

I certify that the lender complied with and agrees to continue to comply with HUD-FHA regulations, handbooks, Mortgagee Letters, Title I Letters, policies, and terms of any agreements entered into with the Department.

I certify that to the best of my knowledge, the above-named lender conforms to all HUD-FHA regulations necessary to maintain its HUD-FHA approval, and that the above-named lender is fully responsible for all actions of its principals, owners, officers, directors, managers, supervisors, loan processors, loan underwriters, loan originators and all other employees conducting FHA business for the above-named lender in all of its offices where it performs any functions of an FHA-approved mortgagee.

*     *     *     *     *

12

Each of my certifications is true and accurate to the best of my knowledge and belief. I understand that if I knowingly have made any false, fictitious, or fraudulent statement(s), representations, or certification on this form, I may be subject to administrative, civil and/or criminal penalties; including debarment, fines, and imprisonment under applicable federal law.

Exhibit A.

**E.     In Order to Receive Insurance Benefits, the Mortgagee Must Present an Additional Certification of Compliance with FHA Program Requirements Through HUD Form 27011.**

48. If a mortgage loan defaults and the mortgagee forecloses, the FHA program allows the mortgagee to request insurance benefits. When a mortgagee forecloses on a property and conveys title to HUD, the mortgagee must submit HUD Form 27011 before it may receive a payment. HUD Form 27011 requires the mortgagee to sign a certification of compliance with HUD regulations.

49. HUD promulgates a handbook entitled "FHA Single Family Insurance Claims REV-1 (4330.4)" ("HUD Handbook 4330.4"). HUD Handbook 4330.4 explains Form 27011 and its certification, stating:

When submitting claims for benefits, HUD requires that an official of the mortgagee sign the claim certifying that all information and statements contained in the claim are true and correct. Mortgagees must ensure that all staff involved in the preparation of the claim understand the importance of that certification. The claim payment process relies on the accuracy of the claim application; any inaccurate information entered for the purpose of * * * obtaining unauthorized insurance benefits is considered a serious breach of the contract of insurance.

HUD Handbook 4330.4, Foreword.

Certification of Claim Accuracy.

*     *     *     *     *

The mortgagee official signing the Form HUD-27011 is certifying that all information and statements contained in the claim are true and correct.

13

> Entering information that is inaccurate for the purpose of avoiding an
> interest curtailment or obtaining unauthorized insurance benefits is in
> direct conflict with the certification that statements and information on the
> claim are true and correct.

HUD Handbook 4330.4, Chapter 1, Section 1-3.

**F.    Through Mortgagee Letters, HUD Repeatedly Reminds the
Mortgagee of its Obligation to Engage in Loss Mitigation Measures.**

50. HUD routinely sends Mortgagee Letters to clarify certain aspects of the FHA

program and to provide additional guidance and instructions for mortgagees in the FHA-

insured mortgage programs.  HUD has sent mortgagees, including U.S. Bank, the

following Mortgagee Letters that specifically remind each mortgagee of its obligations to

engage in Loss Mitigation Measures.  On information and belief, U.S. Bank and its

corporate predecessors received, and were aware of, each of the following:

a.    Mortgagee Letter 81-26, *Property Inspection Fees*, U.S. Department of
Housing and Urban Development (June 16, 1981) (the mortgagee must
attempt a face-to-face meeting as required by 24 C.F.R. § 203.604, but
expenses for this activity are not reimbursable through the FHA program);

b.    Mortgagee Letter 00-05, *Loss Mitigation Program – Comprehensive
Clarification of Policy and Notice of Procedural Changes*, U.S.
Department of Housing and Urban Development (January 19, 2000) ("To
meet the procedural requirements of the Loss Mitigation Program (24 CFR
203.355), lenders must become proactive early in the default.  The earlier
that the lender establishes contact with the borrower, identifies the cause
of default and begins to discuss reinstatement options, the more likely it is
that the default will be cured and the mortgagor will be able to retain home

14

ownership. Efforts to assist the borrower should begin as soon as the loan becomes delinquent * * * HUD's minimum collection requirements for mortgagor contact, described in Chapter 7 of the Handbook, have not changed.");

c. Mortgagee Letter 05-18, *Success of Loss Mitigation and Increase in Incentive Payments*, U.S. Department of Housing and Urban Development (April 26, 2005) ("Effective use of loss mitigation not only allows families to retain homeownership, it also significantly reduces the financial impact of foreclosure claims against the FHA Insurance Funds. The savings realized through loss mitigation are substantial and ultimately reduce the mortgage insurance premiums paid by all FHA-insured borrowers.");

d. Mortgagee Letter 08-27, *Treble Damages for Failure to Engage in Loss Mitigation*, U.S. Department of Housing and Urban Development (September 26, 2008) ("Treble Damages may be assessed when a mortgagee fails to engage in loss mitigation.")

e. Mortgagee Letter 10-04, *Loss Mitigation for Imminent Default*, U.S. Department of Housing and Urban Development (January 22, 2010) ("Loss Mitigation is critical to both borrowers and FHA because it works to fulfill the goal of helping borrowers retain homeownership while protecting the FHA Insurance Fund from unnecessary losses.").

**G.     The Mortgagee May Not Convey Property to HUD Unless it Has Complied with HUD's Regulations.**

51. A mortgagee who forecloses on and acquires a property may convey it to HUD in exchange for a payment only if it has complied with HUD regulations requiring that

15

the mortgagee determine that "such conveyance will comply with all of the provisions of this part conveying good marketable title and satisfactory title evidence." 24 C.F.R. § 203.358.

52. HUD will not accept title and may refuse the conveyance or convey the property back to the mortgagee if the mortgagee failed to comply with its regulations. *See* 24 C.F.R. § 203.361.

53. Unless the mortgagee accomplishes the foreclosure and conveyance in strict compliance with the above-referenced HUD regulations, HUD may hold claims processing in abeyance or refuse to process claims for insurance benefits.

## Facts

**A.     U.S. Bank's Certifications as an FHA Mortgagee.**

       **1.     From the Outset of its Approval as an FHA Mortgagee, U.S. Bank Promised to Comply with HUD's Regulatory Requirements.**

54. In order to become an eligible mortgagee in the FHA insurance program, U.S. Bank submitted a certification that it had complied, and would comply, with HUD regulations.

55. In 1998, under its former corporate name (Star Bank), U.S. Bank provided the following promise as part of its submission of HUD Form 11701:

> FHA Certification. The undersigned agrees that it will comply with the provisions of the HUD regulations and the requirements of the Secretary of HUD
>
> I certify that I am authorized to execute this application on behalf of the applicant (Must be signed by President, Vice President, or Partner)

Exhibit B.[1]

56. On information and belief, U.S. Bank has also submitted HUD Form 92001-A to HUD, which contains a similar certification.

57. In order to administer FHA loans at branch offices, U.S. Bank submitted HUD Form 92001-B to apply for approval of branch offices.  U.S. Bank promised in the form that the "branch office meets all HUD/FHA requirements."

58. Based on its promise of meeting HUD requirements, U.S. Bank requested and received approval for many branch offices throughout the United States, including branches in this District.

<div style="margin-left: 2em">

**2.  U.S. Bank's Annual Certifications of Past and Future Compliance with HUD's Regulations, Handbooks, and Mortgagee Letters Were False Statements or Claims Made to the Federal Government for the Purpose of Obtaining Payments to Which U.S. Bank Was Not Entitled.**

</div>

59. On January 13, 2011, using a confidential User ID, Sharon Bond, a Vice President of U.S. Bank, entered HUD's online FHA Connection website.  Ms. Bond provided an annual certification to HUD of U.S. Bank's compliance with all HUD regulations and handbooks.  *See* Exhibit A.

60. Ms. Bond's certification said:

> I certify that I know, or am in the position to know, whether the operations of the above-named lender conform to HUD-FHA regulations, handbooks, Mortgagee Letters, Title I Letters, and policies; and that I am authorized to execute this report on behalf of the lender.
>
> I certify that the lender complied with and agrees to continue to comply with HUD-FHA regulations, handbooks, Mortgagee Letters, Title I

---

[1] In 1998, when Star Bank, which later became U.S. Bank, submitted Form 17011, the form was used for applications to administer FHA loans.  HUD has changed Form 17011 over time and no longer uses it for applications to the FHA program.  Today, Form 17011 is used exclusively for applications to the Ginnie Mae program which guarantees mortgage-backed securities collateralized by cash flows from loans, including FHA insured loans.

Letters, policies, and terms of any agreements entered into with the Department.

I certify that to the best of my knowledge, the above-named lender conforms to all HUD-FHA regulations necessary to maintain its HUD-FHA approval, and that the above-named lender is fully responsible for all actions of its principals, owners, officers, directors, managers, supervisors, loan processors, loan underwriters, loan originators and all other employees conducting FHA business for the above-named lender in all of its offices where it performs any functions of an FHA-approved lender.

\*       \*       \*       \*       \*

Each of my certifications is true and accurate to the best of my knowledge and belief. I understand that if I knowingly have made any false, fictitious, or fraudulent statement(s), representations, or certification on this form, I may be subject to administrative, civil and/or criminal penalties; including debarment, fines, and imprisonment under applicable federal law.

Exhibit A.

61. Ms. Bond provided her social security number, telephone number, and her unique User ID to confirm the annual certification.

62. Ms. Bond executed the same annual certification for the previous year on March 30, 2010. Ms. Bond again provided her social security number, telephone, and unique User ID to confirm the annual certification.

63. The 2010 and 2011 annual certifications were not the first such certifications. U.S. Bank has been a mortgagee making annual certifications to HUD throughout the entire False Claims Period.

64. On information and belief, U.S. Bank made the same annual certification in 2012 and 2013.

### 3. U.S. Bank Submitted HUD Form 27011 to Make Requests for Insurance Benefits.

65. Each time it requests insurance benefits following a foreclosure, U.S. Bank submits HUD Form 27011 to HUD.

66. On information and belief, in each submission of Form 27011, U.S. Bank made the following certification under the threat of False Claims Act liability:

> **Certification:** * * * The undersigned further agrees: (1) that in the event the Secretary finds it necessary to reconvey the above described property to the mortgagee, because of the mortgagee's noncompliance with HUD regulations, the mortgagee shall reimburse the Secretary * * * and (2) that if a mortgagee does not comply with HUD regulations, the mortgagee remains responsible for the property, and any loss or damage thereto, notwithstanding the filing of the deed to the Secretary for record, and such responsibility is retained by the mortgagee until HUD regulations have been fully complied with (203.379).

> **Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

> **By signing below, the undersigned certifies that the statements and information contained hereon (face and reverse) are true and correct.**

(Emphasis in original.)

### B. U.S. Bank Made False Claims for Insurance Benefits. Contrary to U.S. Bank's Certifications to HUD, U.S. Bank Repeatedly and Routinely Disregarded its Obligations to Pursue Loss Mitigation Measures.

67. Contrary to its certifications and promises, and the plain terms of HUD's regulations, on information and belief, U.S. Bank engaged in a nationwide pattern of failing or refusing to pursue Loss Mitigation Measures, including providing mortgagors face-to-face meetings to further loss mitigation as required by HUD regulations and handbooks.

68. U.S. Bank has repeatedly initiated foreclosure proceedings without attempting the required face-to-face meeting and evaluating loss mitigation options. After completing each such foreclosure, it acquired the property and, in violation of HUD's regulations, conveyed the property to HUD and requested a payment for funds from the U.S. government through HUD Form 27011.

69. As demonstrated by the following representative examples, and on information and belief, in many instances HUD was unable to recoup the amount of the loan or insurance proceeds, and was required to resell the conveyed properties at a significant loss to the FHA insurance fund and the U.S. Treasury.

70. U.S. Bank knew that its agreement with HUD and HUD's regulations precluded the above-referenced foreclosures and conveyances to HUD. Nevertheless, U.S. Bank knowingly made the request for payment to HUD in violation of those terms.

71. U.S. Bank also knew that its annual certifications of compliance with HUD rules were false.

72. In the alternative, in submitting false claims for payment and falsely certifying compliance, U.S. Bank acted with deliberate ignorance or reckless disregard of the truth.

73. ABLE is uniquely aware of the following characteristic examples through direct contacts and communications with former mortgagors who were victims of U.S. Bank's scheme of foreclosing on properties, without the Loss Mitigation Measures required by HUD, to collect large conveyance-based insurance claims from HUD.

1.      **Forsythe Street Property Example.**

74. FHA case number 412-5214326 related to a property at 908 Forsythe Street in Toledo, Ohio (the "Forsythe Street Property").  U.S. Bank serviced the FHA-insured mortgage loan associated with the property, foreclosed on the property, and conveyed the property to HUD.

75. On July 9, 2004, Cummings Mortgage Service, Inc., assigned the FHA mortgage associated with this property to Mortgage Electronic Registration Service, Inc., as nominee for U.S. Bank.

76. On February 11, 2009, Mortgage Electronic Registration Service, Inc., as nominee for U.S. Bank, assigned the FHA mortgage associated with the property to U.S. Bank.

77. U.S. Bank began foreclosure proceedings against the mortgagors, Adam Buckner and Allison Haynes, on February 20, 2009, in the Lucas County Court of Common Pleas, Case No. CI0200902117.

78. Through the foreclosure it had initiated, U.S. Bank acquired the property for $40,000.00, and the court confirmed the sale on February 25, 2010.

79. On or about February 25, 2010, U.S. Bank executed a deed and conveyed the property to HUD.

80. On or about October 12, 2010, U.S. Bank submitted a claim for FHA insurance benefits to HUD through Form 27011.

81. Pursuant to Part A of U.S. Bank's Form 27011 claim for insurance benefits associated with the property, HUD paid U.S. Bank $78,772.86.

82. Pursuant to Part B of U.S. Bank's Form 27011 claim for insurance benefits, HUD paid U.S. Bank $20,094.59.

83. On or about September 15, 2010, HUD sold the property to Vision Art Properties, LLC for approximately $15,000.00, and thereby sustained a loss to the Federal Government in the amount of at least $83,000.

84. ABLE has met with the former mortgagor, Mr. Buckner, and confirmed that he and Ms. Haynes resided at the Forsythe Street Property at the time U.S. Bank was required to provide loss mitigation options and a face-to-face meeting.

85. Prior to initiating foreclosure proceedings, U.S. Bank did not provide a face-to-face meeting or evaluate other Loss Mitigation Measures to avoid the foreclosure to these mortgagors.

86. U.S. Bank operated branch offices within 200 miles from the Forsythe Street Property.

87. Mr. Buckner and Ms. Haynes never indicated that they would not cooperate in a face-to-face interview.

88. U.S. Bank did not provide a repayment plan to the mortgagors to prevent the foreclosure.

89. As far as Mr. Buckner and Ms. Haynes are aware, U.S. Bank never traveled to the property to attempt the face-to-face meeting.

90. U.S. Bank never sent a certified letter to Mr. Buckner or Ms. Haynes attempting to arrange for a face-to-face interview.

91. While servicing the Buckner/Haynes mortgage, U.S. Bank did not evaluate any of the loss mitigation options identified at 24 C.F.R. § 203.501.

92. U.S. Bank did not communicate with the borrower in order to evaluate the loss mitigation options identified at 24 C.F.R. § 203.501.

93. U.S. Bank did not evaluate a special forbearance as a means of mitigating losses to HUD.

94. U.S. Bank did not evaluate a modification to the loan as a means of mitigating losses to HUD.

95. U.S. Bank did not evaluate a pre-foreclosure sale or a "short-sale" as a means of mitigating losses to HUD.

96. U.S. Bank did not evaluate an assumption of the mortgage as a means of mitigating losses to HUD.

97. U.S. Bank did not evaluate a partial claim as a means of mitigating losses to HUD.

98. U.S. Bank did not evaluate a deed-in-lieu of foreclosure as a means of mitigating losses to HUD.

99. Despite U.S. Bank's disregard of HUD's unambiguous requirements, U.S. Bank foreclosed and acquired the Forsythe Street Property. It then conveyed the property to HUD and submitted a Form 27011 request for insurance benefits that certified that the claim was not false and that it had complied with HUD's requirements.

100. U.S. Bank collected $98,867.45 from HUD after falsely certifying compliance with HUD's regulations, and wrongfully foreclosing and conveying the Forsythe Street Property.

23

101. By prematurely and wrongfully terminating this FHA mortgage, U.S. Bank also terminated its obligation to pay mortgage insurance premiums or received a reimbursement of mortgage insurance it had already paid to HUD.

### 2.    Gregory Avenue Property Example.

102.  FHA case number 411-4062121 related to a property at 408 Gregory Avenue, New Lebanon, Ohio (the "Gregory Avenue Property").  U.S. Bank serviced the FHA-insured mortgage loan associated with the property, foreclosed on the property, and conveyed the property to HUD.

103.  On October 31, 2007, National City Mortgage assigned the FHA mortgage to National City Mortgage Co.

104.  On December 11, 2007, National City Mortgage Co. assigned the FHA mortgage associated with the property to U.S. Bank.

105.  U.S. Bank initiated foreclosure proceedings against the mortgagor, Benjamin Bicknell, on December 4, 2008, in the Montgomery County Court of Common Pleas, Case No. 2008 CV 10839.

106.  U.S. Bank acquired the property for $48,000.00, and the court confirmed the sale on November 3, 2009.

107.  On or about May 13, 2010, U.S. Bank executed a deed and conveyed the property to HUD.

108.  On or about May 12, 2010, U.S. Bank submitted a claim for FHA insurance benefits to HUD through Form 27011.

109.  Pursuant to Part A of U.S. Bank's Form 27011 claim for insurance benefits, HUD paid U.S. Bank $85,533.12.

110. Pursuant to Part B of U.S. Bank's Form 27011 claim for insurance benefits, HUD paid U.S. Bank $10,527.11.

111. On or about August 11, 2011, HUD sold the property to Virgil Roark for approximately $60,000.00, and thereby sustained a loss to the federal government of at least $36,060.23.

112. ABLE met with the former mortgagor, Mr. Bicknell, and confirmed that he resided at the Gregory Avenue Property at the time U.S. Bank was required to provide loss mitigation options and a face-to-face meeting.

113. Prior to initiating foreclosure proceedings, U.S. Bank did not provide a face-to-face meeting or evaluate loss mitigation options to avoid the foreclosure to this mortgagor.

114. U.S. Bank operated branch offices within 200 miles from the Gregory Avenue Property.

115. Mr. Bicknell never indicated that he would not cooperate in a face-to-face interview.

116. U.S. Bank did not provide a repayment plan to the mortgagor to prevent the foreclosure.

117. As far as Mr. Bicknell is aware, U.S. Bank never traveled to the property to attempt the face-to-face meeting.

118. U.S. Bank never sent a certified letter to Mr. Bicknell attempting to arrange for a face-to-face interview.

119. While servicing Mr. Bicknell's mortgage, U.S. Bank did not evaluate any of the loss mitigation options identified at 24 C.F.R. § 203.501.

120.  U.S. Bank did not communicate with Mr. Bicknell in in order to evaluate the loss mitigation options identified at 24 C.F.R. § 203.501.

121.  U.S. Bank did not evaluate a special forbearance as a means of mitigating losses to HUD.

122.  U.S. Bank did not evaluate a modification to the loan as a means of mitigating losses to HUD.

123.  U.S. Bank did not evaluate a pre-foreclosure sale or a "short-sale" as a means of mitigating losses to HUD.

124.  U.S. Bank did not evaluate an assumption of the mortgage as a means of mitigating losses to HUD.

125.  U.S. Bank did not evaluate a partial claim as a means of mitigating losses to HUD.

126.  U.S. Bank did not evaluate a deed-in-lieu of foreclosure as a means of mitigating losses to HUD.

127.  Despite U.S. Bank's disregard of HUD's unambiguous requirements, U.S. Bank foreclosed and acquired the Gregory Avenue Property.  It then conveyed the property to HUD and submitted a Form 27011 request for insurance benefits that certified that the claim was not false and that it had complied with HUD's requirements.

128.  U.S. Bank collected $96,060.23 from HUD after falsely certifying compliance with HUD's regulations, and wrongfully foreclosing and conveying the Gregory Avenue Property.

129.  By prematurely and wrongfully terminating this FHA mortgage, U.S. Bank also terminated its obligation to pay mortgage insurance premiums or received a reimbursement of mortgage insurance it had already paid to HUD.

### 3.  Brooks Street Property Example.

130.  FHA case number 411-3684631 related to a property at 3124 Brooks Street, Dayton, Ohio (the "Brooks Street Property").  U.S. Bank serviced the FHA-insured mortgage loan associated with the property, foreclosed on the property, and conveyed the property to HUD.

131.  Key Financial Corporation assigned the FHA mortgage associated with the property to U.S. Bank on October 24, 2003.

132.  U.S. Bank began foreclosure proceedings against the mortgagor, Dean Christy, on March 29, 2009, in the Montgomery County Court of Common Pleas, Case No. 2009 CV 02373.

133.  Through the foreclosure it had initiated, U.S. Bank acquired the property for $110,240.00, and the court confirmed the sale on or about November 23, 2009.

134.  On or about June 9, 2010, U.S. Bank executed a deed and conveyed the property to HUD.

135.  On or about August 6, 2010, U.S. Bank submitted a claim for FHA insurance benefits to HUD through Form 27011.

136.  Pursuant to Part A of U.S. Bank's Form 27011 claim for insurance benefits associated with the property, HUD paid U.S. Bank $100,250.53.

137.  Pursuant to Part B of U.S. Bank's Form 27011 claim for insurance benefits, HUD paid U.S. Bank $18,334.31.

138.  On or about September 13, 2010, HUD sold the property to Doug Vandyke for approximately $24,750.00, and thereby sustained a loss to the federal government of at least $93,834.84.

139.  ABLE has met with the former mortgagor, Mr. Christy, and confirmed that he resided at the Brooks Street Property at the time U.S. Bank was required to provide loss mitigation options and a face-to-face meeting.

140.  Prior to initiating foreclosure proceedings, U.S. Bank did not provide a face-to-face meeting or evaluate loss mitigation options to avoid the foreclosure to this mortgagor.

141.  U.S. Bank operated branch offices within 200 miles from the Brooks Street Property.

142.  Mr. Christy never indicated that he would not cooperate in a face-to-face interview.

143.  U.S. Bank did not provide a repayment plan to the mortgagor to prevent the foreclosure.

144.  As far as Mr. Christy is aware, U.S. Bank never traveled to the property to attempt the face-to-face meeting.

145.  U.S. Bank never sent a certified letter to Mr. Christy attempting to arrange for a face-to-face interview.

146.  While servicing Mr. Christy's mortgage, U.S. Bank did not evaluate any of the loss mitigation options identified at 24 C.F.R. § 203.501.

147.  U.S. Bank did not communicate with Mr. Christy in order to evaluate the loss mitigation options identified at 24 C.F.R. § 203.501.

148. U.S. Bank did not evaluate a special forbearance as a means of mitigating losses to HUD. Instead, U.S. Bank demanded an accelerated repayment schedule that did not provide more relief than typically afforded under a repayment plan or an informal forbearance plan and was not based on the borrower's ability to pay.

149. U.S. Bank did not evaluate a modification to the loan as a means of mitigating losses to HUD.

150. U.S. Bank did not evaluate a pre-foreclosure sale or a "short-sale" as a means of mitigating losses to HUD.

151. U.S. Bank did not evaluate an assumption of the mortgage as a means of mitigating losses to HUD.

152. U.S. Bank did not evaluate a partial claim as a means of mitigating losses to HUD.

153. U.S. Bank did not evaluate a deed-in-lieu of foreclosure as a means of mitigating losses to HUD.

154. Despite U.S. Bank's disregard of HUD's unambiguous requirements, U.S. Bank foreclosed and acquired the Brooks Street Property. It then conveyed the property to HUD and submitted a Form 27011 request for insurance benefits that certified that the claim was not false and that it had complied with HUD's requirements.

155. U.S. Bank collected $118,585.04 from HUD after falsely certifying compliance with HUD's regulations, and wrongfully foreclosing and conveying the Brooks Street Property.

156.  By prematurely and wrongfully terminating this FHA mortgage, U.S. Bank also terminated its obligation to pay mortgage insurance premiums or received a reimbursement of mortgage insurance it had already paid to HUD.

**C.     U.S. Bank's False Claims Have Caused HUD to Pay Millions of Dollars in Insurance Claims.**

157.  On information and belief, the examples above are characteristic of the tens of thousands of FHA conveyance claims that U.S. Bank submitted to HUD during the False Claims Period after U.S. Bank foreclosed on homes in violation of HUD's regulations and after making multiple false certifications.

158.  In 2010 alone, U.S. Bank submitted 4,550 conveyance-based claims to HUD using Form 27011.  As a result of those conveyance-based claims, HUD paid $564,108,369.55 to U.S. Bank in 2010.

159.  U.S. Bank's false certifications and false claims made after knowingly failing to comply with HUD requirements, as detailed in the examples set forth in the previous sections of this Complaint, were material and had the natural tendency to cause HUD to disburse FHA insurance payments to U.S. Bank.

160.  The fact that U.S. Bank wrongfully foreclosed on home mortgages listed in the examples set forth in the previous section of this Complaint without providing Loss Mitigation Measures has never been publicly disclosed.

161.  On information and belief, U.S. Bank's failure to provide Loss Mitigation Measures prior to foreclosing on other FHA-insured loans throughout the False Claims Period has never been publicly disclosed.

## COUNT I

**Violations of the False Claims Act
31 U.S.C. § 3729(a)(1)(A)
Presenting False Claims for Payment**

162. The allegations contained in the above paragraphs are hereby realleged as set forth fully above.

163. ABLE seeks relief against U.S. Bank under Section 3729(a)(1)(A) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

164. As set forth above, U.S. Bank knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval in connection with the submission of requests for payment of FHA insurance proceeds.

165. With respect to each conveyance-based claim submitted by U.S. Bank to HUD during the False Claims Period, compliance with the HUD-prescribed Loss Mitigation Measures was a condition of payment of FHA insurance proceeds.

166. The United States disbursed FHA insurance proceeds to U.S. Bank because of such false or fraudulent statements, claims, and certifications.

167. In performing all of the acts described herein, U.S. Bank has defrauded the United States by violating 31 U.S.C. § 3729(a)(1)(A) to the damage of the treasury of the United States by causing the United States to pay out money it was not obligated to pay. In carrying out these wrongful acts, U.S. Bank has engaged in a protracted course and pattern of fraudulent conduct that was material to false claims for payment that U.S. Bank presented or caused to be presented to the United States.

168. As a direct and proximate result of U.S. Bank's fraudulent and/or illegal actions and pattern of fraudulent conduct, the United States has paid directly or indirectly

31

thousands of false claims and disbursed as much $2.3 billion to U.S. Bank that should not have been paid.

169.  By reason of U.S. Bank's false or fraudulent claims, the United States has been damaged in a substantial amount to be determined at trial.

170.  Damages to the United States include, but are not limited to, the full amount it has paid on any such fraudulent claims.  U.S. Bank is liable to the United States for three times the full amount of these damages, plus interest.

171.  Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act of $5,000 to $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990.

## COUNT II

### Violations of the False Claims Act
### 31 U.S.C. § 3729(a)(1)(B)
### Use of False Statements and False Certifications

172.  The allegations contained in the above paragraphs are hereby realleged as set forth fully above.

173.  U.S. Bank violated Section 3729(a)(1)(B) of the False Claims Act, as amended, 31 U.S.C. § 3729(a)(1)(B).  As set forth above, U.S. Bank knowingly made, used, and caused to be made and used, false records and statements material to the false or fraudulent claims for FHA insurance proceeds.

174.  U.S. Bank knowingly made false statements and false certifications in order to obtain payment of FHA insurance proceeds.  These false statements and false certifications were material to the Government's decision to pay.

175.  With respect to each conveyance-based claim submitted by U.S. Bank to

HUD during the False Claims Period, compliance with the HUD-prescribed Loss Mitigation Measures was a condition of payment of FHA insurance proceeds.

176.  As a direct and proximate result of U.S. Bank's fraudulent and/or illegal actions and pattern of fraudulent conduct, the United States has paid directly or indirectly thousands of false claims and spent millions of dollars.

177.  By reason of U.S. Bank's false or fraudulent claims, the United States has been damaged in a substantial amount to be determined at trial.

178.  Damages to the United States include, but are not limited to, the full amount it has paid on any such fraudulent claims.  U.S. Bank is liable to the United States for three times the full amount of these damages, plus interest.

179.  Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act of $5,000 to $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990.

## COUNT III

**Violations of the False Claims Act**
**31 U.S.C. 3729(a)(1)(G)**
**Reverse False Claims**

180.  The allegations contained in the above paragraphs are hereby realleged as set forth fully above.

181.  As set forth above, U.S. Bank knowingly made, used or caused to be made or used false records and/or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the United States.

182.  The United States paid insurance claims, incurred losses, and unnecessarily refunded mortgage insurance premiums relating to FHA-insured mortgages wrongfully

foreclosed upon by U.S. Bank because of U.S. Bank's disregard of HUD-FHA regulations and handbooks.

183.  By virtue of the false records or statements made by U.S. Bank, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, and a civil penalty as required by law for each violation.

## PRAYER FOR RELIEF

WHEREFORE, Relator requests that judgment be entered in its favor and against Defendant as follows:

(a) That this Court enter a judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained;

(b) That Defendant be held liable for a civil penalty not to exceed $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation;

(c) That Relator be awarded all reasonable attorney fees and costs incurred, with interest, including expert witness fees;

(e) That Relator be awarded an amount that the Court decides is reasonable, which shall be not less than 15 percent nor more than 30 percent of the proceeds of the action or settlement of the claims or alternative remedies under the False Claims Act, 31 U.S.C. § 3730(d)-(c)(5).

(f) That Relator be awarded an amount that the Court decides is reasonable, which shall be not less than 15 percent nor more than 30 percent of the proceeds or settlement of any related administrative, criminal, or civil actions, including the

monetary value of any equitable relief, fines, restitution, or disgorgement to the

United States and/or third parties;

(g)  That Relator be granted a trial by jury;

(h)  That Relator and the United States be awarded pre-judgment interest;

(i)  That Relator be granted any and all preliminary and permanent injunctive

relief, as appropriate;

(j)  That Relator be granted any and all other relief set forth in the False Claims

Act which was not specifically referenced above; and

(k)  That Relator be granted all other relief as may be appropriate.

**JURY TRIAL DEMANDED**

DATED: April 1, 2013                                  Respectfully submitted,

Stephen M. Dane
RELMAN, DANE & COLFAX, PLLC
312 Louisiana Avenue
Perrysburg, OH  43551
Tel.:  (419) 873-1814
Fax:  (419) 873-1815
E-mail:  sdane@relmanlaw.com

Michael Allen*
Stephen Hayes*
RELMAN, DANE & COLFAX, PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C.  20036-2456
Tel.:  (202) 728-1888
Fax:  (202) 728-0848
E-mail:  mallen@relmanlaw.com
            shayes@relmanlaw.com

*Applications to Appear Pro Hac Vice to be
submitted

            and

Aneel L. Chablani
George A. Thomas
Andrew D. Neuhauser
ADVOCATES FOR BASIC LEGAL
EQUALITY, INC.
525 Jefferson Avenue, Suite 300
Toledo, OH  43604
Tel:     (419) 255-0814
Fax:     (419) 259-2880
E-mail: achablani@ablelaw.org
         gthomas@ablelaw.org
         aneuhauser@ablelaw.org