UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 3:13CV704 |
| ex rel. ADVOCATES FOR BASIC LEGAL ) | |
| EQUALITY, INC., ) | JUDGE ZOUHARY |
| ) | |
| Plaintiff-Relator, ) | |
| ) | |
| v. ) | |
| ) | |
| U.S. BANK, N.A., ) | |
| ) | |
| Defendant. ) | |

**THE UNITED STATES OF AMERICA'S STATEMENT OF
INTEREST IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

The United States respectfully submits this Statement of Interest pursuant to the Court's Case Management Order dated December 23, 2014. (Doc. 21.) The Court has requested the United States' position on the argument, now briefed in U.S. Bank's Motion to Dismiss, that an implied-certification theory of False Claims Act liability is not available because compliance with the Department of Housing and Urban Development's (HUD) loss mitigation rules is not a condition of payment of Federal Housing Administration (FHA) insurance proceeds. (Doc. 25 at 14-16.) As we explain below, U.S. Bank's argument misconstrues language in 24 C.F.R. § 203.500 that relates to the principle of incontestability. This regulation and 24 C.F.R. § 30.35(c)(2) expressly authorize HUD to recover insurance benefits on mortgages for which servicers failed to engage in appropriate loss mitigation actions. Compliance with loss mitigation rules is a prerequisite for filing a claim for insurance benefits and therefore is a

condition of HUD's ultimate payment of insurance claims, and mortgagees impliedly certify such compliance when they submit insurance claims to HUD.[1]

Under the False Claims Act, as amended in 2009, liability attaches to any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A) and 3729(a)(1)(B).

Under the False Claims Act, a claim may be false under a "false certification" theory. *United States ex rel. Hobbs v. MedQuest Assocs., Inc.*, 711 F.3d 707, 714 (6th Cir. 2013). False certifications may be express or implied. In an express false certification case, "the defendant is alleged to have signed or otherwise certified to compliance with some law or regulation on the face of the claim submitted." *Id.* In an implied certification case, "liability can attach if the claimant violates its continuing duty to comply with the regulations on which payment is conditioned." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 468 (6th Cir. 2011) (quoting *United States ex rel. Augustine v. Century Health Servs., Inc.*, 289 F.3d 409, 415 (6th Cir. 2002) (observing that the False Claims Act is "'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.'" (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)))). A false-certification theory applies "where the underlying regulation is a 'condition of payment,' meaning that the government would not have paid the claim had it known the provider was not in compliance." *MedQuest*, 711 F.3d at 714. "A regulation may in some cases be both a condition of payment and a condition of participation" in a federal program. *Id.* at 714.

---

[1] The United States takes no position on the merits of the relator's allegations, including whether U.S. Bank violated the servicing rules at issue, or whether the allegations themselves have been adequately pleaded.

The False Claims Act has a materiality requirement. 31 U.S.C.§ 3729(a)(1)(B); *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp., Inc.*, 400 F.3d 428, 444-46 (6th Cir. 2005) (adopting the "natural tendency" test for materiality, the same test now set forth in 31 U.S.C. § 3729(b)(4), which defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property"). In *MedQuest*, which was decided under the prior version of the False Claims Act, the court relied on *A+ Homecare* in evaluating whether the defendant's implied certifications were conditions of payment. *MedQuest*, 711 F.3d at 717 (observing that the violations at issue "would not 'natural[ly] tend[] to influence' CMS's decision to pay on the claims" (quoting *A+ Homecare*, 400 F.3d at 444-46)). Similarly, in determining whether compliance with the regulations at issue is a condition of payment, the Court should look to whether the violations of the regulations were material, that is, whether they had a natural tendency to influence, or were capable of influencing, the payment or receipt of HUD mortgage insurance benefits.

Applying this standard, compliance with the statutory and regulatory scheme for loss mitigation is both a condition of payment and a condition of participation. Servicers have a statutory obligation to engage in loss mitigation before filing a claim for FHA insurance benefits. 12 U.S.C. § 1715u(a) ("upon default or imminent default . . . of any mortgage under this subchapter, mortgagees *shall* engage in loss mitigation actions") (emphasis added). Among the HUD servicing requirements, including the regulations found at 24 C.F.R. §§ 203.500-681, which is subpart C of the Single Family Mortgage Insurance regulations, is the requirement that mortgagees "evaluate delinquent loans before the fourth monthly payment is due and unpaid, and on a monthly basis thereafter," and "take the appropriate loss mitigation action." 24 C.F.R. § 203.605(a); *see also* 24 C.F.R. § 203.501 ("Mortgagees must consider the comparative effects

3

of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to [HUD].") Further, section 203.500 of subpart C provides, in pertinent part:

> Failure to comply with this subpart shall not be a basis for denial of insurance benefits, *but failure to comply will be cause for imposition of a civil money penalty, including a penalty under section 30.35(c)(2)*, or withdrawal of HUD's approval of a mortgagee. It is the intent of the Department that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed.

24 C.F.R. § 203.500 (emphasis added).

The purpose of the statutory and regulatory requirements that lenders engage in loss mitigation is to prevent foreclosures and the resulting insurance claims. 12 U.S.C. § 1715u(a); *see Sinclair v. Donovan*, Nos. 1:11-CV-00010, 1:11-CV-00079, 2011 WL 5326093, at *3 (S.D. Ohio Nov. 4, 2011) ("the loss mitigation provisions are intended to benefit the Government as provider of the insurance"); 70 Fed. Reg. 21,572, 21,575 (April 26, 2005) (explaining that lenders' failure to perform the required loss mitigation results in harm to the insurance fund). Because engaging in the required loss mitigation protects the insurance fund by reducing the likelihood of foreclosure and subsequent claims for insurance benefits, compliance with the loss mitigation regulations is material, *i.e.*, a condition of payment, because a violation of these requirements would have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money" from the HUD insurance program. 31 U.S.C. § 3729(b)(4); *see MedQuest*, 711 F.3d at 717, *A+ Homecare*, 400 F.3d at 444-46.

The penalty referenced in section 203.500 is not a set amount but rather three times the "amount of the total mortgage insurance benefits claimed by the mortgagee with respect to any mortgage for which mortgagee failed to engage in such loss mitigation actions." 12 U.S.C.

§ 1735f-14(a)(2); 24 C.F.R. § 30.35(c)(2); *see also* 70 Fed. Reg. at 21,572 (final rule adding current language to section 203.500, "reflect[ing] HUD's authorization to impose treble damages on a mortgagee for any mortgage for which the mortgagee had a duty but failed to engage in appropriate loss mitigation actions"). In other words, although HUD may well remit insurance benefits even where there has been a failure to engage in loss mitigation, the agency thereafter is expressly authorized under sections 203.500 and 30.35(c)(2) to pursue either of two potential remedies: withdraw its approval of the mortgagee (*i.e.*, treat the mortgagee's failure as a condition of participation) or recoup three times the amount of the insurance claim (*i.e.*, treat the mortgagee's failure as a condition of payment). Notably, were HUD to pursue the latter course, the amount of the civil money penalty, reflecting the insurance benefit claim times three, would be remitted to the FHA insurance fund. 12 U.S.C. § 1735f-14(i). Accordingly, the regulatory scheme expressly links a mortgagee's right to receive and retain FHA insurance benefits to its compliance with HUD's loss mitigation rules.

A reading that the servicing regulations are a condition of participation only, and not a condition of payment, isolates the phrase "[f]ailure to comply with this subpart shall not be a basis for denial of insurance benefits," without considering the entire regulatory context, including all of FHA's program requirements. This flies in the face of basic tenets of statutory construction. *Oates v. Oates*, 866 F.2d 203, 206 (6th Cir. 1989) ("statutory language is to be read in pertinent context rather than in isolation") (citing N. Singer, Sutherland Stat. Constr. § 47.02, at 119 (4th ed. 1984)). Read properly, this language merely reflects the principle of "incontestability," which allows for the sale of FHA mortgages in the secondary market without the specter that they might later be deemed ineligible for FHA insurance. *See* 12 U.S.C. § 1709(e). The incontestability of the mortgage insurance in no way affects the statutory and

regulatory requirement that lenders comply with HUD servicing regulations.  Rather, it merely reflects an effort to maintain stability and liquidity in the mortgage and housing markets.  Thus, while insurance benefits are initially approved in due course upon presentment, HUD retains the authority to recoup the insurance benefits (times three) from a mortgagee who failed to engage in the required loss mitigation actions.  The incontestability provision that U.S. Bank invokes does not defeat the conclusion that compliance with loss mitigation rules is a condition of HUD's ultimate payment of insurance claims.

Other elements of HUD's regulatory approach reinforce this conclusion.  In *MedQuest*, the Sixth Circuit refused to find a condition of payment in what it perceived to be "isolated phrases" scattered across several sections of complex Medicare regulations, which collectively would have required a "cut-and-paste approach [that was] not supported by the structure of the regulatory scheme, and [was] not reasonable to expect [of] Medicare providers."  711 F.3d at 715.  By contrast, every servicing regulation that HUD expects mortgagees to follow is contained in Subpart C, of which section 203.500 is the beginning.  Moreover, HUD has made clear to mortgagees that they must do appropriate loss mitigation before taking actions that will result in submission of insurance claims, and made clear that failure to comply with the rules may result in forfeiture of insurance benefits.  *See* 24 C.F.R. § 203.500 ("It is the intent of the Department that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed."); 70 Fed. Reg. at 21576 (stating that treble-damages provision was "designed to remind mortgagees of the importance of complying with existing regulations and policies that require lenders to engage in loss mitigation").

For the foregoing reasons, a mortgagee's compliance with HUD servicing regulations, including loss mitigation rules, is a condition of payment of HUD insurance claims, in that it has

a natural tendency to influence, or is capable of influencing, the payment of HUD mortgage insurance benefits.

    Respectfully submitted,

    JOYCE R. BRANDA
    Acting Assistant Attorney General

    STEVEN M. DETTELBACH
    United States Attorney

    s/ Patricia M. Fitzgerald
    Patricia M. Fitzgerald (PA Bar #308973)
    Michelle L. Heyer (#0065723)
    Angelita Cruz Bridges (#0072688)
    Assistant U.S. Attorneys
    United States Courthouse
    801 West Superior Avenue
    Suite 400
    Cleveland, OH 44113
    (216) 622-3779
    (216) 522-2404 (facsimile)
    patricia.fitzgerald2@usdoj.gov
    michelle.heyer@usdoj.gov
    angelita.bridges@usdoj.gov

    Michael D. Granston
    Renée Brooker
    Brian Bowcut
    Attorneys, Civil Division
    United States Department of Justice
    P.O. Box 261, Ben Franklin Station
    Washington, D.C. 20044
    (202) 616-4203
    (202) 514-7361 (facsimile)
    brian.bowcut@usdoj.gov

    Attorneys for the United States

## CERTIFICATE OF SERVICE

    I hereby certify that on this 30th day of January, 2015, the foregoing United States of America's Statement of Interest in Response to Defendant's Motion to Dismiss, was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                              s/ Patricia M. Fitzgerald
                                              Patricia M. Fitzgerald
                                              Assistant U.S. Attorney