1                   UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                        WESTERN DIVISION

3    UNITED STATES OF AMERICA     Docket No. 3:13CV704

4              Plaintiffs,           Toledo, Ohio

5                  v.                March 5, 2015

6    U.S. BANK NATIONAL

7    ASSOCIATION,

8              Defendants.

9    ------------------------------

10                  TRANSCRIPT OF ORAL ARGUMENT HEARING
                    BEFORE THE HONORABLE JACK ZOUHARY
11                    UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   For the Plaintiffs:  Angelita Cruz Bridges, Patricia Fitzgerald
                          Office of the U.S. Attorney
15                        433 North Summit Street
                          Suite 308
16                        Toledo, Ohio 43604
                          (419) 259-6360
17
     For the Relator, ABLE:
18                        Aneel Chablani
                          Stephen Dane, Sasha-Samberg-Champion
19                        1225 19th Street, NW, Suite 600
                          Washington, DC 20036
20                        (202) 728-1888

21

22   For Defendant, U.S. Bank:

23                        William Porter, II
                          Andrew Schilling
24                        William Sieck
                          Buckley Sandler
25                        1250 24th Street, NW
                          Suite 700

```
 1                        Washington, DC 20037

 2    Court Reporter:        Angela D. Nixon, RMR, CRR
                             1716 Spielbusch Avenue
 3                           Toledo, Ohio 43624
                             (419) 260-5259
 4

 5    Proceedings recorded by mechanical stenography, transcript

 6    produced by notereading.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  We're here on case number 13CV704,

 2    United States versus U.S. Bank.  This is a hearing on the

 3    pending motion to dismiss.

 4              By way of background, the matter has been briefed

 5    with the following pleadings reflected on our docket,

 6    docket numbers 25, 29, 30, 31, 34, 36, 38 and 43.  We also

 7    filed questions for today's hearing, and that is reflected

 8    in docket number 44.

 9              Present in court on behalf of -- well, we have

10    the United States present in an observation status I

11    understand.  Welcome to Angelita Cruz Bridges and Trisha

12    Fitzgerald.  On behalf of the relator plaintiff ABLE, we

13    have Aneel -- you're sitting in the back.  Come up Aneel.

14    Stephen Dane, Andrew Neuhauser, Sasha Samberg-Champion and

15    George Thomas.  On behalf of U.S. Bank we have Bill Porter,

16    Andrew Schilling and Bill --

17              MR. SIECK:  Sieck.

18              THE COURT:  Thank you.

19              MS. CRUZ-BRIDGES:  Your Honor, I'm sorry to

20    interrupt.  We did have an attorney from D.C. that was

21    supposed to be joining us on the bridge line.  I'm not the

22    sure if he can hear or not.

23              THE COURT:  Has he called in?

24              MS. CRUZ-BRIDGES:  He said he that his and the

25    line was busy and he could not get in.  I have his number,
```

1      I'm not sure if you're able to conference him in.

2              THE COURT:  I was unaware of that.

3              MS. CRUZ-BRIDGES:  I apologize, we did notify The

4      Court that he was going to be attending by phone.

5              THE COURT:  Is he going to actually participate

6      or just listen?

7              MS. CRUZ-BRIDGES:  He's just going to listen,

8      Your Honor.  He just informed me in the e-mail that he's on

9      the line but he doesn't hear anything.

10             THE COURT:  I don't know what line he's on

11     because we're not connected in here.  So if he called the

12     bridge line -- do you know if that's what he did?

13             MS. CRUZ-BRIDGES:  I believe so.  I think he was

14     provided a number by The Court.

15             THE COURT:  Brian Bowcut, are you on the phone?

16             MR. DANE:  Your Honor, while we're waiting can I

17     introduce my partner John Relman.  He's not admitted in

18     this case but made the trip here anyway.

19             THE COURT:  Because he liked our weather.

20             MR. RELMAN:  It's better than the D.C. weather

21     today.

22             MR. DANE:  There was some risk I might not be

23     here and we're both on our way to Santa Fe anyway.

24             THE COURT:  On the way to Santa Fe.  Brian

25     Bowcut, are you on the phone?

```
 1          MR. BOWCUT:  Yes, I am.  I apologize.  The

 2    conference line kicked me out and I just called back in.

 3          THE COURT:  I understand you're going to be

 4    listening and not participating, so hopefully if the

 5    lawyers use the microphones you'll be able to hear.  If

 6    they don't use the microphones then it may be difficult.

 7    So I'll use this as a reminder to counsel, these

 8    microphones move, slide them from the base towards you.  I

 9    don't care if you stand or sit, but I do require you to use

10    the mic unless you bellow without the mic.  And then that's

11    okay.  But especially with someone on the phone it's

12    difficult to hear unless you use the mic.  Please one

13    person at a time.  I will give everyone an opportunity to

14    speak.

15          If you haven't done this before with me, this is

16    not a what I'll call a traditional appellate type argument

17    where one side goes and then the other side goes.  I will

18    probably interrupt you at some point during your answers so

19    that I can hear from the other side, in a point, counter

20    point type style.  And sometimes we go back and forth a

21    bit.  And sometimes we even spill over and begin to answer

22    more than the question that's presented before.  But that's

23    okay too, we get through the agenda.  You may have other

24    comments to make and I'm fine with that if time allows, but

25    I do want to focus, if we can, on the questions that we
```

1    presented to you in advance.  And with that, I will give

2    defendant the first shot at answering question number one.

3            MR. SCHILLING:  Thank you, Your Honor.  Andrew

4    Schilling with U.S. Bank.  The first question to respond to

5    the government's supplemental statement of interest, and

6    particularly the question of whether or not compliance with

7    false mitigation rules is both a condition of payment

8    anticipation.  Just starting more broadly in responding to

9    the government's supplemental statement of interest, their

10   brief makes clear, even more so than their earlier brief,

11   that HUD may not deny insurance claims based on a failure

12   to perform Loss Mitigation.  That's the quote from Page 5

13   of their supplemental brief.  With respect to the issue of

14   whether or not --

15           THE COURT:  So does that help you or hurt you?

16           MR. SCHILLING:  That helps me, Your Honor.

17   That's what the regulation says.  The realtors have not

18   conceded as clearly as the government has, but I think its

19   regulation is clear on its face and at government's brief,

20   both their initial brief and supplemental brief acknowledge

21   quite clearly on behalf of the government that HUD will not

22   deny insurance claims based on the failure to perform Loss

23   Mitigation.  And as we explained in our brief, that makes

24   the case fall away.  You need that for a condition of

25   payment analysis and it's not here in this case.

```
 1                THE COURT:  So case over, plaintiff, relator?

 2                MR. SAMBERG-CHAMPION:  Thank you, Your Honor.

 3    Sasha Samberg-Champion.

 4                THE COURT:  You need to take that mic, and if you

 5    will pull it closer to you, please.  It won't bite you.

 6    And you can lower it or raise it depending on your

 7    position.  Thank you.

 8                MR. SAMBERG-CHAMPION:  Okay.  How's that?

 9                THE COURT:  A little closer.

10                MR. SAMBERG-CHAMPION:  Okay.  We have -- there

11    are -- our response is there's basically three parts.  So I

12    want to just introduce those three parts and then it will

13    help you to interrupt me where you see fit on this.  The

14    first part is that --

15                THE COURT:  No, answer the question, and then go

16    to the three parts.  Give me your brief answer to the

17    question.  Case over --

18                MR. SAMBERG-CHAMPION:  No.

19                THE COURT:  -- given what you just heard?

20                MR. SAMBERG-CHAMPION:  The answer is no.  That's

21    the answer to the question.  And the reason for that is

22    this regulatory scheme does create a condition of payment

23    as that term is used in the case law under the False Claims

24    Act.  And there's sort of a three-step reasoning that gets

25    us there.  The first step is that these regulatory scheme
```

1    creates what is substantially the same effect as the

2    ability to deny a claim outright while also accommodating

3    the government's need to ensure that incontestability of

4    the claim itself.

5           The second part of our argument is that this

6    condition goes to the very heart of the bargain between the

7    bank and the government.  And we can discuss that in

8    greater detail.

9           And then the final point is that where those two

10   conditions are satisfied, where you have a remedy that's

11   substantially equivalent to the denial of a claim and where

12   the condition goes right to the heart of a claim, the case

13   law and statute are best construed such that a false claim,

14   false claim act liability is possible.  So those are the

15   three parts of the answer.  Your Honor, is there a part

16   that particularly concerns you on that?

17          THE COURT:  All parts concern me.  If you're

18   through explaining them then I'll ask the other side to

19   comment.

20          MR. SAMBERG-CHAMPION:  Okay.  Why don't I

21   continue then.  The first step is sort of the substantial

22   equivalence between this remedy and the ability to outright

23   deny a claim.  So what HUD has done here is it has created

24   a scheme in which it -- it can impose two different kinds

25   of penalties.  It can impose a penalty that goes to

1    participation.  It can kick the lender out of the program,

2    but in the alternative or in addition, it can -- it can

3    impose a claim specific remedy, a remedy that's based on

4    the amount of the claim itself.  And under that remedy, it

5    falls back the exact amount of the claim that it paid out,

6    and in addition exacts an additional amount.  As the

7    government put it, the effect of this is that is that

8    the -- the complying with Loss Mitigation is a condition of

9    ultimate receipt of the money.  And therefore, it's just a

10   matter of accounting tricks, whether you call it -- whether

11   you call it a condition of payment or not.  But it would

12   elevate form over substance to say that the fact that the

13   money is initially paid out and that called back is any

14   differences for purposes of False Claims Act Liability.

15          THE COURT:  Comment?

16          MR. SCHILLING:  Yes, Your Honor.  I heard in that

17   response a number of standards in an effort to construct a

18   new construct for what a condition of payment is.  There's

19   the substantial equivalence test, the very heart of the

20   bargain test and the condition of ultimate receipt test.

21   None of these are in The Sixth Circuit case law, Your

22   Honor.  Some of the briefing that has been going back and

23   forth particularly from the government is -- suggested that

24   the standards are actually not clear in The Sixth Circuit.

25   They are, Sixth Circuit has addressed conditions of payment

1    several times.  And in the *Hobbs* case, which is cited in
2    our brief several times, they explain exactly what a
3    condition of payment is.  And on Page 714 of that case,
4    they define condition of payment as meaning, quote, meaning
5    that the government would not have paid the claim had it
6    known the provider was not in compliance, unquote.  Since
7    the government would pay the claim even if it knew that the
8    bank was not in compliance with Loss Mitigation, by
9    definition in The Sixth Circuit's definition and not the
10   creative standards being proposed today by counsel under
11   The Sixth Circuit's definition of what a condition of
12   payment is, this claim fails because the regulation
13   specifically provides that payment of the claim will not be
14   denied for Loss Mitigation violation.
15           THE COURT:  So Sasha, what do I do with the *Hobbs*
16   case and the quote in particular?
17           MR. SAMBERG-CHAMPION:  Okay.
18           THE COURT:  Doesn't help you, does it?
19           MR. SAMBERG-CHAMPION:  I actually think the *Hobbs*
20   case, if you look at more than one -- one sentence, I think
21   it's more consistent with our analysis.
22           THE COURT:  What other sentence do you want me to
23   look at?
24           MR. SAMBERG-CHAMPION:  Okay.  I'd like you --
25   sorry, I don't have the page number.

```
1              THE COURT:  Take your moment.

2              MR. SAMBERG-CHAMPION:  Okay.  Well, but while

3    we're finding it, just to -- to recount what happened in

4    Hobbs, in Hobbs you had a healthcare provider that was

5    billing Medicare for services --

6              THE COURT:  I've got the case.  You can skip that

7    part.

8              MR. SAMBERG-CHAMPION:  Okay.  But the key

9    thing -- the key things that The Court looks at here is

10   that there's no regulation that suggests that failure to

11   comply with the technical requirement at issue here would

12   give rise to any sort of penalty, let alone what are called

13   the Blunt False Claims Act Penalty.  If you -- if you think

14   that the condition of payment analysis that my adversary

15   has put forward is literally true, then there would be no

16   reason for The Court to consider that, but it actually

17   looked at the remedies available, and it said that that

18   remedy was disproportionate to the Blunt False Claims Act

19   Remedy.  Whereas if you apply that analysis to this case,

20   you can see that the remedy is exactly the same as the

21   False Claims Act.  So I think, in context, Hobbs help --

22   Hobbs helps us.

23             The key thing I think to remember with this

24   condition of payment language, that language does not

25   appear in the False Claims Act.  That language has been
```

```
 1    used by The Courts in an effort to determine what we think

 2    is exactly the questions that we're posing today, whether

 3    this -- whether this goes to the heart of the bargain

 4    between the government and -- and the other party, such

 5    that the failure to do that and submitting a claim without

 6    having done that can be said to be fraudulent, which is the

 7    actual statutory term.  So in this where it ends up being

 8    exactly the same result, we think that complies fully

 9    with -- with the reasoning of Hobbs and every other case,

10    really, that have been cited to this Court.

11            THE COURT:  Last word over here and then we'll

12    let you continue with I think what was the beginning of

13    your answer --

14            MR. SCHILLING:  Thank you, Your Honor.

15            THE COURT:  -- to the full question.

16            MR. SCHILLING:  A couple of points to respond to.

17    One is the discussion of exactly the same remedy.  It's not

18    exactly the same remedy.  The fact that HUD, after the fact

19    can decide in its discretion to pursue administrative

20    enforcement against a mortgagee who doesn't comply, that's

21    obviously a completely discretionary decision.  They choose

22    to do absolutely nothing.  They have the discretion to

23    decide whether it's appropriate to pursue enforcement of

24    the regulatory violation or not to enforce it at all.  Even

25    if they did choose to enforce it, there's a number of
```

 1    different ways that they can choose to enforce it.  They

 2    don't have to go to the mortgagee review board and seek

 3    damages or expulsion from the program.  During the ordinary

 4    course they will audit mortgagees, they will have a back

 5    and forth with the mortgagee, they will see if there's a

 6    violation and they will work it out.  Here the alternative

 7    is saying, well, since HUD could, in one of the things it

 8    could do to enforce this, one of the things it could do is

 9    pursue an action for triple damages on a particular loan,

10    it could do that.  But here the question is whether or not

11    we're going to allow relators to make that decision and

12    enforce the regulatory requirements, or is that HUD's

13    decision to enforce the regulatory requirements.  Because

14    here the relator has an interest in enforcing the

15    requirements as against every loan without regard to the

16    problematic considerations that the HUD would take into

17    account.  They've alleged there have been two billion

18    dollars worth of claims paid, I'm sure if we ever got to

19    the point where they had to itemize them in damages, they

20    would say they want triple damages of $26 billion plus

21    penalties.  There's penalties up to $11,000 per false claim

22    on top of troubled damages under the False Claims Act that

23    isn't available in the HUD process.  So the remedies are

24    not the same under the False Claims Act and under the

25    mortgagee review board and HUD process.

1          THE COURT:  Would you concede a regulation can be

2     both a condition of payment anticipation --

3          MR. SCHILLING:  It could be in theory.  The Sixth

4     Circuit in *Hobbs* alluded to that indicta and there have

5     been cases, the *Hendow* case cited in *Hobbs* and cited in the

6     government's brief I believe did make an observation that

7     in that indication one regulation or one set of

8     requirements did impose both a condition of participation

9     and a condition of payment.

10          THE COURT:  So it's not just theory, it is fact?

11          MR. SCHILLING:  In other circuits.  I'm not aware

12     if the Sixth Circuit has ever found regulation to be both.

13     And in the cases that where that has occurred, the

14     condition of participation itself had conditions of payment

15     in it, basically it was a core eligibility requirement of

16     the program to comply with the particular requirement.  And

17     because of that, you wouldn't be paid at all if you weren't

18     in the program, and sort of went to eligibility to begin

19     the program, and therefore eligibility to be paid at all in

20     the *Hendow* case the regulation specifically spoke about the

21     prerequisite and the conditions of government money

22     flowing.  Here, as we pointed out on Page 4 footnote six of

23     our brief, the core eligibility requirements of this

24     program do not relate to Loss Mitigation.  There's a

25     handful of requirements that are the core eligibility

1    requirements of this program and Loss Mitigation is not

2    listed among those requirements.  So in this case, even if

3    that theory were viable, this would not be both a condition

4    of payment and participation and also just a more

5    fundamental reason.  Even if it were a condition of

6    participation, it can't be a condition of payment for the

7    reasons that we've been discussing.

8              MR. SAMBERG-CHAMPION:  Your Honor, may I respond?

9              THE COURT:  You may.

10             MR. SAMBERG-CHAMPION:  With respect to counsel's

11   first point regarding the discretion that HUD has, the

12   situation he's describing is no different than the

13   discretion that an agency has to deny a payment and your

14   classic condition of claim case.  And for that reason, as

15   the government said, the test is not whether HUD had

16   actually work -- would have denied the claim had it known,

17   or imposed alternate remedy had it known.  The question is

18   whether this would have had a natural tendency to influence

19   HUD's decision making.  And I take it -- I haven't heard

20   any -- any argument on that sort --

21             THE COURT:  Well, stop.  Any argument on that --

22             MR. SCHILLING:  Yes, I mean the issue --

23             THE COURT:  I can't get you two guys to agree on

24   anything, can I?

25             MR. SCHILLING:  Not today, maybe outside this

1   context we will.  If we want to start talking about

2   materiality and the natural tendency test, I think that's a

3   couple of questions later, Your Honor.  But even if you

4   applied a materiality test, a materiality is an element of

5   the false claims act.  It's just a different element and

6   the element of falsity of the claim.  If we get to that

7   stage, if you even had to get there, which you don't

8   because the claim isn't false, if you got there it still

9   wouldn't be material because it doesn't have an a natural

10  tendency to influence the payment decision.  It only -- if

11  anything, it could be material in theory to -- to an

12  ultimate enforcement decision down the road in HUD's

13  exercise of its problematic discretion to decide what

14  remedies to take against a particular mortgagee, but it is

15  not related to the payment decision.  And we need to come

16  back, I think, to the fundamental point which is --

17          THE COURT:  You distinguish the fund amount, the

18  difference seems to be you distinguish payment from the

19  ultimate remedy of recouping the payment.

20          MR. SCHILLING:  Yes, I think that's critical,

21  Your Honor.  And I think that's the way the case law

22  describes what a condition of payment is.  That's why in

23  the alternative it's referred to as a prerequisite to

24  payment.  And the reason why it's significant and the

25  reason why later remedies that could be imposed down the

1    road don't matter to that analysis is that you come back to

2    the point that The Court did impose this requirement that

3    there be a condition of payment and why did they do that?

4    They did that because we're already in the land where there

5    is no express false statement.  There is no express false

6    claim.  So we're beyond that.  And the -- we're now dealing

7    with what the law will imply to be a false statement or a

8    lie by the person submitting the claim.  And what The

9    Courts have said is we have to impose some limitation on

10   that.  We have to impose some restriction, otherwise you

11   have people who can just -- relators can enforce regulatory

12   requirements, and they said, and it's not a lie to submit a

13   routine request for payment, and there's a complaint that

14   alleges there have been thousands of requests by the bank

15   and other FHA lenders every day.  There are thousands of

16   these claims submitted for reimbursement of the insurance

17   benefits or payment of the insurance benefits.  And the

18   condition of payment requirement basically says that in

19   order for those routine submissions of claims to realize to

20   be false, the person submitting them has to know at the

21   time you're submitting them that you're not entitled to

22   payment of this claim.  And you knew you weren't entitled

23   to payment of this claim and you made a claim for payment

24   anyway.  And that's why if you are entitled to payment of

25   the claim, that claim isn't false.  And what courts have

1    said is if it's –– the way to determine whether or not

2    you're entitled to it is does the regulation forbid you

3    from getting paid on that.  And here the regulation

4    doesn't.  The regulation actually forbids you not to get

5    paid on that claim.

6            THE COURT:  What's wrong with what you just

7    heard?

8            MR. SAMBERG-CHAMPION:  Well, there –– I mean,

9    there are no cases that say the proposition that U.S. Bank

10   is advancing today, which is that a scheme that has the

11   substantial equivalent of the denial of a claim, it should

12   not be considered exactly the same for False Claims Act

13   purposes.  And this scheme is –– if you look –– if you look

14   at the language of 203.500 itself, it's interesting because

15   it actually has both a condition of payment and a condition

16   of participation remedy built in, right next to each other.

17   It says failure to comply will be cause for a position of a

18   civil money penalty, which is then defined in another

19   statute –– another regulation, or withdrawal of HUD's

20   approval of a mortgagee.  So you can see right there the

21   difference between a condition of participation and a

22   condition of the claim, both of which are present in this

23   regulation.  My adversary got into the idea of whether it

24   would be unfair to impose this remedy, and –– and whether

25   they knew that this was part of the deal, which to us

```
 1    sounds a lot like the heart of the bargain discussion that
 2    we were having.  So we could go right into what -- why this
 3    is the heart of the bargain which we think is actually what
 4    The Sixth Circuit and other courts have been getting at
 5    when they discuss the condition of payment.  If you look at
 6    the 203.500, it has an explicit statement, it says it is
 7    the intent of the department that no mortgagee shall
 8    commence foreclosure or acquire title to a property until
 9    the requirement of the sub parts have been followed.  And
10    then of course a claim cannot be submitted until -- until
11    they've done that.  We think under those circumstances any
12    time a bank submits a claim to HUD, we think it's impliedly
13    warranting really in the clearest possible way that it has
14    followed this condition.  And there's many other reasons
15    why we think -- why I think you can quite easily find that
16    statement to be made impliedly.  You can look at the
17    certifications that the bank itself makes on a regular
18    basis certifying that that -- that all these requirements
19    have been followed.  You can look at all the guidance that
20    HUD sends on a regular basis, which we've also cited to a
21    few times.
22              THE COURT:  So let's hear for a moment about the
23    implied warranty theory.  Certification, why isn't that
24    enough?  Is that not the very heart of the agreement?
25              MR. SCHILLING:  No, Your Honor.  It's hard to
```

1   know what the very heart of the agreement is.  I'm not sure

2   what that standard is and how to define it.  I do know that

3   when you're talking about HUD regulations, HUD isn't shy

4   about putting out rules and regulations.  Floor statutes --

5   there's Loss Mitigation and servicing.  There are statutes,

6   regulations, HUD handbooks, informal guidance, there are

7   mortgagee letters, I think with respect to programs

8   generally, there have been hundreds of mortgagee letters.

9            THE COURT:  Is there anything in the HUD

10   regulations that might give me guidance on this issue?

11            MR. SCHILLING:  Well, the regulations that we're

12   speaking of are the most pertinent, Your Honor, that

13   expressly say that you allow the payment of the claim of

14   the -- I think that there is no other False Claims Act case

15   like this where the condition of payment is so

16   unambiguously precluded by the regulatory language, and I

17   think everything else that we're talking about are

18   arguments to try to get around that, but it is clear on its

19   face.

20            MR. SAMBERG-CHAMPION:  Your Honor, may I respond

21   to that?

22            THE COURT:  Absolutely.

23            MR. SAMBERG-CHAMPION:  I think that that would be

24   a more correct statement of the law to say there's no other

25   false claims act cases likes this.  False stop.  This issue

1    just hasn't been presented to The Court one way or the

2    other.

3            THE COURT:  So I'm the lucky one.

4            MR. SAMBERG-CHAMPION:  You are the lucky one.

5    But I think what is critical to understand is that there's

6    a reason why HUD has structured the scheme this way.

7            THE COURT:  Why?

8            MR. SAMBERG-CHAMPION:  The reason why is it's --

9            THE COURT:  Where do you find support for your

10   answer?  Go ahead.

11           MR. SAMBERG-CHAMPION:  It's trying to accomplish

12   two things.  It's trying to accomplish both having a

13   penalty that -- that looks for all the world like the

14   ability to deny a claim and accomplishes the same deterrent

15   effect while at the same time protecting the

16   incontestability of the -- of the insurance claim itself.

17   And HUD does that because some of these -- some of these

18   loans travel in the secondary market and they don't want

19   the bank that ultimately has possession of the loan to be

20   punished for the sins of its forbearers with -- with

21   respect to that loan.  This gives HUD the ability to go

22   after the bank that's the actual wrong doer as opposed to

23   the bank that happens to have the claim at the time.  And

24   that way you can ensure that these loans can pass in the

25   secondary market or be secure ties or any other of the

1    things that happens to loans without anyone having concern

2    about -- about the value of the loan itself.

3              THE COURT:  And where do I find support for your

4    reasoning as you've just expressed it?

5              MR. SAMBERG-CHAMPION:  I think the best way to

6    find support if you look at the -- if you look -- I'm

7    sorry.  If you look at the -- the Federal Register Notice

8    of putting out the final rule itself, and I'm going to get

9    that for you in a moment.  And that's -- what I'm referring

10   to now as the troubled damages final rule.  So --

11             THE COURT:  That's okay.  If you find it before

12   we're done today, holler out the answer.

13             Do you concede that U.S. Bank did not make any

14   express certifications of compliance of face-to-face

15   meetings or Loss Mitigation requirements?

16             MR. SAMBERG-CHAMPION:  I don't know that I'd go

17   so far to concede, but I would say that the express

18   statement that the U.S. Bank makes with respect to each

19   claim is not as strong as the -- as the clear implied

20   statement.  It does -- it does -- it does give a statement

21   that warrant -- that's expresses its understanding that if

22   it hasn't complied with the HUD regulations, that this

23   conveyance is improper and can be undone.

24             THE COURT:  Do you want to comment on anything

25   you've heard before we move on?

```
 1          MR. SCHILLING:  Yes, Your Honor.  In response to

 2   that, there is a certification on the HUD form for the

 3   single family application for insurance benefits.  There is

 4   no certification on that form that speaks to Loss

 5   Mitigation or the face-to-face ruling.  There is language

 6   in here that talks about the only certification that's on

 7   this form, Your Honor, and it's attached, I think, to our

 8   brief.  If it wasn't submitted by the relaters in their

 9   complaint, talks about the event of damage by fire, flood,

10   earthquake, tornado and boiler explosion.  And under

11   certain circumstances, the mortgagee would have an

12   obligation to do -- to fix the damage on the property prior

13   to conveying that property to HUD.  The regulations that

14   counsel's referring to are regulations about whether the

15   mortgagee complies with those regulations, the regulations

16   about fixing the house that's been hit.  The flood has

17   nothing to do with the regulations of any of the Loss

18   Mitigation servicing.

19          MR. SAMBERG-CHAMPION:  Your Honor, may I flush

20   out a little more fully though why this goes to the heart

21   of the -- because I don't think I quite completed my

22   answer.  The other reason why this goes right to the heart

23   of the bargain is because compliance with the Loss

24   Mitigation requirements actually goes a long way towards

25   reducing the payout that the government has to make.  If a
```

1    bank fails to comply with the Loss Mitigation requirements,

2    as the examples that we've provided make quite clear, a

3    bank will -- the U.S. government will either have to make a

4    payment that it would never have had to make, or it will

5    have to make a payment that is -- that's substantially

6    higher than the one that would have been required to make.

7    So in that way, the U.S. government is out money every time

8    a bank fails to comply with the Loss Mitigation

9    requirements such that it makes a lot of sense for it to be

10   able to recoup that money against the violaters.

11           THE COURT:  So Andrew, Section 203.500, quote, it

12   is the intent of the department that no mortgagee shall

13   commence foreclosure until the requirements of this sub

14   part have been followed, end quote.  Part of the agreement?

15           MR. SCHILLING:  No, Your Honor.  Again, I don't

16   know how to define the heart of the agreement when you

17   have, you know, decades of mortgagee letters and statutes

18   and regulations and requirements.  It's hard to know what

19   is the heart of the agreement from HUD's perspective or

20   not.  I will say that when you talk about Loss Mitigation

21   requirements and the failure to engage in Loss Mitigation

22   requirements, sometimes that's discussed as if it's a light

23   switch.  You're either in compliance or you're not in

24   compliance.

25           THE COURT:  What is -- it's not that simple?

```
 1          MR. SCHILLING:  It's not that simple, Your Honor.
 2   And there are a myriad rules that surround whether or not
 3   you're in compliance with Loss Mitigation requirements.
 4   You know, one rule says you have to provide, you know, what
 5   they call a 426 pamphlet "How to Avoid Foreclosure" between
 6   the 32nd day and the 60 day after default.  You have to
 7   perform certain actions in certain orders.  You can only
 8   pursue certain types of Loss Mitigation options under
 9   certain factual circumstances.  You have to send a notice
10   with respect to the Service Members Civil Relief Act within
11   45 days.  There's all sorts of requirements surrounding
12   Loss Mitigation, not to mention servicing on top of that.
13   So which of those are sort of at the heart of the bargain
14   or which of those are more important than others, I can't
15   say, because there's no standard, and because it's also
16   frankly irrelevant to the legal analysis.  The argument
17   that this is important to HUD doesn't speak to the issue of
18   whether there's a false claims act to be made out of it.
19   HUD, you know, can, if these rules are so important to it,
20   can aggressively enforce them, and they do.  They monitor
21   mortgagees, they do audits, they do reviews, they rank
22   servicers in tiers, depending where they fall.  And they
23   take actions against mortgagees who don't comply.  But the
24   issue of whether or not HUD should do -- do things to
25   enforce the Loss Mitigation requirements is a separate
```

1    question from whether or not when someone submits a claim

2    for insurance they are lying.  And they're not lying when

3    the claim form doesn't say a word about Loss Mitigation or

4    servicing.  And they're not lying when the regulations

5    don't condition payment of that claim on compliance with

6    those regulations, and, in fact, say just the opposite.

7            THE COURT:  Government doesn't really agree with

8    you, do they?

9            MR. SCHILLING:  Not always.  No.

10           MR. SAMBERG-CHAMPION:  May I respond?

11           THE COURT:  You may respond.  I'll give you the

12   last word, then I'm ready to move on to question two if you

13   all are.

14           MR. SAMBERG-CHAMPION:  There's two points that

15   were packed in there that I think are worth responding to.

16   The first is this business about HUD's discretion and --

17   and the amount of discretion that HUD has to impose a

18   penalty or not.  What I haven't heard is how that makes any

19   different from an agency's difficult discretion whether to

20   deny a claim or not.  For precisely that reason, that's

21   why, as the DOJ says, the question is not what they would

22   have done but whether it would have a natural tendency to

23   influence their actions.  So all this talk about the HUD

24   having discretion is just no different from any other False

25   Claims Act claim.  There's very few regulations that

1   require the government to deny payment or otherwise act,

2   but that's never been held to be a reason why the False

3   Claims Act doesn't apply.

4           The other thing I want to address is this

5   discussion about how complicated it is to know whether

6   you've complied with the Loss Mitigation requirements.  For

7   exactly that reason it is our burden to prove not only that

8   they failed to comply, but that they knew that they failed

9   to comply.  We're going to have to show that.  And for us

10  to show that, I think it's going to be our burden to show

11  that it wasn't some ambiguous interpretation at issue or it

12  could have been compliance, it could not have been

13  compliance and they may -- they made an arguable decision.

14  That's not our allegation.  Our allegation is they didn't

15  do the bare minimum.  That is clearly a violation of the

16  False Claims Act, and for that reason I think, Your Honor,

17  I think very helpfully linked together our discussion of

18  the failure to do a face-to-face meeting with the knowledge

19  requirements.  Because that -- that's the sort of thing

20  that's binary.  Either you did a face-to-face meeting or

21  you did not.  There's no arguable maybe I complied, maybe I

22  didn't comply.  That's the reason why we're -- why we're

23  highlighting that in our complaint because these were not

24  arguable violations that we're alleging.  These were clear

25  knowing violations.

```
 1              THE COURT:  So if it's clear, it's knowing?

 2              MR. SAMBERG-CHAMPION:  Well, that's actually some

 3    courts have said if you want to look at what the knowledge

 4    is, you look at how ambiguous it was.  If it was ambiguous,

 5    then they really didn't know if they had an arguable case

 6    to be made that they complied, then -- then they didn't

 7    know.  But if it was -- if it should have been abundantly

 8    clear that this was a violation, then knowledge is

 9    possible, yes.

10              THE COURT:  So you segued into question two very

11    nicely.  You want to keep talking?

12              MR. SAMBERG-CHAMPION:  Sure.

13              THE COURT:  And identify in the complaint.

14              MR. SAMBERG-CHAMPION:  Yes.  Okay.

15              THE COURT:  Where I find the knowing violation.

16              MR. SAMBERG-CHAMPION:  Yes.  I think the most

17    obvious place to look is in the certificate on paragraph 60

18    of the complaint where we discuss the certification that

19    was made each year by a vice president of U.S. Bank, Sharyn

20    Blond, in which she didn't just say that the -- didn't just

21    certify compliance to the best of her knowledge.  She said

22    that she actually knew or was in a position to know.  And

23    so therefore, you have a person certifying both that

24    they're in compliance and that she knows whether they're in

25    compliance every single year.  And I think HUD does that
```

1    for a reason.  They do that because they don't want the

2    bank to be able to put forward an ostrich in the stand

3    effect where we just didn't know whether our people were

4    complying each year when we made the certification.  It

5    requires that you have actual knowledge.  And if you

6    nonetheless didn't have actual knowledge, then that still

7    needs the FCA's knowledge requirement because that would be

8    reckless disregard when you had clear duty to know.

9             THE COURT:  Are you playing ostrich, U.S. Bank?

10            MR. SCHILLING:  No, Your Honor.  There's no

11   factual allegation in the complaint with respect to

12   knowledge.  None.  There's references to the annual

13   certification's form language.  The issue isn't whether or

14   not the person who executes an annual certification knows

15   whether or not the bank is in compliance with regulations.

16   The issue is whether or not when the bank submitted a claim

17   for payment it knew that the claim was false.  There's no

18   allegation in the complaint about knowledge with respect to

19   whether the claim was false.  There's very few allegations

20   in the complaint at all with respect to the claims, who

21   submitted them?  What did they know?  That's not in the

22   complaint.  When they talk about their burden down the road

23   of proving knowledge, they have a burden right now.  They

24   were required to have a good faith basis to allege in their

25   complaint a basis for knowledge.  There's nothing in the

1    complaints on knowledge, Your Honor.  The fact that someone

2    says I believe that we are in compliance, you can't

3    implicitly infer from that that the person actually

4    believed they weren't in compliance but, again, it doesn't

5    go to compliance.  It goes to falsity.  And there's no

6    evidence that the bank knew, there's no allegation that the

7    bank knew that when it was submitting claims for payment it

8    was making false statements.

9            MR. SAMBERG-CHAMPION:  May I respond to that?

10   Paragraph 70 of our complaint, U.S. Bank knowingly made the

11   request for payment to HUD in violation of those terms.  We

12   have alleged squarely what my adversary for some reason is

13   sayings we have not alleged.  Now what I'm hearing him say

14   is that we need to, in addition, allege with particularity

15   which bank officials knew what at which time.  And my

16   answer to that is I don't see a case, and he's welcome to

17   produce one, that says that at the pleading stage we are

18   required to plead the intricacy of corporate knowledge and

19   say which corporate official had what knowledge.  That's

20   not a requirement of Rule 9.  Rule 9 only requires that we

21   plead with particularity the actions that constituted

22   fraud.  It doesn't require us to plead knowledge with

23   particularity, and for good reason because there's no way

24   we can know in advance which corporate officials were --

25   knew what -- knew what when.  Of course even if we did have

1    to show that there was a corporate official, even if we did

2    have to plead right now which corporate official both knew

3    of the -- of the certifications and knew of the falsity --

4    and knew of their falsity, I think the statement by Sharyn

5    Blond speaks for itself even if we had that requirement.

6         MR. SCHILLING:  Your Honor, we cite several cases

7    in our brief with the proposition that merely intoning the

8    elements of an offense is not sufficient to plead.  You

9    can't plead to knowledge by saying they knew.  That's not

10   enough.  You have to allege facts, even under -- forgetting

11   about Rule 9(b).  Under Rule 8 you have to allege facts

12   that would make it plausible that the bank knew.  There's

13   nothing in the complaint about that.

14        MR. SAMBERG-CHAMPION:  Okay.  May I speak to what

15   makes it plausible that the bank knew, Your Honor?  We

16   have -- we have a pattern of the bank -- as we allege, as a

17   matter of policy, not complying with the Loss Mitigation

18   requirements, that systematically, not the face-to-face

19   meeting and the other things that had to do.  I think under

20   those circumstances, once you accept those allegations as

21   true as you must, I think it's quite plausible that

22   somebody at the bank knew that they were not in compliance,

23   given that this was not an isolated -- an isolated incident

24   but rather was a company-wide practice.  That's what we've

25   alleged.  And it's hard to even fathom that someone would

1  not know that they were not in compliance given that.

2          THE COURT:  Anything else on question two?  If

3  not we'll go on to question three and let plaintiff go

4  first.

5          MR. SAMBERG-CHAMPION:  Well, Your Honor, we began

6  to discuss the incontestability clause earlier.  And I

7  think DOJ has made quite clear how easily these two things

8  can be square, because they are trying to accomplish two

9  things which are not as in conflict with each other as U.S.

10  Bank would suggest.  They want to ensure that each

11  individual loan remains eligible for compensation for

12  whoever holds the loan at the time of the foreclosure.  But

13  at the same time they want to make very clear that the bank

14  should not be rewarded with government money if they -- if

15  they have failed to comply with the Loss Mitigation

16  requirements.  And that's exactly why they've created this

17  unusual scheme in 203.500 where they have a penalty that's

18  the equivalent of -- of denial of the claim.

19          THE COURT:  We I know discussed this earlier.

20  Anything you want to add?

21          MR. SCHILLING:  Not much, Your Honor.  I would

22  say that, again, our argument just keeps going back to The

23  Sixth Circuit's decision on what a condition of payment is,

24  and it doesn't go to substantial equivalence and the like,

25  and it doesn't go to potential civil penalties down the

1    road or other administrative remedies.  As the *Chesbrough*

2    case that we cite in our brief says, noncompliance

3    constitutes actual fraud only when compliance is a

4    prerequisite to obtaining payment.  It's not.  I hear them

5    essentially concede that it's not because the payment is

6    incontestable.  If it's incontestable it is not a

7    prerequisite to obtaining payment under The Sixth Circuit

8    standard.  It is not a condition of payment.

9           THE COURT:  And I understand their argument to be

10   that recouping trouble the amount of payment is equivalent

11   of the payment.

12          MR. SCHILLING:  And for the reason we discussed

13   earlier, it's not.  First of all, it has to be the payment

14   at the front end, not the back end, because, again, it goes

15   to the question of whether or not it was a lie when they

16   submitted the claim in the first place.  It's not a lie if

17   you don't know at the time that the regulations preclude

18   you from getting paid because of the incontestability

19   clause.  They know when they submit the claim that they

20   will be paid.  So they're not lying when they ask for

21   payment, and the --

22          THE COURT:  But they might later be found to be

23   lying at that time if, in fact, HUD pursues a an action for

24   recoupment, they would have to show a lie at the time that

25   payment was made.  So it's not made at the time of payment

1     it's made later, that is a determination that a lie took

2     place?

3              MR. SCHILLING:  The determination they would make

4     later, and later is one way that HUD enforces these rules

5     through a mortgagee review board.  But as I say, they also

6     enforce these regulations in the ordinary course through

7     monitoring and reviewing audits and the like.  But -- and

8     again, I wouldn't characterize it as a recoupment of the

9     payment.  There is an ability to seek a maximum of three

10    times the amount of the insurance benefits, and they're

11    trying to make a lot from the fact that the amount is

12    calculated based on the insurance benefits.  But again, as

13    I mentioned earlier, HUD can, in its discretion, pursue

14    absolutely no remedy at all.  It can decide to do nothing.

15    And the False Claims Act should be a vehicle to enforce

16    regulatory requirements and allow relators to enforce

17    regulatory requirements when HUD itself may not.  And on

18    that -- I'm sorry, Your Honor, on that point, HUD itself

19    has said in enforcing the troubled damages provision, it's

20    not an automatic penalty.  It's not as if you submitted the

21    claim, you had to pay the claim because of incontestability

22    but you're going to be hit with damages three weeks from

23    now.  Doesn't work that way.  But what HUD has said is they

24    reserved troubled damages for the extreme case where

25    there's a pattern, where there's a real problem.  They use

```
1    it as one of their tools in their tool box to enforce these
2    regulations.  That's their job.  Their job is to enforce
3    these regulations, not relaters.
4         THE COURT:  You mentioned The Sixth Circuit
5    earlier.  Let's segue into the _Whipple_ case here, recent
6    Sixth Circuit decision, and would like to hear your
7    thoughts.  We're now on question four.  I'll let defendant
8    go first.  In that case -- well, we know what happened in
9    that case.  How does that case help you or hurt you?  The
10   result doesn't help you.
11        MR. SCHILLING:  I think, Your Honor.  The _Whipple_
12   case, we took a look at that and our response was it was
13   addressing an issue that isn't raised in this case.  It's
14   addressing a circumstance where the argument from the
15   defendant is the government was aware of this because it
16   had done an audit, but nobody else knew it did that audit,
17   and therefore wasn't public.  _Whipple_ case speaks to
18   whether or not the disclosure at issue was public or not.
19   The disclosures that we're relying on are public.  We're
20   talking about a public consent order from the OCC, we're
21   talking about articles in the Wall Street Journal and The
22   Plain Dealer and USA Today.  So these are all public
23   issues.  The _Whipple_ case doesn't hurt or help our case
24   frankly, Your Honor.
25        MR. SAMBERG-CHAMPION:  You'll be pleased to know
```

1    that for once I largely agree with the analysis that U.S.

2    Bank has put forward.  We don't think that the *Whipple* case

3    materially changes our arguments with respect to public

4    disclosure.  I think we've, you know, we've adequately

5    addressed public disclosure in our brief.  And it doesn't

6    appear that the -- that U.S. Bank is challenging the sort

7    of the line-by-line assessment that we gave you in our

8    attachment.  They don't challenge any of that in our reply.

9    So I think at this point it's pretty clear that none of the

10   disclosures they've put forward meet the test for public

11   disclosure.

12          THE COURT:  Well --

13          MR. SCHILLING:  I don't --

14          THE COURT:  Well, let me comment and then give

15   you both a chance to respond.  The facts of *Whipple* are not

16   the facts of this case.  We don't have a private

17   intra-agency discussion.  We have a public consent order,

18   April of 2011.  We have an inter-agency review of

19   April 2011.  I believe both of those are public documents

20   available.  We have news articles that counsel referenced,

21   Wall Street Journal, Plain Dealer, USA Today, Daily News.

22   We have a published Ohio Court of Appeals opinion back in

23   2010 discussing the homeowners defense that U.S. Bank did

24   not hold a face-to-face meeting before initiating the

25   foreclosure action.  Why does this not meet under the

1  guidelines and the discussion in *Whipple* a defense that the

2  claims were publicly disclosed and have been frankly for

3  some time?

4          MR. SAMBERG-CHAMPION:  Well, because none of

5  these -- none of these disclosures deal with the actual

6  fraud that's at the heart of this case.

7          THE COURT:  But the law doesn't require that.  It

8  allows the fraud to be inferred from the publicly disclosed

9  fact.

10         MR. SAMBERG-CHAMPION:  That's true.

11         THE COURT:  And why isn't that applicable here?

12         MR. SAMBERG-CHAMPION:  Because none of these

13  facts even suggest that U.S. Bank was failing to comply

14  with Loss Mitigation in the -- in the FHA mortgage arena

15  specifically.  And then submitting a claim for insurance

16  with respect to other --

17         THE COURT:  Stop.  Agree with what he just said?

18         MR. SCHILLING:  No.

19         THE COURT:  Well, cite me to something that

20  contradicts what he just said.  Where in these public

21  documents do we have a contradiction of counsel's

22  statement?

23         MR. SCHILLING:  Well, I think in the public

24  documents what you see a very broad review of the bank's

25  Loss Mitigation and servicing programs.  The HUD program is

```
1    part and parcel of the bank's process.  So to say that they
2    look broadly but they didn't look narrowly, that doesn't
3    make any sense to me.  It's obviously part of the whole.
4    If you're looking at Loss Mitigation of Servicing of U.S.
5    Bank, a part of that is the FHA program.  And certainly
6    from the perspective I hate to keep harping back on the
7    Sixth Circuit standards, but in the Bocce (phonetic) case
8    they say that the issue is whether the information is
9    sufficient to put the government on notice of the
10   likelihood of related fraudulent action.  If the government
11   was fully aware of Loss Mitigation and failures and
12   searching failures on the part of servicing failures like
13   and including U.S. Bank action, then all they would have to
14   do to put two and two together is all the relator has done
15   in this case, which is to say, well, they were not
16   complying and they submitted claims for insurance, because
17   that's the fraud.  The fraud that they've alleged is
18   noncompliance on one hand and the routine submission of
19   claims on the other.  If that's all the fraud is, that's
20   out there.  And they didn't -- HUD doesn't need the relator
21   to bring this case to their attention.  This was on the
22   radar screen of every regulator in Washington following the
23   financial crisis.
24            MR. SAMBERG-CHAMPION:  Well, Your Honor, the
25   problem with that analysis is just that the FHA program,
```

1    the Loss Mitigation is very different.  The rules are

2    different.  The importance are different.  The

3    certification as made to the government is different than

4    any of this private -- other private loan programs that

5    which is -- were all that the defendant has been -- has

6    been able to put forward.  Our argument here, our case is

7    based on the violation of very spec -- very FHA specific

8    regulations, regulations that serves a purpose that make no

9    sense in any -- any of the other schemes.  This is a scheme

10   in which the government itself is backing the mortgage in a

11   way that's different from all these other schemes.  So

12   in -- in the other schemes if you fail to comply with the

13   Loss Mitigation requirements, that may be bad for the

14   homeowner but it doesn't have the same effect on the

15   government perks as what we have here, therefore it's not

16   fraud on the government.  This is -- this is the first time

17   that it's been disclosed that what U.S. Bank is doing is

18   defrauding the government in this way.

19            THE COURT:  But you don't have to have that

20   explicit disclosure for it to be a public disclosure,

21   right?  We have a public disclosure going back to 2011.

22   U.S. Bank included, among others, where there was an

23   assessment and whether there was evidence that servicers

24   generally attempted to contact distressed borrowers prior

25   to initiating the foreclosure process to pursue Loss

1    Mitigation alternatives, including loan modifications.

2    That was a specific part of the 2011 examination.  Why

3    isn't that enough?  Especially in light of the Sixth

4    Circuit law that says it does not have to include an

5    allegation of fraud.  It can allow the inference of fraud.

6              MR. SAMBERG-CHAMPION:  Well, certainly to take

7    that statement, if these -- if you saw in any of these

8    sources a sentence that said to the -- or suggested that

9    U.S. Bank is -- is systematically not following its

10   requirements, Loss Mitigation requirements with respect to

11   the FHA program, then perhaps you could infer from that

12   that it's also committing fraud, that it's also sending

13   fraudulent claims into the government for payment.  But

14   none of their sources even say that.  None of their sources

15   even say that the FHA program in particular has these --

16   has these violations going on.  And in any event, Your

17   Honor, as I think we've made clear in our briefing, even if

18   you thought that in some fashion this met the public

19   disclosure bar, quite clearly relaters have materially

20   added to the understanding of the scheme here such that

21   they are original sources.  So at the end of the day it

22   doesn't -- I'm not sure anything turns on it.

23             THE COURT:  What is the realtor's source of

24   information here in this case?  What, on record, do I have

25   that tells me what their source was?

```
 1          MR. SAMBERG-CHAMPION:  Well, in the complaint
 2     itself, it makes clear that they've gone and spoken with
 3     homeowners who have been affected by U.S. Bank's actions.
 4     That's the original information that they have.  They've
 5     gone and they've spoken with owners, and they've made clear
 6     this pattern of behavior that U.S. Bank is engaged in,
 7     information that it appears none of the sources that U.S.
 8     Bank has disclosed and was not publicly known in any other
 9     fashion before this lawsuit.
10          THE COURT:  So it appears the disagreement here
11     is whether there is public information about systematically
12     not following the regulations.  Is there any public
13     information that U.S. Bank was not systematically following
14     regulations?
15          MR. SCHILLING:  Your Honor, the allegations that
16     the plaintiff has made are that there was a systematic, you
17     know, defrauding of HUD, and a systematic failure.  It's
18     hard to find that specific in the public disclosures,
19     because frankly we don't believe that the bank was doing
20     that.  But our point is that the issue of general failings
21     by servicers, including U.S. Bank in the area of Loss
22     Mitigation and servicing have been publicly disclosed.
23     They were disclosed in the reports that we've been
24     discussing.  And all the relator has added is an accusation
25     on top of that, that that amounts to fraud.  And merely
```

1   adding commentary on top of public facts and saying, well,

2   that's a fraudulent scheme, doesn't suffice.  And in

3   response to the point about the relator being an original

4   source under the False Claims Act, that their information

5   has to be both independent of a materially add to the

6   publicly disclosed information is not independent, because

7   it's not their information.  It's information that was told

8   to them from someone else.  Therefore, it's entirely

9   derivative of the knowledge of others, and they're not an

10  independent source of that information.  It doesn't

11  materially add anything.  If you say that large lenders

12  were not engaging in Loss Mitigation with respect to

13  thousands of borrowers, it doesn't materially add any

14  information to say I know three of them, and that's all

15  they've added to this.

16        THE COURT:  What does the record show on how ABLE

17  found the three properties that are listed in the

18  complaint?

19        MR. SAMBERG-CHAMPION:  I don't know that we've --

20  we've put that with any degree of specificity in our

21  complaint, our method of finding them.  I don't know that

22  we're required to say exactly how we went and found them.

23  We have said that none of these allegations were -- were

24  publicly disclosed before, and that's true.  I do want to

25  respond to an interesting way that my adversary just put

1    his response.  In essence, he's trying to have it both

2    ways.  He's saying in one breath, well, we didn't do any of

3    these things, and the second breath he's saying everyone

4    knew we were doing these things and they've always known we

5    were doing these things.  And I think the first point is,

6    has been U.S. Bank position until now and it has been and I

7    don't think you'll find that any -- any of the sources they

8    put forward disclose or disclose that U.S. Bank was doing

9    this before.  So I don't think it can be said that everyone

10   knew that U.S. Bank was engaging in a campaign of not

11   following the FHA regulations which we will not accept the

12   inflation of the FHA program with all these other -- with

13   all these other programs.  I don't think --

14          THE COURT:  They don't have to show that everyone

15   knew.

16          MR. SAMBERG-CHAMPION:  No, but they have to show

17   that someone knew that it had been publicly disclosed.

18          THE COURT:  So we have all your evidence of that

19   you've attached of your public disclosure.  Are you

20   talking, I think counsel's suggesting you're trying to have

21   your cake and eat it too.

22          MR. SCHILLING:  No, Your Honor.  My point was

23   simply that these -- the characterization of this as a

24   campaign and a fraudulent one is the relators.  And the

25   facts on which that they are basing that spin, that

1   argument comes down to allegations of a failure to comply

2   with Loss Mitigation and servicing.  What I'm saying is

3   that allegations that U.S. Bank had had a failure of Loss

4   Mitigation and servicing that was publicly known.  That is

5   the heart of what they're alleging.  That goes to the core

6   of what they've been alleging the entire time.  They've put

7   a spin on it by saying and they're submitting claims,

8   therefore, it's a campaign, it's a pattern, it's fraud.

9   But we don't have to show that their characterization of

10  the facts is public.  We have to show that the underlying

11  information was out there such that the government was

12  aware of the facts that they are now trying to raise in

13  this case.  And the government certainly was aware of

14  allegations that U.S. Bank and other servicers at the time

15  were not performing Loss Mitigation and servicing up to

16  standards.

17          THE COURT:  Oh, let me have some fun.  Was the

18  government aware?  Do you want to respond to the question

19  or do you pass?

20          MS. FITZGERALD:  If I'm allowed to pass I will,

21  but if you require a response we have one.

22          THE COURT:  Well, go ahead.  Let's hear what you

23  have to say.

24          MS. FITZGERALD:  I think that, you know, as a

25  preliminary matter, U.S. Bank raised the issue of rather --

 1   that we chose not to object in this case on the public

 2   disclosure grounds, and I think that it's important that

 3   The Court not read anything into that other than we chose

 4   not to object here.

 5            In terms of specific government knowledge, I

 6   think that, you know, U.S. Bank has pointed out the

 7   articles, that that is a general source of information that

 8   in terms of whether that is sufficient to qualify as public

 9   disclosure under these facts we would just defer to The

10   Court.

11            THE COURT:  So much for fun.  Okay.

12            MS. FITZGERALD:  Thank you.

13            THE COURT:  Thank you.

14            MR. SAMBERG-CHAMPION:  Your Honor, may I respond

15   to the defendant's point, because I think --

16            THE COURT:  What if I said no?

17            MR. SAMBERG-CHAMPION:  Well, then I'd have to

18   live with it.

19            THE COURT:  No, of course you may.  Go ahead.

20            MR. SAMBERG-CHAMPION:  I think the defendant's

21   statements that you just heard, once again, the defendant

22   is saying these -- these documents show a pattern of

23   failing -- failure to perform Loss Mitigation but I'm not

24   hearing FHA in the defendant's statements.  And the reason

25   why that's important is because the FHA program is the one

1    that requires these certifications.  It's the one in which

2    you send in a claim for money that can be fraudulent.  So

3    if all these other sources do not go to the FHA program,

4    then they really don't -- they don't suggest fraud at all.

5              THE COURT:  So why isn't that fatal to the bank's

6    claim?

7              MR. SCHILLING:  Well, Your Honor, HUD knows U.S.

8    Bank is an FHA lender.  The government is aware that U.S.

9    Bank is an FHA lender.  It's publicly known that U.S. Bank

10   is an FHA lender, it's available on HUD's website.  It's

11   common knowledge that the bank is an FHA lender.  So,

12   again, all the plaintiffs are doing is adding a spin to

13   publicly known facts.  HUD doesn't need the relators'

14   information to know that U.S. Bank is a HUD lender.  And to

15   know that during certain periods of time the bank had been

16   accused of not fulfilling its obligations with the Loss

17   Mitigation and servicing, and they are the ones who,

18   therefore, should be enforcing these regulations.

19             THE COURT:  Thank you.  I'll allow either side a

20   couple minutes if they wish to add anything that we haven't

21   already covered either in the briefing or argument today.

22             MR. SAMBERG-CHAMPION:  Your Honor, we would like

23   to use some of that time then to talk about the reverse

24   false claims theory that we've also put forward.  One thing

25   that we would like to put forward that we haven't had a

```
 1    chance to discuss yet is that the legislative history that
 2    appears in the briefs of both parties remains incomplete.
 3    After the -- after the Kyl amendment which defendant
 4    describes in its brief, the bill was then subsequently
 5    considered on the house floor.  And on the house floor
 6    there was a statement made that suggested that the house
 7    continued to believe that this bill reaches contingencies,
 8    and there's a good reason why it would think that because
 9    the language of the bill that was actually passed continues
10    to reach contingencies.
11             THE COURT:  Was this a bill that the house
12    actually read before they passed, unlike some other
13    legislatures?
14             MR. SAMBERG-CHAMPION:  Does the house read
15    anything, Your Honor?  I think we always have to assume.
16    Even if it's a fiction that they've read what they've --
17    that they've read what they're passing judgment on.  If I
18    could pass this up to The Court at some point --
19             THE COURT:  As long as you have one for opposing
20    counsel too.
21             MR. SAMBERG-CHAMPION:  I actually brought two
22    copies for opposing counsel.  So related to that I think we
23    need to look at the bill as actually passed.  And I also --
24    I also have a hand out on that so we can just go over the
25    language together and I can show you why this reaches the
```

1    conduct at issue in this case.  So you can see at the top

2    of this sheet the -- the new definition of obligation that

3    was in the bill as it was reported by the Senate committee,

4    and at that time the bill defined obligation as a fixed

5    duty or a contingent duty.  So it had two different kinds

6    of concepts, one you had a fixed duty and the other was a

7    contingent duty.  And then it listed a few different things

8    that are -- were examples of contingent duties.  What Kyl

9    did was he struck the word contingent, but he left in place

10   almost all of the same types of obligations that the prior

11   version called contingent duties.

12         Now, the language says an obligation, it's an

13   established duty, whether or not fixed, arising from all of

14   the same time things.  So our argument is what we have here

15   is an established duty that, to be sure has not been fixed

16   but is not required to be fixed that arises from a statute

17   or regulation.  At the very moment that they failed to

18   comply with the Loss Mitigation requirements, they were --

19   they were liable should HUD choose to -- should HUD choose

20   to enforce it.  They had an obligation to -- to pay money

21   to HUD.  And the fact that it had not been fixed by HUD, to

22   us that's immaterial to the analysis because the statute

23   says it's immaterial.

24         So I think to the extent that they're saying that

25   Senator Kyl's amendment took this out of the land of

1    reverse false claims, I would say to Your Honor to look at

2    the language and see whether his amendment actually

3    accomplished that.  I don't think it did.

4            MR. SCHILLING:  Your Honor, I'm happy to debate

5    legislative history but we're relying on the language of

6    the statute that was actually enacted and the cases that

7    have interpreted it.  The statute currently requires

8    established duty that has been the standard for some time.

9    It's not an established duty if HUD is the discretion to

10   pursue enforcement later.  That established duty has to

11   attach prior to the time you make the false statement or

12   you engage in the improper conduct.  Here there's no

13   allegation that there was an established duty to pay

14   anything, just because HUD could choose in its discretion

15   down the road later to pursue an enforcement action, that's

16   what the case law says.  That's consistent with the

17   requirement that the obligation had to be an established

18   duty that exists at the time of the false statement.  And

19   with respect to the legislative history, just because I

20   can't help myself, the reason they struck the word

21   contingent from the statute was precisely to address this

22   issue, precisely.  It couldn't have been more clear.

23   Senator Kyl said obviously we don't want the government or

24   anyone else suing under the False Claims Act to trouble and

25   enforcify (sic) before the duty to pay that fine has been

1   formally established.  It is unlikely that justice would

2   have ever brought suit to enforce a claim of this nature,

3   but the FCA can also be enforced by the private relators

4   who often may not be motivated -- who may be motivated by

5   personal gain and may not always exercise the same good

6   judgment that the government usually does.  It was a

7   concern by congress that relators would try to enforce the

8   reverse False Claims Act on the basis of potential future

9   civil penalties.  That's this case, Your Honor, and that's

10  exactly why they struck the word contingent from the

11  statute.

12          MR. SAMBERG-CHAMPION:  Your Honor, may I respond

13  to that?

14          THE COURT:  You can have the brief last word.

15          MR. SAMBERG-CHAMPION:  Thank you.  I think my

16  adversary is correct.  Again, I'll acknowledge that he's

17  correct in saying that this doesn't reach any far flung

18  obligation.  It only reaches an established duty.  And if

19  you look at the statute as a whole, I think the best

20  reading of established duty is a duty that is comparable on

21  just going the other way to the materiality test in the --

22  for a conventional false claim.  After all, the purpose of

23  the Reverse False Claim Act Provision in the first place is

24  to ensure that nothing turns on just the accounting of

25  which direction the money goes.  Whether -- whether it is

1    that the -- whether it is that the U.S. Government is

2    paying out money or whether it is that the defendant is

3    getting the U.S. Government not to take money from it, I

4    don't think anything should turn on that.  And I think

5    that's what the reverse -- the point of the Reverse False

6    Claim Provision is in the first place.

7            In that context, I think we can read established

8    duty as doing some work, the work it does is to ensure that

9    it meets the same materiality requirements as would be met

10   from a standard false claim.  But in that context, we think

11   that at this point, the reason for this is so that exactly

12   the sort of argument that we're having today about whether

13   a claw back mechanism that functions -- that leaves the

14   defendant in exactly the same place as if it had had its

15   claim denied in the first place whether that is a False

16   Claims Act.  The purpose of the Reverse False Claims Act

17   theory is to avoid this sort of accounting trick that try

18   to avoid liability just based on -- just based on form and

19   not substance.

20           THE COURT:  Thank you all counsel.  Appreciate

21   your preparation.  And this has been helpful to The Court.

22   And we will not make a promise of when our decision will

23   come out, but we will turn to it very shortly.  And I'm

24   sure by the end of the month we'll have something for you.

25   Safe travels, we're adjourned.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3          I certify that the foregoing is a correct transcript

 4    from the record of proceedings in the above-entitled matter.

 5

 6    s:/Angela D. Nixon

 7    --------------------------              -----------

 8    Angela D. Nixon, RMR, CRR               Date

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

$
$11,000 [1] 13/21
$26 [1] 13/20
$26 billion [1] 13/20

**1**
1225 [1] 1/19
1250 [1] 1/25
13CV704 [1] 3/1
1716 [1] 2/2
1888 [1] 1/20
19th [1] 1/19

**2**
20036 [1] 1/19
20037 [1] 2/1
2010 [1] 36/23
2011 [4] 36/18 36/19 39/21 40/2
2015 [1] 1/5
202 [1] 1/20
203.500 [2] 19/6 24/11
203.500 itself [1] 18/14
203.500 where [1] 32/17
24th [1] 1/25
25 [1] 3/6
259-6360 [1] 1/16
260-5259 [1] 2/3
29 [1] 3/6

**3**
30 [1] 3/6
308 [1] 1/15
31 [1] 3/6
32nd day [1] 25/6
34 [1] 3/6
36 [1] 3/6
38 [1] 3/6
3:13CV704 [1] 1/3

**4**
419 [2] 1/16 2/3
426 [1] 25/5
43 [1] 3/6
433 [1] 1/15
43604 [1] 1/16
43624 [1] 2/3
44 [1] 3/8
45 [1] 25/11

**5**
5259 [1] 2/3

**6**
60 [2] 25/6 28/17
600 [1] 1/19
6360 [1] 1/16

**7**
70 [1] 30/10
700 [1] 1/25
714 [1] 10/3
728-1888 [1] 1/20

**A**
ability [5] 8/2 8/22 21/14 21/21 34/9
able [8] 1/17 3/12 4/1 5/5 24/10 29/2 39/6 42/16
about [27] 14/20 16/1 19/22 20/3 20/4 20/17 22/2 22/2 23/6 23/9 23/14 23/16 24/20 26/3 26/16 26/23 27/5 29/18 29/22 31/11 31/13 35/20 35/21 41/11 42/3 46/23 51/12
above [1] 53/4

above-entitled [1] 53/4
absolutely [3] 12/22 20/22 34/14
abundantly [1] 28/7
accept [2] 31/20 43/11
accommodating [1] 8/2
accomplish [3] 21/11 21/12 32/8
accomplished [1] 49/3
accomplishes [1] 21/14
account [1] 13/17
accounting [3] 9/10 50/24 51/17
accusation [1] 41/24
accused [1] 46/16
acknowledge [2] 6/20 50/16
acquire [1] 19/8
act [26] 7/24 8/14 9/14 11/13 11/18 11/21 11/25 13/22 13/24 16/5 18/12 20/14 20/25 25/10 25/18 26/25 27/1 27/3 27/16 34/15 42/4 49/24 50/8 50/23 51/16 51/16
action [6] 13/9 33/23 36/25 38/10 38/13 49/15
actions [5] 25/7 25/23 26/23 30/21 41/3
actual [6] 12/7 21/22 29/5 29/6 33/3 37/5
actually [18] 4/5 9/24 10/19 11/16 15/16 18/4 18/15 19/3 23/24 28/2 28/22 30/3 47/9 47/12 47/21 47/23 49/2 49/6
add [5] 32/20 42/5 42/11 42/13 46/20
added [3] 40/20 41/24 42/15
adding [2] 42/1 46/12
addition [3] 9/2 9/6 30/14
additional [1] 9/6
address [2] 27/4 49/21
addressed [2] 9/25 36/5
addressing [2] 35/13 35/14
adequately [1] 36/4
adjourned [1] 51/25
administrative [2] 12/19 33/1
admitted [1] 4/17
advance [2] 6/1 30/24
advancing [1] 18/10
adversary [5] 11/14 18/23 30/12 42/25 50/16
affected [1] 41/3
after [6] 12/18 21/22 25/6 47/3 47/3 50/22
again [9] 24/15 30/4 32/22 33/14 34/8 34/12 45/21 46/12 50/16
against [5] 12/20 13/15 16/14 24/10 25/23
agency [3] 15/13 36/17 36/18
agency's [1] 26/19
agenda [1] 5/23
aggressively [1] 25/20
agree [4] 15/23 26/7 36/1 37/17
agreement [5] 19/24 20/1 24/14 24/16 24/19
ahead [3] 21/10 44/22 45/19
all [31] 8/17 12/24 14/17 14/19 19/18 19/19 21/13 25/11 26/13 26/23 29/20 33/13 34/14 35/22 38/13 38/14 38/19 39/5 39/11 41/24 42/14 43/12 43/13 43/18 46/3 46/4 46/12 48/10 48/13 50/22 51/20
allegation [7] 27/14 27/14 29/11 29/18 30/6 40/5 49/13
allegations [7] 29/19 31/20 41/15 42/23 44/1 44/3 44/14
allege [5] 29/24 30/14 31/10 31/11 31/16
alleged [5] 13/7 30/12 30/13 31/25 38/17
alleges [1] 17/14
alleging [3] 27/24 44/5 44/6
allow [5] 13/11 20/13 34/16 40/5 46/19
allowed [1] 44/20
allows [2] 5/24 37/8
alluded [1] 14/4
almost [1] 48/10
alone [1] 11/12
already [2] 17/4 46/21

also [12] 3/6 6/2 15/4 19/20 25/15 34/5 40/12 40/12 46/24 47/23 47/24 50/3
alternate [1] 15/17
alternative [3] 9/2 13/6 16/23
alternatives [1] 40/1
always [4] 26/9 43/4 47/15 50/5
am [1] 5/1
ambiguous [3] 27/11 28/4 28/4
amendment [3] 47/3 48/25 49/2
AMERICA [1] 1/3
among [2] 15/2 39/22
amount [8] 9/4 9/5 9/6 16/17 26/17 33/10 34/10 34/11
amounts [1] 41/25
analysis [9] 6/25 10/21 11/14 11/19 17/1 25/16 36/1 38/25 48/22
Andrew [5] 1/23 3/14 3/16 6/3 24/11
Aneel [3] 1/18 3/13 3/13
Angela [3] 2/2 53/6 53/8
Angelita [2] 1/14 3/11
annual [2] 29/12 29/14
another [2] 18/18 18/19
answer [11] 5/21 7/15 7/16 7/20 7/21 8/15 12/13 21/10 22/12 23/22 30/16
answering [1] 6/2
answers [1] 5/18
anticipation [2] 6/8 14/2
any [26] 9/13 11/12 15/20 15/20 15/21 19/11 21/25 22/13 23/17 26/18 26/24 36/8 38/3 39/4 39/9 39/9 40/7 40/16 41/8 41/12 42/13 42/20 43/2 43/7 43/7 50/17
anyone [2] 22/1 49/24
anything [14] 4/9 15/24 16/11 20/9 22/24 32/2 32/20 40/22 42/11 45/3 46/20 47/15 49/14 51/4
anyway [3] 4/18 4/23 17/24
apologize [2] 4/3 5/1
Appeals [1] 36/22
appear [2] 11/25 36/6
APPEARANCES [1] 1/13
appears [3] 41/7 41/10 47/2
appellate [1] 5/16
applicable [1] 37/11
application [1] 23/3
applied [1] 16/4
apply [2] 11/19 27/3
Appreciate [1] 51/20
appropriate [1] 12/23
approval [1] 18/20
April [2] 36/18 36/19
April 2011 [1] 36/19
are [49] 4/15 4/25 7/11 8/10 8/13 8/14 9/21 9/24 9/25 11/12 13/23 14/25 17/15 17/24 18/9 18/22 20/5 20/6 20/12 20/17 21/4 23/14 25/2 25/13 25/14 25/19 26/2 26/13 26/15 29/9 30/2 30/17 32/8 32/9 35/19 35/22 36/15 36/19 39/1 39/2 40/21 41/16 42/17 43/19 43/25 44/12 46/12 46/17 48/8 51/12
area [1] 41/21
arena [1] 37/14
arguable [4] 27/13 27/21 27/24 28/5
argument [14] 1/10 5/16 8/5 15/20 15/21 25/16 32/22 33/9 35/14 39/6 44/1 46/21 48/14 51/12
arguments [2] 20/18 36/3
arises [1] 48/16
arising [1] 48/13
around [1] 20/18
articles [3] 35/21 36/20 45/7
as [49] 5/7 6/18 6/18 6/23 7/23 8/1 9/6 10/4 11/20 13/15 14/22 15/14 16/23 21/22 22/4 22/10 22/19 22/19 22/19 24/2 24/22 26/21 31/16 31/16 31/20 31/21 32/9 32/9 33/1 34/5 34/8 34/12 34/20 35/1 39/3 39/15

**A**

as... [13] 40/17 43/23 44/24 45/8 47/19
47/19 47/23 48/3 48/4 50/19 51/8 51/9
51/14
ask [2] 8/18 33/20
assessment [2] 36/7 39/23
ASSOCIATION [1] 1/7
assume [1] 47/15
at [56]
attach [1] 49/11
attached [2] 23/7 43/19
attachment [1] 36/8
attempted [1] 39/24
attending [1] 4/4
attention [1] 38/21
attorney [1] 1/14 3/20
audit [3] 13/4 35/16 35/16
audits [2] 25/21 34/7
automatic [1] 34/20
available [4] 11/17 13/23 36/20 46/10
Avenue [1] 2/2
avoid [3] 25/5 51/17 51/18
aware [7] 14/11 35/15 38/11 44/12 44/13
44/18 46/8
away [1] 6/24

**B**

back [15] 3/13 5/2 5/20 9/5 9/13 9/22 13/4
16/16 17/1 32/22 33/14 36/22 38/6 39/21
51/13
background [1] 3/4
backing [1] 39/10
bad [1] 39/13
bank [61]
bank's [4] 37/24 38/1 41/3 46/5
bar [1] 40/19
bare [1] 27/15
bargain [7] 8/6 9/20 12/3 19/1 19/3 23/23
25/13
base [1] 5/8
based [7] 6/11 6/22 9/3 34/12 39/7 51/18
51/18
basically [3] 7/11 14/15 17/18
basing [1] 43/25
basis [5] 19/18 19/20 29/24 29/25 50/8
be [64]
because [36] 4/11 4/19 10/12 13/13 14/17
16/8 16/9 17/4 18/14 21/17 23/21 23/23
25/15 25/15 27/19 27/23 29/1 29/7 30/23
32/8 33/5 33/14 33/18 34/21 35/15 37/4
37/12 38/16 41/19 42/6 45/15 45/25 47/8
48/22 49/14 49/19
been [38] 3/4 9/22 11/25 12/10 13/17 14/5
15/7 17/14 19/4 19/9 19/19 20/8 21/1 23/16
24/6 24/14 27/2 27/12 27/12 28/7 37/2 39/5
39/6 39/17 41/3 41/22 41/23 43/6 43/6
43/17 44/6 46/15 48/15 48/21 49/8 49/22
49/25 51/21
before [11] 1/10 5/15 5/22 22/11 22/25
36/24 41/9 42/24 43/9 47/12 49/25
began [1] 32/5
begin [2] 5/21 14/18
beginning [1] 12/12
behalf [4] 3/9 3/12 3/15 6/21
behavior [1] 41/6
being [3] 10/10 12/7 42/3
believe [6] 4/13 14/6 30/2 36/19 41/19
47/7
believed [1] 30/4
bellow [1] 5/10
benefits [5] 17/17 17/17 23/3 34/10 34/12
best [4] 8/13 22/5 28/21 50/19
better [1] 4/20

between [5] 8/22 23/9 23/11 25/4
beyond [1] 17/6
bill [9] 3/15 3/16 47/4 47/7 47/9 47/11
47/23 48/3 48/4
billing [1] 11/5
billion [2] 13/17 13/20
binary [1] 27/20
bit [1] 5/21
bite [1] 7/5
Blond [2] 28/20 31/5
Blunt [2] 11/13 11/18
board [3] 13/2 13/25 34/5
Bocce [1] 38/7
boiler [1] 23/10
borrowers [2] 39/24 42/13
both [17] 4/23 6/7 6/20 14/2 14/8 14/12
15/3 18/15 18/22 21/12 28/23 31/2 36/15
36/19 42/5 43/1 47/2
Bowcut [2] 4/15 4/25
box [1] 35/1
breath [2] 43/2 43/3
Brian [2] 4/15 4/24
bridge [2] 3/21 4/12
Bridges [2] 1/14 3/11
brief [17] 6/10 6/10 6/13 6/19 6/20 6/20
6/23 7/16 10/2 14/6 14/23 23/8 31/7 33/2
36/5 47/4 50/14
briefed [1] 3/4
briefing [3] 9/22 40/17 46/21
briefs [1] 47/2
bring [1] 38/21
broad [1] 37/24
broadly [2] 6/8 38/2
brought [2] 47/21 50/2
Buckley [1] 1/24
built [1] 18/16
burden [4] 27/7 27/10 29/22 29/23
business [1] 26/16
busy [1] 3/25
but [50] 4/9 4/18 5/9 5/11 5/22 5/24 6/18
9/2 9/11 11/2 11/8 11/16 13/10 16/3 16/14
20/18 21/5 22/17 25/23 26/22 27/2 27/8
28/7 30/4 31/24 32/12 33/22 34/5 34/7
34/12 34/22 34/23 35/16 37/7 38/2 38/7
39/14 39/19 40/13 41/20 43/16 44/9 44/21
45/23 48/9 48/16 49/5 50/3 51/10 51/23

**C**

cake [1] 43/21
calculated [1] 34/12
call [2] 5/16 9/10 9/11 25/5
called [6] 3/23 4/11 5/2 9/13 11/12 48/11
campaign [3] 43/10 43/24 44/8
can [43] 3/22 4/16 5/19 5/25 7/6 8/7 8/24
8/25 9/1 9/2 9/2 11/6 11/20 12/6 12/19 13/1
14/1 15/24 17/11 17/11 18/20 19/15 19/16
19/19 21/24 21/24 22/23 25/7 25/19 25/20
30/24 32/8 34/13 34/14 40/5 43/9 46/2
47/24 47/25 48/1 50/3 50/14 51/7
can't [6] 15/6 15/23 25/14 30/2 31/9 49/20
cannot [1] 19/10
care [1] 5/9
case [48] 3/1 4/18 6/24 6/25 7/1 7/17 7/23
8/12 9/21 10/1 10/3 10/16 10/20 11/6 11/19
12/9 14/5 14/20 15/2 15/14 16/21 20/14
28/5 30/16 33/2 34/24 35/5 35/8 35/9 35/9
35/12 35/13 35/17 35/23 35/23 36/2 36/16
37/6 38/7 38/15 38/21 39/6 40/24 44/13
45/1 48/1 49/16 50/9
cases [6] 14/5 14/13 18/9 20/25 31/6 49/6
cause [1] 18/17
certain [6] 23/11 25/7 25/7 25/8 25/9
46/15
certainly [3] 38/5 40/6 44/13

certification [8] 19/23 23/2 23/4 23/6
28/18 29/4 29/14 39/3
certification's [1] 29/13
certifications [4] 19/17 22/14 31/3 46/1
certify [2] 28/21 53/3
certifying [2] 19/18 28/23
Chablani [1] 1/18
challenge [1] 36/8
challenging [1] 36/6
Champion [3] 1/18 3/14 7/3
chance [2] 36/15 47/1
changes [1] 36/3
characterization [2] 43/23 44/9
characterize [1] 34/8
Chesbrough [1] 33/1
choose [6] 12/21 12/25 13/1 48/19 48/19
49/14
chose [2] 45/1 45/3
Circuit [11] 9/21 9/24 9/25 14/4 14/12 19/4
33/7 35/4 35/6 38/7 40/4
Circuit's [3] 10/9 10/11 32/23
circuits [1] 14/11
circumstance [1] 35/14
circumstances [4] 19/11 23/11 25/9 31/20
cite [3] 31/6 33/2 37/19
cited [5] 10/1 12/10 14/5 14/5 19/20
civil [4] 18/18 25/10 32/25 50/9
claim [59]
claims [36] 6/11 6/22 7/23 9/14 11/13
11/18 11/21 11/25 13/18 13/22 13/24 16/5
17/16 17/19 18/12 20/14 20/25 25/18 26/25
27/3 27/16 29/20 30/7 34/15 37/2 38/16
38/19 40/13 42/4 44/7 46/24 49/1 49/24
50/8 51/16 51/16
classic [1] 15/14
clause [2] 32/6 33/19
claw [1] 51/13
clear [17] 6/10 6/19 9/24 20/18 22/19 24/2
27/24 28/1 28/8 29/8 32/7 32/13 36/9 40/17
41/2 41/5 49/22
clearest [1] 19/13
clearly [4] 6/18 6/21 27/15 40/19
closer [2] 7/5 7/9
come [4] 3/13 16/15 17/1 51/23
comes [1] 44/1
commence [2] 19/8 24/13
comment [4] 8/19 9/15 22/24 36/14
commentary [1] 5/24
comments [1] 5/24
committee [1] 48/3
committing [1] 40/12
common [1] 46/11
company [1] 31/24
company-wide [1] 31/24
comparable [1] 50/20
compensation [1] 32/11
complaint [15] 17/13 23/9 27/23 28/13
28/18 29/11 29/18 29/20 29/22 29/25 30/10
31/13 41/1 42/18 42/21
complaints [1] 30/1
completed [1] 23/21
completely [1] 12/21
compliance [21] 6/6 10/6 10/8 22/14
23/23 24/23 24/24 25/3 26/5 27/12 27/13
28/21 28/24 28/25 29/15 30/2 30/4 30/5
31/22 32/1 33/3
complicated [1] 27/5
complied [4] 22/22 27/6 27/21 28/6
complies [2] 12/8 23/15
comply [15] 11/11 12/20 14/16 18/17 24/1
24/8 25/23 27/8 27/9 27/22 32/15 37/13
39/12 44/1 48/18
complying [4] 9/8 29/4 31/17 38/16

## C

concede [4]  14/1 22/13 22/17 33/5
conceded [1]  6/18
concepts [1]  48/6
concern [3]  8/17 22/1 50/7
concerns [1]  8/16
condition [35]  6/7 6/24 7/22 8/6 8/12 9/8
 9/11 9/18 9/20 10/3 10/4 10/11 11/14 11/24
 14/2 14/8 14/9 14/14 15/3 15/5 15/6 15/14
 16/22 17/3 17/18 18/15 18/15 18/21 18/22
 19/5 19/14 20/15 26/5 32/23 33/8
conditions [4]  8/10 9/25 14/14 14/21
conduct [2]  48/1 49/12
conference [2]  4/1 5/2
conflict [1]  32/9
congress [1]  50/7
connected [1]  4/11
consent [2]  35/20 36/17
consider [1]  11/16
considerations [1]  13/16
considered [2]  18/12 47/5
consistent [2]  10/21 49/16
constituted [1]  30/21
constitutes [1]  33/3
construct [2]  9/17 9/18
construed [1]  8/13
contact [1]  39/24
context [4]  11/21 16/1 51/7 51/10
contingencies [2]  47/7 47/10
contingent [7]  48/5 48/7 48/8 48/9 48/11
 49/21 50/10
continue [2]  8/21 12/12
continued [1]  47/7
continues [1]  47/9
contradiction [1]  37/21
contradicts [1]  37/20
conventional [1]  50/22
conveyance [1]  22/23
conveying [1]  23/13
copies [1]  47/22
core [4]  14/15 14/23 14/25 44/5
corporate [5]  30/18 30/19 30/24 31/1 31/2
correct [4]  20/24 50/16 50/17 53/3
could [14]  3/25 13/7 13/8 13/8 13/10 14/3
 16/11 16/25 19/2 27/12 27/12 40/11 47/18
 49/14
couldn't [1]  49/22
counsel [6]  5/7 10/10 36/20 47/20 47/22
 51/20
counsel's [4]  15/10 23/14 37/21 43/20
counter [1]  5/19
couple [2]  12/16 16/3 46/20
course [5]  13/4 19/10 30/25 34/6 45/19
court [15]  1/1 2/2 3/9 4/4 4/14 11/9 11/16
 12/10 17/2 21/1 36/22 45/3 45/10 47/18
 51/21
courts [5]  12/1 17/9 17/25 19/4 28/3
covered [1]  46/21
create [1]  7/22
created [2]  8/23 32/16
creates [1]  8/1
creative [1]  10/10
crisis [1]  38/23
critical [2]  16/20 21/5
CRR [2]  2/2 53/8
Cruz [2]  1/14 3/11
currently [1]  49/7

## D

D.C [2]  3/20 4/20
Daily [1]  36/21
damage [2]  23/9 23/12
damages [9]  13/3 13/9 13/19 13/20 13/22

Dane [2]  1/18 3/14
Date [1]  53/8
day [4]  17/15 25/6 25/6 40/21
days [1]  25/11
DC [2]  1/19 2/1
deal [2]  18/25 37/5
Dealer [2]  35/22 36/21
dealing [1]  17/6
debate [1]  49/4
decades [1]  24/17
decide [4]  12/19 12/23 16/13 34/14
decision [11]  12/21 13/11 13/13 15/19
 16/10 16/12 16/15 27/13 32/23 35/6 51/22
default [1]  25/6
defendant [9]  1/22 6/2 35/7 35/15 39/5
 45/21 47/3 51/2 51/14
defendant's [3]  45/15 45/20 45/24
Defendants [1]  1/8
defense [2]  36/23 37/1
defer [1]  45/9
define [3]  10/4 20/2 24/16
defined [2]  18/18 48/4
definition [4]  10/9 10/9 10/11 48/2
defrauding [2]  39/18 41/17
degree [1]  42/20
denial [3]  8/11 18/11 32/18
denied [3]  10/14 15/16 51/15
deny [8]  6/11 6/22 8/2 8/23 15/13 21/14
 26/20 27/1
department [2]  19/7 24/12
depending [2]  7/6 25/22
derivative [1]  42/9
describes [2]  16/22 47/4
describing [1]  15/12
detail [1]  8/8
determination [2]  34/1 34/3
determine [2]  12/1 18/1
deterrent [1]  21/14
did [19]  3/20 4/3 4/12 12/25 14/6 14/8 17/2
 17/3 17/4 22/13 27/20 27/21 29/21 30/25
 31/1 35/16 36/23 48/9 49/3
didn't [11]  27/14 27/22 28/5 28/6 28/20
 28/20 29/3 29/6 38/2 38/20 43/2
difference [2]  16/18 18/21
differences [1]  9/14
different [13]  8/24 13/1 15/12 16/5 26/19
 26/24 39/1 39/2 39/2 39/3 39/11 48/5 48/7
difficult [3]  5/6 5/12 26/19
direction [1]  50/25
disagreement [1]  41/10
disclose [2]  43/8 43/8
disclosed [9]  37/2 37/8 39/17 41/8 41/22
 41/23 42/6 42/24 43/17
disclosure [11]  35/18 36/4 36/5 36/11
 39/20 39/20 39/21 40/19 43/19 45/2 45/9
disclosures [4]  35/19 36/10 37/5 41/18
discretion [12]  12/19 12/22 15/11 15/13
 16/13 26/16 26/17 26/19 26/24 34/13 49/9
 49/14
discretionary [1]  12/21
discuss [5]  8/7 19/5 28/18 32/6 47/1
discussed [3]  24/22 32/19 33/12
discussing [3]  15/7 36/23 41/24
discussion [6]  12/17 19/1 27/5 27/17
 36/17 37/1
dismiss [1]  3/3
disproportionate [1]  11/18
disregard [1]  29/8
distinguish [2]  16/17 16/18
distressed [1]  39/24
DISTRICT [3]  1/1 1/1 1/11
DIVISION [1]  1/2
do [39]  4/12 5/9 5/25 10/15 10/15 10/22

22/10 22/13 22/24 23/12 23/17 25/20
21/9 22/3 22/13 22/24 23/12 23/17 25/20
25/21 25/21 25/24 25/24 26/8 27/15 27/18
29/1 31/19 34/14 37/21 38/14 40/24 42/24
43/2 44/18 44/19 46/3
docket [4]  1/3 3/5 3/6 3/8
documents [4]  36/19 37/21 37/24 45/22
doer [1]  21/22
does [17]  6/15 7/12 10/18 11/24 18/2
 21/17 22/20 22/20 22/20 28/25 35/9 36/25
 40/4 42/16 47/14 50/6 51/8
doesn't [27]  4/9 10/18 12/20 16/9 18/4
 25/17 26/3 26/7 27/3 30/4 30/22 32/24
 32/25 34/23 35/10 35/23 36/5 37/7 38/2
 38/20 39/14 40/22 42/2 42/10 42/13 46/13
 50/17
doing [7]  39/17 41/19 43/4 43/5 43/8
 46/12 51/8
DOJ [2]  26/21 32/7
dollars [1]  33/18
don't [35]  4/10 5/6 5/9 8/20 10/25 13/2
 16/7 17/1 21/18 22/16 23/21 24/15 25/23
 26/5 29/1 30/16 33/17 36/2 36/8 36/13
 36/16 39/19 41/19 42/19 42/21 43/7 43/9
 43/13 43/14 44/9 46/4 46/4 49/3 49/23 51/4
done [8]  5/15 8/23 12/6 19/11 22/12 26/22
 35/16 38/14
down [6]  16/12 16/25 29/22 32/25 44/1
 49/15
during [3]  5/18 13/3 46/15
duties [2]  48/8 48/11
duty [17]  29/8 48/5 48/5 48/6 48/7 48/13
 48/15 49/8 49/9 49/10 49/13 49/18 49/25
 50/18 50/20 50/20 51/8

## E

e-mail [1]  4/8
each [6]  18/16 22/18 28/19 29/4 32/9
 32/10
earlier [6]  6/10 32/6 32/9 33/13 34/13
 35/5
earthquake [1]  23/10
easily [2]  19/15 32/7
eat [1]  43/21
effect [5]  8/1 9/7 21/15 29/3 39/14
effort [2]  9/17 12/1
either [5]  24/3 24/23 27/20 46/19 46/21
element [3]  16/4 16/5 16/6
elements [1]  31/8
elevate [1]  9/12
eligibility [5]  14/15 14/18 14/19 14/23
 14/25
eligible [1]  32/11
else [5]  20/17 32/2 35/16 42/8 49/24
enacted [1]  49/6
end [5]  24/14 33/14 33/14 40/21 51/24
ends [1]  12/7
enforce [17]  12/24 12/25 13/1 13/8 13/12
 13/13 17/11 25/20 25/25 34/6 34/15 34/16
 35/1 35/2 48/20 50/2 50/7
enforced [1]  50/3
enforcement [5]  12/20 12/23 16/12 49/10
 49/15
enforces [1]  34/4
enforcify [1]  49/25
enforcing [3]  13/14 34/19 46/18
engage [2]  24/21 49/12
engaged [1]  41/6
engaging [2]  42/12 43/10
enough [3]  19/24 31/10 40/3
ensure [5]  8/3 21/24 32/10 50/24 51/8
entire [1]  44/6
entirely [1]  42/8
entitled [5]  17/21 17/22 17/24 18/2 53/4

**E**

equivalence [3] 8/22 9/19 32/24
equivalent [4] 8/11 18/11 32/18 33/10
especially [2] 5/11 40/3
essence [1] 43/1
essentially [1] 33/5
established [11] 48/13 48/15 49/8 49/9
49/10 49/13 49/17 50/1 50/18 50/20 51/7
even [18] 5/21 6/10 10/7 12/24 15/2 15/5
16/3 16/7 30/25 31/1 31/5 31/10 31/25
37/13 40/14 40/15 40/17 47/16
event [2] 23/9 40/16
ever [3] 13/18 14/12 50/2
every [6] 12/9 13/15 17/15 24/7 28/25
38/22
everyone [4] 5/13 43/3 43/9 43/14
everything [1] 20/17
evidence [3] 30/6 39/23 43/18
exact [1] 9/5
exactly [13] 10/2 11/20 12/2 12/8 12/17
12/18 18/12 27/7 32/16 42/22 50/10 51/11
51/14
exacts [1] 9/6
exacts an [1] 9/6
examination [1] 40/2
examples [2] 24/2 48/8
executes [1] 29/14
exercise [2] 16/13 50/5
exists [1] 49/18
explain [1] 10/2
explained [1] 6/23
explaining [1] 8/18
explicit [2] 19/6 39/20
explosion [1] 23/10
express [4] 17/5 17/5 22/14 22/17
expressed [1] 22/4
expresses [1] 22/21
expressly [1] 20/13
expulsion [1] 13/3
extent [1] 48/24
extreme [1] 34/24

**F**

face [14] 6/19 20/19 22/14 22/14 23/5 23/5
27/18 27/18 27/20 27/20 31/18 31/18 36/24
36/24
face-to-face [6] 22/14 23/5 27/18 27/20
31/18 36/24
fact [10] 9/12 12/18 12/18 14/10 26/6 30/1
33/23 34/11 37/9 48/21
facts [11] 31/10 31/11 36/15 36/16 37/13
42/1 43/25 44/10 44/12 45/9 46/13
factual [2] 25/9 29/11
fail [1] 39/12
failed [4] 27/8 27/8 32/15 48/17
failing [2] 37/13 45/23
failings [1] 41/20
fails [3] 10/12 24/1 24/8
failure [11] 6/11 6/22 11/10 12/5 18/17
24/21 27/18 41/17 44/1 44/3 45/23
failures [3] 38/11 38/12 38/12
faith [1] 29/24
fall [2] 6/24 25/22
falls [1] 9/5
false [44] 6/7 7/23 8/13 8/14 9/14 11/13
11/18 11/21 11/25 13/21 13/22 13/24 16/5
16/8 17/5 17/5 17/7 17/20 17/25 18/12
20/14 20/25 20/25 25/18 26/24 27/2 27/16
29/17 29/19 30/8 34/15 42/4 46/24 49/1
49/11 49/18 49/24 50/8 50/22 50/23 51/5
51/10 51/15 51/16
falsity [4] 16/6 30/5 31/3 31/4
family [1] 23/3

fashion [2] 40/18 41/9
fatal [1] 46/5
fathom [1] 31/25
FCA [1] 50/3
FCA's [1] 29/7
Fe [2] 4/23 4/24
Federal [1] 22/7
few [4] 19/21 26/25 29/19 48/7
FHA [16] 17/15 37/14 38/5 38/25 39/7
40/11 40/15 43/11 43/12 45/24 45/25 46/3
46/8 46/9 46/10 46/11
fiction [1] 47/16
filed [1] 3/7
final [3] 8/9 22/8 22/10
financial [1] 38/23
find [8] 19/15 21/9 22/3 22/6 22/11 28/15
41/18 43/7
finding [2] 11/3 42/21
fine [2] 5/24 49/25
fire [1] 23/9
first [16] 6/2 6/4 7/14 7/25 8/21 15/11
26/16 32/4 33/13 33/16 35/8 39/16 43/5
50/23 51/6 51/15
fit [1] 7/13
Fitzgerald [2] 1/14 3/12
fix [1] 23/12
fixed [6] 48/4 48/6 48/13 48/15 48/16
48/21
fixing [1] 23/16
flood [2] 23/9 23/16
floor [3] 20/4 47/5 47/5
flowing [1] 14/22
flung [1] 50/17
flush [1] 23/19
focus [1] 5/25
followed [4] 19/9 19/14 19/19 24/14
following [6] 3/5 38/22 40/9 41/12 41/13
43/11
footnote [1] 14/22
forbearers [1] 21/20
forbid [1] 18/2
forbids [1] 18/4
foreclosure [6] 19/8 24/13 25/5 32/12
36/25 39/25
foregoing [1] 53/3
forgetting [1] 31/10
form [7] 9/12 23/2 23/4 23/7 26/3 29/13
51/18
formally [1] 50/1
forth [3] 5/20 9/23 13/5
forward [8] 11/15 29/2 36/2 36/10 39/6
43/8 46/24 46/25
found [4] 14/12 33/22 42/17 42/22
four [1] 35/7
frankly [4] 25/16 35/24 37/2 41/19
fraud [14] 30/22 33/3 37/6 37/8 38/17
38/17 38/19 39/16 40/5 40/5 40/12 41/25
44/8 46/4
fraudulent [6] 12/6 38/10 40/13 42/2 43/24
46/2
front [1] 33/14
fulfilling [1] 46/16
full [1] 12/15
fully [3] 12/8 23/20 38/11
fun [2] 44/17 45/11
functions [1] 51/13
fund [1] 16/17
fundamental [2] 15/5 16/16
future [1] 50/8

**G**

gain [1] 50/5
gave [1] 36/7

general [2] 20/8 45/3
generally [2] 20/8 39/24
George [1] 3/15
get [8] 3/25 5/23 15/23 16/6 16/7 18/4
20/18 22/8
gets [1] 7/24
getting [4] 18/3 19/4 33/18 51/3
give [8] 5/13 6/1 7/16 11/12 20/10 22/20
26/11 36/14
given [3] 7/19 31/23 32/1
gives [1] 21/21
go [17] 5/20 7/15 13/2 19/2 21/10 21/21
22/16 30/5 32/3 32/3 32/24 32/25 35/8
44/22 45/19 46/3 47/24
goes [13] 5/17 5/17 8/6 8/12 8/25 12/3
23/20 23/22 23/24 30/5 33/14 44/5 50/25
going [14] 4/4 4/5 4/7 5/3 9/22 13/11 22/8
27/9 27/10 32/22 34/22 39/21 40/16 50/21
gone [2] 41/2 41/5
good [4] 29/24 30/23 47/8 50/5
got [4] 11/6 13/18 16/8 18/23
government [34] 6/18 6/21 8/7 9/7 9/23
10/5 10/7 12/4 14/21 15/15 23/25 24/3 24/7
26/7 27/1 32/14 35/15 38/9 38/10 39/3
39/10 39/15 39/16 39/18 40/13 44/11 44/13
44/18 45/5 46/8 49/23 50/6 51/1 51/3
government's [5] 6/5 6/9 6/19 8/3 14/6
greater [1] 8/8
grounds [1] 45/2
guidance [3] 19/19 20/6 20/10
guidelines [1] 37/1
guys [1] 15/23

**H**

had [29] 10/5 11/4 13/19 14/14 15/15
15/16 15/17 15/18 16/7 24/4 28/5 29/8
30/19 31/5 31/19 34/21 35/16 43/17 44/3
44/3 46/15 46/25 48/5 48/6 48/20 48/21
49/17 51/14 51/14
hand [2] 38/18 47/24
handbooks [1] 20/6
handful [1] 14/25
happened [2] 11/3 35/8
happens [2] 21/23 22/1
happy [1] 49/4
hard [4] 19/25 24/18 31/25 41/18
harping [1] 38/6
has [46] 3/4 3/23 6/18 8/23 8/23 9/22 9/25
11/15 11/25 13/14 14/12 14/13 15/11 15/13
17/20 18/10 18/15 19/6 19/13 21/6 21/19
23/16 23/25 26/17 32/7 33/13 34/19 34/23
36/2 38/14 39/5 39/5 40/15 40/16 41/8
41/16 41/24 42/5 43/6 43/6 45/6 48/15 49/8
49/10 49/25 51/21
hasn't [2] 21/1 22/22
hate [1] 11/4
have [104]
haven't [5] 5/15 15/19 26/18 46/20 46/25
having [6] 12/6 19/2 21/12 22/1 26/24
51/12
he [17] 3/22 3/23 3/24 3/24 3/25 4/4 4/5
4/8 4/9 4/11 4/12 4/13 4/19 37/17 37/20
48/9 48/9
he's [10] 4/7 4/8 4/10 4/17 15/12 30/16
43/1 43/2 43/3 50/16
healthcare [1] 11/4
hear [9] 3/22 4/9 5/5 5/12 5/19 19/22 33/4
35/6 44/22
heard [7] 7/19 9/16 15/19 18/7 22/25
26/18 45/21
hearing [5] 1/10 3/2 3/7 30/13 45/24
heart [15] 8/6 8/12 9/19 12/3 19/1 19/3
19/24 20/1 23/20 23/22 24/16 24/19 25/13
37/6 44/5

# H

held [1] 27/2
help [8] 6/15 7/13 10/18 11/21 35/9 35/10
35/23 49/20
helpful [1] 51/21
helpfully [1] 27/17
helps [2] 6/16 11/22
Hendow [2] 14/5 14/20
her [1] 28/21
here [25] 3/1 4/11 4/18 4/23 6/25 8/23 11/9
11/11 12/11 13/6 13/10 13/14 14/22 18/3
23/6 35/5 37/11 39/6 39/15 40/20 40/24
41/10 45/4 48/14 49/12
higher [1] 24/6
highlighting [1] 27/23
him [2] 4/1 30/13
his [4] 3/24 3/25 43/1 49/2
history [3] 47/1 49/5 49/19
hit [2] 23/16 34/22
Hobbs [10] 10/1 10/15 10/19 11/4 11/4
11/21 11/22 12/9 14/4 14/5
hold [1] 36/24
holds [1] 32/12
holler [1] 22/12
homeowner [1] 39/14
homeowners [2] 36/23 41/3
Honor [43] 3/19 4/8 4/16 6/3 6/16 7/2 8/15
9/16 9/22 12/14 15/8 16/3 16/21 19/25
20/12 20/20 23/1 23/7 23/19 24/15 25/1
27/16 29/10 30/1 31/6 31/15 32/5 32/21
34/18 35/11 35/24 38/24 40/17 41/15 43/22
45/4 46/7 46/22 47/15 49/1 49/4 50/9
50/12
HONORABLE [1] 1/10
hopefully [1] 5/4
house [6] 23/16 47/5 47/5 47/6 47/11
47/14
how [10] 20/2 24/16 25/5 26/18 27/5 28/4
32/7 35/9 42/16 42/22
How's [1] 7/8
HUD [47] 6/11 6/21 8/23 12/18 13/7 13/16
13/23 13/25 15/11 15/15 19/12 19/20 20/3
20/3 20/6 20/9 21/6 21/17 21/21 22/22 23/2
23/13 25/17 25/19 25/24 26/17 26/23 28/25
30/11 33/23 34/4 34/13 34/17 34/18 34/23
37/25 38/20 41/17 46/7 46/13 46/14 48/19
48/19 48/21 48/21 49/9 49/14
HUD's [7] 13/12 15/19 16/12 18/19 24/19
26/16 46/10
hundreds [1] 20/8
hurt [3] 6/15 35/9 35/23

# I

I'd [3] 10/24 22/16 45/17
I'll [7] 5/7 5/16 8/18 26/11 35/7 46/19
50/16
I'm [20] 3/19 3/21 4/1 5/24 13/18 14/11
20/1 21/3 22/6 22/8 22/9 26/12 30/13 34/18
40/22 44/2 44/20 45/23 49/4 51/23
I've [1] 11/6
idea [1] 18/23
identify [1] 28/13
if [80]
II [1] 1/23
immaterial [2] 48/22 48/23
implicitly [1] 30/3
implied [2] 19/23 22/19
impliedly [2] 19/12 19/16
imply [1] 17/7
importance [1] 39/2
important [5] 25/14 25/17 25/19 45/2
45/25
impose [9] 8/24 8/25 9/3 14/8 17/2 17/9

imposed [2] 15/17 16/25
improper [2] 22/23 49/12
in [178]
incident [1] 31/23
include [1] 40/4
included [1] 39/22
including [3] 38/13 40/1 41/21
incomplete [1] 47/2
incontestability [5] 8/3 21/16 32/6 33/18
34/21
incontestable [2] 33/6 33/6
independent [3] 42/5 42/6 42/10
indication [1] 14/7
indicta [1] 14/4
individual [1] 32/11
infer [2] 30/3 40/11
inference [1] 40/5
inferred [1] 37/8
inflation [1] 43/12
intent [2] 19/7 24/12
inter [1] 36/18
inter-agency [1] 36/18
interest [3] 6/5 6/9 13/14
interesting [2] 18/14 42/25
interpretation [1] 27/11
interpreted [1] 49/7
interrupt [3] 3/20 5/18 7/13
into [7] 13/16 18/23 19/2 28/10 35/5 40/13
45/3
intoning [1] 31/7
intra [1] 36/17
intra-agency [1] 36/17
intricacy [1] 30/18
introduce [2] 4/17 7/12
irrelevant [1] 25/16
is [183]
isn't [10] 13/23 16/8 17/25 19/23 20/3
29/13 35/13 37/11 40/3 46/5
isolated [2] 31/23 31/23
issue [17] 6/13 11/11 15/22 20/10 20/25
25/17 25/24 27/11 29/13 29/16 35/13 35/18
38/8 41/20 44/25 48/1 49/22
issues [1] 35/23
it [144]
it's [62]
itemize [1] 13/19
its [13] 6/18 6/19 12/19 16/13 20/18 21/20
22/21 34/13 40/9 46/16 47/4 49/14 51/14
itself [13] 8/4 9/4 14/14 18/14 19/17 21/16
22/2 22/8 31/5 34/17 34/18 39/10 41/2

# J

JACK [1] 1/10
job [2] 35/2 35/2
John [1] 4/17
joining [1] 3/21
Journal [2] 35/21 36/21
JUDGE [1] 1/11
judgment [2] 47/17 50/6
just [35] 4/6 4/7 4/8 5/2 6/8 7/12 7/19 9/9
11/3 14/10 15/4 16/5 17/11 18/6 21/1 22/4
26/6 26/24 28/20 28/20 29/3 32/22 37/17

H720 36/25 42/25 45/9 47/24 49/14
49/19 50/21 50/24 51/18 51/18
justice [1] 50/1

# K

keep [2] 28/11 38/6
keeps [1] 32/22
key [3] 11/8 11/9 11/23
kick [1] 9/1
kicked [1] 5/2
kinds [2] 8/24 48/5
knew [23] 10/7 17/22 18/25 27/8 28/22
29/17 30/6 30/7 30/15 30/25 30/25 31/2
31/3 31/4 31/9 31/12 31/15 31/22 35/16
43/4 43/10 43/15 43/17
know [35] 4/10 4/12 17/20 20/1 20/2 22/16
24/16 24/17 24/18 25/4 25/4 25/19 27/5
28/5 28/7 28/22 29/3 29/8 29/24 30/24 32/1
32/19 33/17 33/19 35/8 35/25 36/4 41/17
42/14 42/19 42/21 44/24 45/6 46/14 46/15
knowing [3] 27/25 28/1 28/15
knowingly [1] 30/10
knowledge [19] 27/18 28/3 28/8 28/21
29/5 29/6 29/7 29/12 29/18 29/23 29/25
30/1 30/18 30/19 30/22 31/9 42/9 45/5
46/11
known [8] 10/6 15/16 15/17 41/8 43/4 44/4
46/9 46/13
knows [3] 28/24 29/14 46/7
Kyl [3] 47/3 48/8 49/23
Kyl's [1] 48/25

# L

land [2] 17/4 48/25
language [12] 11/24 11/24 11/25 18/14
20/16 23/5 29/13 47/9 47/25 48/12 49/2
49/5
large [1] 42/11
largely [1] 36/1
last [3] 12/11 26/12 50/14
later [8] 16/3 16/25 33/22 34/1 34/4 34/4
49/10 49/15
law [9] 7/23 8/13 9/21 16/21 17/7 20/24
37/7 40/4 49/16
lawsuit [1] 41/9
lawyers [1] 5/5
leaves [1] 51/13
left [1] 48/9
legal [1] 25/16
legislative [3] 47/1 49/5 49/19
legislatures [1] 47/13
lender [6] 9/1 46/8 46/9 46/10 46/11 46/14
lenders [2] 17/15 42/11
let [6] 11/12 12/12 32/3 35/7 36/14 44/17
let's [3] 19/22 35/5 44/22
letters [3] 20/7 20/8 24/17
liability [3] 8/14 9/14 51/18
liable [1] 48/19
lie [6] 17/8 17/12 33/15 33/16 33/24 34/1
light [2] 24/22 40/3
like [10] 10/24 19/1 20/15 21/13 32/24
34/7 35/6 38/12 46/22 46/25
liked [1] 4/19
likelihood [1] 38/10
likes [1] 20/25
limitation [1] 17/9
line [8] 3/21 3/25 4/9 4/10 4/12 5/2 36/7
36/7
line-by-line [1] 36/7
linked [1] 27/17
listed [3] 15/2 42/17 48/7
listen [2] 4/6 4/7
listening [1] 5/4
literally [1] 11/15

59

## L

little [2] 7/9 23/20
live [1] 45/18
loan [9] 13/9 13/15 21/19 21/21 22/2 32/11 32/12 39/4 40/1
loans [3] 21/18 21/24 22/1
long [2] 23/24 47/19
look [19] 10/20 10/23 18/13 18/13 19/5 19/16 19/19 22/6 22/6 22/7 28/3 28/4 28/17 35/12 38/2 38/2 47/23 49/1 50/19
looked [1] 11/17
looking [1] 38/4
looks [2] 11/9 21/13
Loss [40] 6/12 6/22 9/8 10/8 10/14 14/24 15/1 20/5 22/15 23/4 23/17 23/23 24/1 24/8 24/20 24/21 25/3 25/8 25/12 25/25 26/3 27/6 31/17 32/15 37/14 37/25 38/4 38/11 39/1 39/13 39/25 40/10 41/21 42/12 44/2 44/3 44/15 45/23 46/16 48/18
lot [3] 19/1 24/9 34/11
lower [1] 7/6
lucky [2] 21/3 21/4
lying [5] 26/2 26/2 26/4 33/20 33/23

## M

made [18] 4/18 17/23 19/16 25/18 27/13 28/6 28/19 29/4 30/10 32/7 33/25 33/25 34/1 39/3 40/17 41/5 41/16 47/6
mail [1] 4/8
make [18] 5/24 13/11 14/6 22/13 23/25 24/2 24/3 24/4 24/5 24/6 31/12 32/13 34/3 34/11 38/3 39/8 49/11 51/22
makes [8] 6/10 6/23 19/17 22/18 24/9 26/18 31/15 41/2
making [2] 15/19 30/8
many [1] 19/14
March [1] 1/5
market [2] 21/18 21/25
material [2] 16/9 16/11
materiality [5] 16/2 16/4 16/4 50/21 51/9
materially [5] 36/3 40/19 42/5 42/11 42/13
matter [6] 3/4 9/10 17/1 31/17 44/25 53/4
maximum [1] 34/9
may [20] 5/6 5/23 6/11 15/8 15/9 20/20 23/19 26/10 26/11 27/13 30/9 31/14 34/17 39/13 45/14 45/19 50/4 50/4 50/5 50/12
maybe [3] 15/25 27/21 27/21
me [14] 4/8 5/2 5/15 6/16 7/13 7/16 8/17 10/22 20/10 36/14 37/19 38/3 40/25 44/17
mean [2] 15/22 18/8
meaning [2] 10/4 10/4
mechanical [1] 2/5
mechanism [1] 51/13
Medicare [1] 11/5
meet [2] 36/10 36/25
meeting [4] 27/18 27/20 31/19 36/24
meetings [1] 22/15
meets [1] 51/9
Members [1] 25/10
mention [1] 25/12
mentioned [2] 34/13 35/4
merely [2] 31/7 41/25
met [2] 40/18 51/9
method [1] 42/21
mic [4] 5/10 5/10 5/12 7/4
microphones [3] 5/5 5/6 5/8
might [3] 4/22 20/10 33/22
minimum [1] 27/15
minutes [1] 46/20
mitigation [41] 6/7 6/12 6/23 9/8 10/8 10/14 14/24 15/1 20/5 22/15 23/5 23/18 23/24 24/1 24/8 24/20 24/21 25/3 25/8 25/12 25/25 26/3 27/6 31/17 32/15 37/14

4/22 42/12 44/2 44/4 44/15 45/23 46/17 48/18
modifications [1] 40/1
moment [4] 11/1 19/22 22/9 48/17
money [12] 9/9 9/13 14/21 18/18 24/7 24/10 32/14 46/2 48/20 50/25 51/2 51/3
monitor [1] 25/20
monitoring [1] 34/7
month [1] 51/24
more [10] 5/22 6/8 6/10 10/20 10/21 15/4 20/24 23/20 25/14 49/22
mortgage [2] 37/14 39/10
mortgagee [14] 12/20 13/2 13/5 13/25 16/14 18/20 19/7 20/7 20/8 23/11 23/15 24/12 24/17 34/5
mortgagees [3] 13/4 25/21 25/23
most [2] 20/12 28/16
motion [1] 3/3
motivated [2] 50/4 50/4
move [3] 5/8 22/25 26/12
much [2] 32/21 45/11
must [1] 31/21
my [9] 4/17 11/14 18/23 23/21 30/12 30/15 42/25 43/22 50/15
myriad [1] 25/2
myself [1] 49/20

## N

narrowly [1] 38/2
NATIONAL [1] 1/6
natural [4] 15/18 16/2 16/9 26/22
nature [1] 50/2
need [8] 6/24 7/4 8/3 16/15 30/14 38/20 46/13 47/23
needs [1] 29/7
Neuhauser [1] 3/14
never [2] 24/4 27/2
new [2] 9/18 48/2
news [2] 36/20 36/21
next [1] 18/16
Nixon [3] 2/2 53/6 53/8
no [35] 1/3 7/5 7/18 7/20 11/10 11/15 15/12 17/5 17/5 18/9 19/7 19/25 20/14 20/24 23/4 24/12 24/15 25/15 26/9 26/24 27/21 29/10 29/10 29/17 30/5 30/6 30/23 34/14 37/18 39/8 43/16 43/22 45/16 45/19 49/12
nobody [1] 35/16
noncompliance [2] 33/2 38/18
none [10] 9/21 29/12 36/9 37/4 37/5 37/12 40/14 40/14 41/7 42/23
nonetheless [1] 29/6
North [1] 1/16
NORTHERN [1] 1/1
not [131]
notereading [1] 2/6
nothing [6] 12/22 23/17 29/25 31/13 34/14 50/24
notice [3] 22/7 25/9 38/9
notify [1] 4/3
now [10] 17/6 22/10 29/23 30/13 31/2 34/23 35/7 43/6 44/12 48/12
number [8] 3/1 3/8 3/25 4/14 6/2 9/17 10/25 12/25
numbers [1] 3/6
NW [2] 1/19 1/25

## O

object [2] 45/1 45/4
obligation [7] 23/12 48/2 48/4 48/12 48/20 49/17 50/18
obligations [2] 46/16 48/10

obtaining [2] 33/4 33/7
obvious [1] 28/17
obviously [3] 12/21 38/3 49/23
OCC [1] 35/20
occurred [1] 14/13
offense [1] 31/8
Office [1] 1/14
official [3] 30/19 31/1 31/2
officials [2] 30/15 30/24
often [1] 50/4
Oh [1] 44/17
OHIO [5] 1/1 1/4 1/16 2/3 36/22
okay [13] 5/11 5/23 7/8 7/10 8/20 10/17 10/24 11/2 11/8 22/11 28/14 31/14 45/11
on [86]
once [3] 31/20 36/1 45/21
one [27] 5/12 5/17 6/2 10/20 10/20 12/17 13/7 13/8 14/7 14/7 21/1 21/3 21/4 24/6 25/4 30/17 34/4 35/1 38/18 43/2 43/24 44/21 45/25 46/1 46/24 47/19 48/6
ones [1] 46/17
only [7] 16/10 23/6 25/7 27/7 30/20 33/3 50/18
opinion [1] 36/22
opportunity [1] 5/13
opposed [1] 21/22
opposing [2] 47/19 47/22
opposite [1] 26/6
options [1] 25/8
or [58]
ORAL [1] 1/10
order [3] 17/19 35/20 36/17
orders [1] 25/7
ordinary [2] 13/3 34/6
original [3] 40/21 41/4 42/3
ostrich [2] 29/2 29/9
other [37] 5/17 5/19 5/23 8/18 10/22 12/4 12/9 14/11 17/15 18/16 19/4 19/14 20/14 20/24 21/2 21/25 23/22 26/24 27/4 31/19 32/9 33/1 37/16 38/19 39/4 39/9 39/11 39/12 41/8 43/12 43/13 44/14 45/3 46/3 47/12 48/6 50/21
others [3] 25/14 39/22 42/9
otherwise [2] 17/10 27/1
our [35] 3/5 4/19 4/23 6/23 7/11 8/5 10/2 10/21 14/23 23/7 27/7 27/10 27/14 27/14 27/17 27/23 29/3 30/10 31/7 32/22 33/2 35/12 35/23 36/3 36/5 36/7 36/8 39/6 39/6 40/17 41/20 42/20 42/21 48/14 51/22
out [19] 5/2 9/1 9/5 9/13 13/6 14/22 20/4 22/8 22/12 23/20 24/7 25/18 38/20 44/11 45/6 47/24 48/25 51/2 51/23
outright [2] 8/2 8/22
outside [1] 15/25
over [6] 5/21 7/1 7/17 9/12 12/11 47/24
owners [1] 41/5

## P

packed [1] 26/15
page [4] 6/12 10/3 10/25 14/22
paid [10] 9/5 9/13 10/5 13/18 14/17 14/19 18/3 18/5 33/18 33/20
pamphlet [1] 25/5
paragraph [2] 28/17 30/10
parcel [1] 38/1
part [12] 7/14 8/5 8/15 11/7 18/25 24/14 24/14 38/1 38/3 38/5 38/12 40/2
participate [1] 4/5
participating [1] 5/4
participation [7] 9/1 14/8 14/14 15/4 15/6 18/16 18/21
particular [5] 10/16 13/9 14/16 16/14 40/15

particularity [3] 30/14 30/21 30/23
particularly [3] 6/6 8/16 9/23
parties [1] 47/2
partner [1] 4/17
parts [6] 7/11 7/12 7/16 8/15 8/17 19/9
party [1] 12/4
pass [4] 21/24 44/19 44/20 47/18
passed [3] 47/9 47/12 47/23
passing [1] 47/17
Patricia [1] 1/14
pattern [5] 31/16 34/25 41/6 44/8 45/22
pay [5] 10/7 34/21 48/20 49/13 49/25
paying [1] 51/2
payment [56]
payout [1] 23/25
penalties [5] 8/25 13/21 13/21 32/25 50/9
penalty [8] 8/25 11/12 11/13 18/18 21/13 26/18 32/17 34/20
pending [1] 3/3
people [2] 17/11 29/3
per [1] 13/21
perform [4] 6/12 6/22 25/7 45/23
performing [1] 44/15
perhaps [1] 40/11
periods [1] 46/15
perks [1] 39/15
person [6] 5/13 17/8 17/20 28/23 29/14 30/3
personal [1] 50/5
perspective [2] 24/19 38/6
pertinent [1] 20/12
phone [4] 4/4 4/15 4/25 5/11
phonetic [1] 38/7
place [8] 28/17 33/16 34/2 48/9 50/23 51/6 51/14 51/15
Plain [2] 35/22 36/21
plaintiff [4] 3/12 7/1 32/3 41/16
plaintiffs [3] 1/4 1/14 46/12
plausible [3] 31/12 31/15 31/21
playing [1] 29/9
plead [6] 30/18 30/21 30/22 31/2 31/8 31/9
pleading [1] 30/17
pleadings [1] 3/5
please [2] 5/12 7/5
pleased [1] 35/25
plus [1] 13/20
point [18] 5/18 5/19 5/20 8/9 13/19 15/11 16/16 17/2 34/18 36/9 41/20 42/3 43/5 43/22 45/15 47/18 51/5 51/11
pointed [2] 14/22 45/6
points [2] 12/16 26/14
policy [1] 31/17
Porter [2] 1/23 3/15
posing [1] 12/2
position [4] 7/7 18/17 28/22 43/6
possession [1] 21/9
possible [3] 8/14 19/13 28/9
potential [2] 32/25 50/8
practice [1] 31/24
precisely [3] 26/20 49/21 49/22
preclude [1] 33/17
precluded [1] 20/16
preliminary [1] 44/25
preparation [1] 51/21
prerequisite [4] 14/21 16/23 33/4 33/7
present [3] 3/9 3/10 18/22
presented [3] 5/22 6/1 21/1
president [1] 28/19
pretty [1] 36/9
prior [4] 23/12 39/24 48/10 49/11
private [4] 36/16 39/4 39/4 50/3
probably [1] 5/18

problem [2] 34/25 38/25
problematic [2] 13/16 16/13
proceedings [2] 2/5 53/4
process [4] 13/23 13/25 38/1 39/25
produce [1] 30/17
produced [1] 2/6
program [15] 9/1 13/3 14/16 14/18 14/19 14/24 15/1 37/25 38/5 38/25 40/11 40/15 43/12 45/25 46/3
programs [4] 20/7 37/25 39/4 43/13
promise [1] 51/22
properties [1] 42/17
property [3] 19/8 23/12 23/13
proposed [1] 10/10
proposition [2] 18/9 31/7
protecting [1] 21/15
prove [1] 27/7
provide [1] 25/4
provided [2] 4/14 24/2
provider [2] 10/6 11/4
provides [1] 10/13
proving [1] 29/23
provision [3] 34/19 50/23 51/6
public [23] 35/17 35/18 35/19 35/20 35/22 36/3 36/5 36/10 36/17 36/19 37/20 37/23 39/20 39/21 40/18 41/11 41/12 41/18 42/1 43/19 44/10 45/1 46/8
publicly [10] 37/2 37/8 41/8 41/22 42/6 42/24 43/17 44/4 46/9 46/13
published [1] 36/22
pull [1] 7/5
punished [1] 21/20
purpose [3] 39/8 50/22 51/16
purposes [2] 9/14 18/13
pursue [8] 12/19 12/23 13/9 25/8 34/13 39/25 49/10 49/15
pursues [1] 33/23
put [14] 9/7 11/15 29/2 36/2 36/10 38/9 38/14 39/6 42/20 42/25 43/8 44/6 46/24 46/25
putting [2] 20/4 22/8

**Q**

qualify [1] 45/8
question [19] 5/22 6/2 6/4 6/6 7/15 7/17 7/21 12/15 13/10 15/17 26/1 26/12 26/21 28/10 32/2 32/3 33/15 35/7 44/18
questions [4] 3/7 5/25 12/2 16/3
quite [7] 6/21 19/15 23/21 24/2 31/21 32/7 40/19
quote [5] 6/12 10/4 10/16 24/11 24/14

**R**

radar [1] 38/22
raise [2] 7/6 44/12
raised [2] 35/13 44/25
rank [1] 25/21
rather [2] 31/24 44/25
reach [2] 47/10 50/17
reaches [3] 47/7 47/25 50/18
read [6] 45/3 47/12 47/14 47/16 47/17 51/7
reading [1] 50/20
ready [1] 26/12
real [1] 34/25
realize [1] 17/19
really [5] 12/10 19/13 26/7 28/5 46/4
realtor's [1] 40/23
realtors [1] 9/17
reason [22] 7/21 11/16 15/5 15/14 16/24 16/25 21/6 21/8 23/22 26/20 27/2 27/7 27/16 27/22 29/1 30/12 30/23 33/12 45/24 47/8 49/20 51/11
reasoning [3] 7/24 12/9 22/4
reasons [2] 15/7 19/14

recent [1] 35/5
reckless [1] 29/8
record [3] 40/24 42/16 53/4
recorded [1] 2/5
recount [1] 11/3
recoup [1] 24/10
recouping [2] 16/19 33/10
recoupment [2] 33/24 34/8
reducing [1] 23/25
referenced [1] 36/20
references [1] 29/12
referred [1] 16/23
referring [2] 22/9 23/14
reflected [2] 3/5 3/7
regard [1] 13/15
regarding [1] 15/11
Register [1] 22/7
regular [2] 19/17 19/20
regulation [14] 6/17 6/19 10/12 11/10 14/1 14/7 14/12 14/20 18/2 18/3 18/4 18/19 18/23 48/17
regulations [26] 20/3 20/4 20/6 20/10 20/11 22/22 23/13 23/14 23/15 23/15 23/17 24/18 26/4 26/6 26/25 29/15 33/17 34/6 35/2 35/3 39/8 39/8 41/12 41/14 43/11 46/18
regulator [1] 38/22
regulatory [9] 7/22 7/25 12/24 13/12 13/13 17/11 20/16 34/16 34/17
reimbursement [1] 17/16
relate [1] 14/24
related [3] 16/15 38/10 47/22
relaters [2] 23/8 35/3 40/19
relator [8] 1/17 3/12 7/1 13/14 38/14 38/20 41/24 42/3
relators [6] 13/11 17/11 34/16 43/24 50/3 50/7
relators' [1] 46/13
Relief [1] 25/10
Relman [1] 4/17
relying [2] 35/19 49/5
remains [2] 32/11 47/2
remedies [5] 11/17 13/23 16/14 16/25 33/1
remedy [15] 8/10 8/22 9/3 9/3 9/4 11/8 11/19 11/20 12/17 12/18 15/17 16/19 18/16 18/24 34/14
remember [1] 11/23
reminder [1] 5/7
reply [1] 36/8
reported [1] 48/3
Reporter [1] 2/2
reports [1] 41/23
request [2] 17/13 30/11
requests [1] 17/14
require [5] 5/9 27/1 30/22 37/7 44/21
required [5] 24/6 29/24 30/18 42/22 48/16
requirement [10] 11/11 14/15 14/16 17/2 17/18 19/9 29/7 30/20 31/5 49/17
requirements [32] 13/12 13/13 13/15 14/8 14/23 14/25 15/1 15/2 17/12 19/18 22/15 23/24 24/1 24/9 24/13 24/18 24/21 24/22 25/3 25/11 25/25 27/6 27/19 31/18 32/16 34/16 34/17 39/13 40/10 40/10 48/18 51/9
requires [4] 29/5 30/20 46/1 49/7
reserved [1] 34/24
respect [14] 6/13 15/10 20/7 21/21 22/18 25/10 29/11 29/18 29/20 36/3 37/16 40/10 42/12 49/19
respond [12] 6/4 12/16 15/8 20/20 26/10 26/11 30/9 36/15 42/25 44/18 45/14 50/12
responding [2] 6/8 26/15
response [7] 7/11 9/17 23/1 35/12 42/3

**R**

response... [2] 43/1 44/21
restriction [1] 17/10
result [2] 12/8 35/10
reverse [7] 46/23 49/1 50/8 50/23 51/5 51/5 51/16
review [5] 13/2 13/25 34/5 36/18 37/24
reviewing [1] 34/7
reviews [1] 25/21
rewarded [1] 32/14
right [8] 8/12 18/16 18/20 19/2 23/22 29/23 31/2 39/21
rise [1] 11/12
risk [1] 4/22
RMR [2] 2/2 53/8
road [5] 16/12 17/1 29/22 33/1 49/15
routine [3] 17/13 17/19 38/18
rule [7] 22/8 22/10 25/4 30/20 30/20 31/11 31/11
rules [6] 6/7 20/4 25/2 25/19 34/4 39/1
ruling [1] 23/5

**S**

s: [1] 53/6
s:/Angela [1] 53/6
Safe [1] 51/25
said [18] 3/24 11/17 12/6 15/15 17/9 17/12 18/1 28/3 28/21 34/19 34/23 37/17 37/20 40/8 42/23 43/9 45/16 49/23
Samberg [3] 1/18 3/14 7/3
Samberg-Champion [2] 3/14 7/3
same [16] 8/1 11/20 12/8 12/17 12/18 13/24 18/12 21/14 21/15 32/13 39/14 48/10 48/14 50/5 51/9 51/14
Sandler [1] 1/24
Santa [2] 4/23 4/24
Sasha [4] 1/18 3/14 7/3 10/15
Sasha-Samberg-Champion [1] 1/18
satisfied [1] 8/10
saw [1] 40/7
say [25] 9/12 13/20 18/9 20/13 20/24 22/17 24/20 25/15 26/3 26/6 28/20 30/13 30/19 32/22 34/5 38/1 38/8 38/15 40/14 40/15 42/11 42/14 42/22 44/23 49/1
saying [10] 13/7 31/9 42/1 43/2 43/3 44/2 44/7 45/22 48/24 50/17
sayings [1] 30/13
says [13] 6/17 17/18 18/17 19/6 25/4 26/21 30/2 30/17 33/2 40/4 48/12 48/23 49/16
scheme [10] 7/22 7/25 8/24 18/10 18/13 21/6 32/17 39/9 40/20 42/2
schemes [3] 39/9 39/11 39/12
Schilling [3] 1/23 3/16 6/4
screen [1] 38/22
searching [1] 38/12
second [2] 8/5 43/3
secondary [2] 21/18 21/25
Section [1] 24/11
secure [1] 21/25
see [8] 7/13 11/20 13/5 18/20 30/16 37/24 48/1 49/2
seek [2] 13/2 34/9
seems [1] 16/18
segue [1] 35/5
segued [1] 28/10
Senate [1] 48/3
Senator [2] 48/25 49/23
send [2] 25/9 46/2
sending [1] 40/12
sends [1] 19/20
sense [3] 24/9 38/3 39/9
sentence [3] 10/20 10/22 40/8

serves [1] 39/8
Service [1] 25/10
servicers [4] 25/22 39/23 41/21 44/14
services [1] 11/5
servicing [12] 20/5 23/18 25/12 26/4 37/25 38/4 38/12 41/22 44/2 44/4 44/15 46/17
set [1] 14/7
several [3] 10/1 10/2 31/6
shall [2] 19/7 24/12
Sharyn [2] 28/19 31/4
she [4] 28/20 28/21 28/22 28/24
sheet [1] 48/2
shortly [1] 51/23
shot [1] 6/2
should [9] 18/11 25/24 28/7 32/14 34/15 46/18 48/19 48/19 51/4
show [12] 27/9 27/10 27/10 31/1 33/24 42/16 43/14 43/16 44/9 44/10 45/22 47/25
shy [1] 20/3
sic [1] 49/25
side [5] 5/17 5/17 5/19 8/18 46/19
Sieck [2] 1/24 3/17
significant [1] 16/24
simple [2] 24/25 25/1
simply [1] 43/23
since [2] 10/6 13/7
single [2] 23/3 28/25
sins [1] 21/20
sit [1] 5/9
sitting [1] 3/13
situation [1] 15/12
six [1] 14/22
Sixth [14] 9/21 9/24 9/25 10/9 10/11 14/3 14/12 19/4 32/23 33/7 35/4 35/6 38/7 40/3
Sixth Circuit [1] 38/7
skip [1] 11/6
slide [1] 5/8
so [54]
some [18] 4/22 5/18 9/22 17/9 17/10 21/17 21/17 27/11 28/2 30/12 37/3 40/18 44/17 46/23 47/12 47/18 49/8 51/8
somebody [1] 31/22
someone [6] 5/11 26/1 30/1 31/25 42/8 43/17
something [2] 37/19 51/24
sometimes [3] 5/20 5/21 24/22
sorry [4] 3/19 10/25 22/7 34/18
sort [10] 7/24 8/21 11/12 14/18 15/20 25/13 27/19 36/6 51/12 51/17
sorts [1] 25/11
sounds [1] 19/1
source [5] 40/23 40/25 42/4 42/10 45/7
sources [7] 40/8 40/14 40/14 40/21 41/7 43/7 46/3
speak [3] 5/14 25/17 31/14
speaking [1] 20/12
speaks [3] 23/4 31/5 35/17
spec [1] 39/7
specific [5] 9/3 39/7 40/2 41/18 45/5
specifically [3] 10/13 14/20 37/15
specificity [1] 42/20
Spielbusch [1] 2/2
spill [1] 5/21
spin [3] 43/25 44/7 46/12
spoke [1] 14/20
spoken [2] 41/2 41/5
square [1] 32/8
squarely [1] 30/12
stage [2] 16/7 30/17
stand [2] 5/9 29/2
standard [5] 20/2 25/15 33/8 49/8 51/10
standards [5] 9/17 9/24 10/10 38/7 44/16

starting [1] 6/8
statement [16] 6/5 6/9 17/5 17/7 19/6 19/16 20/24 22/18 22/20 22/20 31/4 37/22 40/7 47/6 49/11 49/18
statements [3] 30/8 45/21 45/24
STATES [5] 1/1 1/3 1/11 3/2 3/10
status [1] 3/10
statute [9] 8/13 18/19 48/16 48/22 49/6 49/7 49/21 50/11 50/19
statutes [3] 20/4 20/5 24/17
statutory [1] 12/7
stenography [1] 2/5
step [3] 7/24 7/25 8/21
Stephen [2] 1/18 3/14
still [2] 16/8 29/6
stop [3] 15/21 20/25 37/17
Street [5] 1/15 1/19 1/25 35/21 36/21
strong [1] 22/19
struck [3] 48/9 49/20 50/10
structured [1] 21/6
style [1] 5/20
sub [2] 19/9 24/13
submission [1] 38/18
submissions [1] 17/19
submit [2] 17/12 33/19
submits [2] 19/12 26/1
submitted [8] 17/16 19/10 23/8 29/16 29/21 33/16 34/20 38/16
submitting [7] 12/5 17/8 17/20 17/21 30/7 37/15 44/7
subsequently [1] 47/4
substance [2] 9/12 51/19
substantial [4] 8/21 9/19 18/11 32/24
substantially [3] 8/1 8/11 24/5
such [5] 8/13 12/4 24/9 40/20 44/11
suffice [1] 42/2
sufficient [3] 31/8 38/9 45/8
suggest [3] 32/10 37/13 46/4
suggested [3] 9/23 40/8 47/6
suggesting [1] 43/20
suggests [1] 11/10
suing [1] 49/24
suit [1] 50/2
Suite [3] 1/15 1/19 1/25
Summit [1] 1/15
supplemental [4] 6/5 6/9 6/13 6/20
support [3] 21/9 22/3 22/6
supposed [1] 3/21
sure [8] 3/22 4/1 13/18 20/1 28/12 40/22 48/15 51/24
surround [1] 25/2
surrounding [1] 25/11
switch [1] 24/23
systematic [2] 41/16 41/17
systematically [4] 31/18 40/9 41/11 41/13

**T**

take [8] 7/4 11/1 13/16 15/19 16/14 25/23 40/6 51/3
talk [4] 24/20 26/23 29/22 46/23
talking [7] 16/1 20/3 20/17 28/11 35/20 35/21 43/20
talks [2] 23/6 23/9
technical [1] 11/11
tells [1] 40/25
tendency [4] 15/18 16/2 16/10 26/22
term [2] 7/23 12/7
terms [3] 30/11 45/5 45/8
test [8] 9/19 9/20 9/20 15/15 16/2 16/4 36/10 50/21
than [9] 4/20 5/22 6/10 10/20 15/12 24/6 25/14 39/3 45/3
Thank [10] 3/18 6/3 7/2 7/7 12/14 45/12

Thank... [4] 45/13 46/19 50/15 51/20
that [427]
that's [54]
their [21] 6/9 6/10 6/13 6/20 23/8 26/23 29/22 29/24 31/4 33/9 35/1 35/1 35/2 35/2 38/21 40/14 40/14 40/25 42/4 42/7 44/9
them [12] 5/8 8/18 13/19 17/20 17/21 25/20 29/21 33/4 42/8 42/14 42/21 42/22
then [27] 5/6 5/10 5/17 7/12 7/15 8/9 8/18 8/21 11/15 12/11 18/18 19/10 26/12 28/5 28/6 28/6 28/8 29/6 36/14 37/15 38/13 40/11 45/17 46/4 46/23 47/4 48/7
theory [7] 14/3 14/10 15/3 16/11 19/23 46/24 51/17
there [38] 4/22 7/10 7/25 8/15 11/15 13/17 14/4 16/7 16/8 17/3 17/4 17/5 17/14 17/15 18/8 18/9 18/20 20/5 20/6 20/8 20/9 20/14 23/2 23/3 23/5 25/2 26/15 31/1 34/9 38/20 39/22 39/23 41/11 41/12 41/16 44/11 47/6 49/13
there's [32] 7/11 7/24 9/18 11/10 12/25 13/5 13/21 14/24 17/13 19/14 20/5 20/24 21/5 25/11 25/15 25/18 26/14 26/25 27/21 29/10 29/12 29/17 29/19 29/25 30/5 30/6 30/23 31/12 34/25 34/25 47/8 49/12
therefore [8] 9/9 14/19 28/23 35/17 39/15 42/8 44/8 46/18
these [39] 5/7 7/25 9/21 17/16 19/18 21/7 21/17 21/24 25/19 27/23 27/24 32/7 34/4 34/6 35/1 35/3 35/22 37/5 37/5 37/12 37/20 39/11 40/7 40/7 40/15 40/16 42/23 43/3 43/4 43/5 43/12 43/13 43/23 45/9 45/22 45/22 46/1 46/3 46/18
they [97]
they're [11] 26/2 26/4 28/24 28/24 33/20 34/10 42/9 44/5 44/7 47/17 48/24
they've [16] 13/17 19/11 32/16 36/10 38/17 41/2 41/4 41/5 41/5 42/15 43/4 44/6 44/6 47/16 47/16 47/17
thing [5] 11/9 11/23 27/4 27/19 46/24
things [14] 11/9 13/7 13/8 21/12 22/1 25/24 31/19 32/7 32/9 43/3 43/4 43/5 48/7 48/14
think [64]
this [91]
Thomas [1] 3/15
those [14] 7/12 8/9 8/14 15/2 17/19 19/11 23/15 25/13 25/14 26/6 30/11 31/20 31/20 36/19
though [1] 23/20
thought [1] 40/18
thoughts [1] 35/7
thousands [3] 17/14 17/15 42/13
three [10] 7/11 7/12 7/16 7/24 8/15 32/3 34/9 34/22 42/14 42/17
three-step [1] 7/24
through [4] 5/23 8/18 34/5 34/6
tiers [1] 25/22
ties [1] 21/25
time [25] 5/13 5/24 17/21 19/12 21/15 21/23 24/7 30/15 32/12 32/13 33/17 33/23 33/24 33/25 37/3 39/16 44/6 44/14 46/15 46/23 48/4 48/14 49/8 49/11 49/18
times [4] 10/1 10/2 19/21 34/10
title [1] 19/8
today [10] 4/21 10/10 12/2 15/25 18/10 22/12 35/22 36/21 46/21 51/12
today's [1] 3/7
together [3] 27/17 38/14 47/25
told [1] 42/7
Toledo [3] 1/4 1/16 2/3
too [3] 5/23 43/21 47/20

tool [1] 35/1
tools [1] 35/1
top [5] 13/22 25/12 41/25 42/1 48/1
tornado [1] 23/10
towards [2] 5/8 23/24
traditional [1] 5/16
transcript [3] 1/10 2/5 53/3
travel [1] 21/18
travels [1] 51/25
trick [1] 51/17
tricks [1] 9/10
trip [1] 4/18
triple [2] 13/9 13/20
Trisha [1] 3/11
trouble [2] 33/10 49/24
troubled [4] 13/22 22/10 34/19 34/24
true [4] 11/15 31/21 37/10 42/24
try [3] 20/18 50/7 51/17
trying [7] 21/11 21/12 32/8 34/11 43/1 43/20 44/12
turn [2] 51/4 51/23
turns [2] 40/22 50/24
two [15] 8/9 8/24 13/17 15/23 21/12 26/12 26/14 28/10 32/2 32/7 32/8 38/14 38/14 47/21 48/5
type [2] 5/16 5/20
types [2] 25/8 48/10

## U

U.S [42] 1/6 1/14 1/22 3/2 3/15 6/4 18/9 22/13 22/18 24/3 24/7 28/19 29/9 30/10 32/9 36/1 36/6 36/23 37/13 38/14 38/13 39/17 39/22 40/9 41/3 41/6 41/7 41/13 41/21 43/6 43/8 43/10 44/3 44/14 44/25 45/6 46/7 46/8 46/9 46/14 51/1 51/3
ultimate [4] 9/9 9/20 16/12 16/19
ultimately [1] 21/19
unambiguously [1] 20/16
unaware [1] 4/2
under [17] 7/23 9/4 10/10 13/22 13/24 13/24 19/11 23/10 25/8 31/10 31/11 31/19 33/7 36/25 42/4 45/9 49/24
underlying [1] 44/10
understand [4] 3/11 5/3 21/5 33/9
understanding [2] 22/21 40/20
undone [1] 22/23
unfair [1] 18/24
UNITED [5] 1/1 1/3 1/11 3/2 3/10
unless [2] 5/10 5/12
unlike [1] 47/12
unlikely [1] 50/1
unquote [1] 10/6
until [6] 19/8 19/10 19/10 24/13 43/6
unusual [1] 32/17
up [5] 3/13 12/7 13/21 44/15 47/18
us [7] 3/21 7/25 11/22 18/25 27/9 30/22 48/22
USA [2] 35/22 36/21
use [7] 5/5 5/6 5/7 5/9 5/12 34/25 46/23
used [2] 7/23 12/1
usually [1] 50/6

## V

value [1] 22/2
vehicle [1] 34/15
version [1] 48/11
versus [1] 3/2
very [15] 8/6 9/19 19/24 20/1 26/25 27/17 28/10 29/19 32/13 37/24 39/1 39/7 39/7 48/17 51/23
viable [1] 15/3
vice [1] 28/19
violaters [1] 24/10

## W

waiting [1] 4/16
Wall [2] 35/21 36/21
want [17] 5/25 7/12 10/22 13/20 16/1 21/18 22/24 27/4 28/3 28/11 29/1 32/10 32/13 32/20 42/24 44/18 49/23
warrant [1] 22/21
warranting [1] 19/13
warranty [1] 19/23
was [64]
Washington [3] 1/19 2/1 38/22
wasn't [3] 23/8 27/11 35/17
way [19] 3/4 4/23 4/24 16/21 18/1 19/13 21/1 21/6 21/24 22/5 23/24 24/7 30/23 34/4 34/23 39/11 39/18 42/25 50/21
ways [2] 13/1 43/2
we [91]
we'll [3] 12/11 32/3 51/24
we're [25] 3/1 4/11 4/16 4/23 11/3 12/2 13/11 17/4 17/6 17/6 20/11 20/17 22/12 27/9 27/22 27/22 27/24 35/7 35/19 35/9 35/20 42/22 49/5 51/12 51/25
we've [11] 15/7 19/20 24/2 31/24 36/4 36/4 40/17 41/23 42/19 42/20 46/24
weather [2] 4/19 4/20
website [1] 46/10
weeks [1] 34/22
welcome [2] 3/11 30/16
well [23] 3/9 11/2 13/7 15/21 18/8 20/11 28/2 32/5 35/8 36/12 36/14 37/4 37/19 37/23 38/15 38/24 40/6 41/1 42/1 43/2 44/22 45/17 46/7
went [2] 14/18 42/22
were [24] 15/3 15/5 19/2 26/15 27/23 27/24 29/3 29/24 30/24 31/22 32/1 37/2 38/15 39/5 41/23 42/12 42/23 42/23 43/4 43/5 44/15 48/8 48/18 48/19
weren't [3] 14/17 17/22 30/4
WESTERN [1] 1/2
what [66]
What's [1] 18/6
when [19] 19/5 20/3 24/16 24/20 26/1 26/2 26/4 29/4 29/8 29/16 29/22 30/7 30/25 33/3 33/15 33/19 33/20 34/17 51/22
where [22] 5/17 7/13 8/9 8/10 8/11 12/7 13/19 14/13 17/4 20/15 21/9 22/3 25/22 28/15 28/18 29/3 32/17 34/24 34/25 35/14 37/20 39/22
Whereas [1] 11/19
whether [41] 6/6 6/14 9/10 9/10 12/2 12/3 12/23 13/10 15/15 15/18 18/1 18/23 18/24 23/14 25/2 25/18 25/24 26/1 26/19 26/22 27/5 28/24 29/3 29/13 29/15 29/16 29/19 33/15 35/18 38/8 39/23 41/11 45/8 48/13 49/2 50/25 50/25 51/1 51/2 51/12 51/15
which [28] 8/24 10/1 12/6 16/7 16/16 18/10 18/18 18/22 18/25 19/3 19/20 25/13 25/14 28/20 30/15 30/15 30/19 30/24 31/2 32/9 38/15 39/5 39/10 43/11 43/25 46/1 47/3 50/25
while [4] 4/16 8/2 11/2 21/15
Whipple [7] 35/5 35/11 35/17 35/23 36/2 36/15 37/1
who [9] 12/20 17/11 25/23 29/14 29/20 41/3 46/17 50/4 50/4
whoever [1] 32/12
whole [2] 38/3 50/19
why [28] 8/20 16/22 16/24 16/25 17/3 17/24 19/12 19/15 19/15 19/23 21/6 21/7 21/8 23/20 23/22 26/21 27/2 27/22 27/22

**W**

why... [9] 32/16 36/25 37/11 40/2 45/25 46/5 47/8 47/25 50/10
wide [1] 31/24
will [24] 5/13 5/17 6/1 6/21 7/5 7/12 10/13 13/4 13/4 13/5 13/6 16/1 17/7 18/17 24/3 24/3 24/4 24/20 33/20 43/11 44/20 51/22 51/22 51/23
William [2] 1/23 1/24
wish [1] 46/20
withdrawal [1] 18/19
within [1] 25/10
without [4] 5/10 12/5 13/15 22/1
won't [1] 7/5
word [7] 12/11 26/3 26/12 48/9 49/20 50/10 50/14
work [5] 13/6 15/16 34/23 51/8 51/8
world [1] 21/13
worth [2] 13/18 26/15
would [36] 9/11 10/5 10/7 11/11 11/15 13/16 13/20 14/1 15/3 15/16 15/18 18/24 20/23 22/17 23/11 24/4 24/6 26/21 26/22 29/7 31/12 31/25 32/10 32/21 33/24 34/3 35/6 38/13 45/9 46/22 46/25 47/8 49/1 50/1 50/7 51/9
wouldn't [3] 14/17 16/9 34/8
wrong [2] 18/6 21/22

**Y**

year [3] 28/19 28/25 29/4
yes [8] 5/1 9/16 15/22 16/20 23/1 28/9 28/14 28/16
yet [1] 47/1
you [156]
you'll [3] 5/5 35/25 43/7
you're [14] 3/13 4/1 5/3 8/17 17/21 17/21 18/2 20/3 24/23 24/23 25/3 34/22 38/4 43/20
you've [4] 22/4 22/25 27/6 43/19
your [56]

**Z**

ZOUHARY [1] 1/10