IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, et al., | Case No. 3:13 CV 704 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER GRANTING |
| -vs- | <u>MOTION TO DISMISS</u> |
| U.S. Bank, N.A., | JUDGE JACK ZOUHARY |
| Defendant. | |

Advocates for Basic Legal Equality, Inc. ("ABLE" or "Relator"), on behalf of itself and the United States of America, sues U.S. Bank, N.A, alleging violations of the False Claims Act, 31 U.S.C. § 3729 ("FCA") (Doc. 1). ABLE claims U.S. Bank falsely affirmed compliance with the regulatory requirements of certain government-insured home mortgage programs and that, when U.S. Bank foreclosed on the mortgaged properties, U.S. Bank wrongfully collected insurance payments and the government lost millions of dollars. U.S. Bank moves to dismiss the Complaint pursuant to Federal Civil Rules 12(b)(1) and 12(b)(6) on the grounds that (1) the Complaint fails to allege an actionable false statement or claim and fails to allege U.S. Bank acted knowingly, and (2) Relator is jurisdictionally barred from bringing suit under the FCA public disclosure bar, 31 U.S.C. § 3730(e)(4)(a) (Docs. 25, 31 & 36). ABLE opposes (Docs. 30 & 38). United States of America declined to intervene but filed Statements of Interest (Docs. 29, 34 & 43). On March 5, 2015, this Court held a record hearing on the Motion (Docs. 44 & 46). This Court will address U.S. Bank's arguments in the order presented.

## BACKGROUND

**The FHA Mortgage Insurance Program**

Pursuant to the National Housing Act of 1934, the Federal Housing Administration ("FHA"), a constituent office of the U.S. Department of Housing and Urban Development ("HUD"), offers single-family mortgage insurance programs to incentivize private mortgage lenders to provide mortgage loans to borrowers who might not otherwise qualify for mortgages in the private market (Doc. 1 at ¶ 28). In the event of a mortgagor default and foreclosure, the mortgagee may apply to the FHA for insurance benefits to make it whole (*id.* at ¶ 2). To be eligible for the FHA-insured mortgage program, a mortgagee must agree to comply with HUD's service regulations (*id.* at ¶ 31). Before a mortgagee can foreclose on an FHA-insured loan, and before it can apply for insurance benefits, the mortgagee must take "Loss Mitigation Measures" to determine whether the mortgagor can cure its deficiencies and avoid foreclosure (*id.* at ¶¶ 8, 33; 24 C.F.R. §§ 203.361, 203.500, 203.606). The applicable Loss Mitigation Measures are specific to the mortgagor's circumstances. In certain situations, before three full monthly mortgage installments are unpaid, the mortgagee may be required to have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting. 24 C.F.R. § 203.604. And before four full monthly installments are unpaid, the mortgagee must evaluate specific loss mitigation options, including deeds in lieu of foreclosure, re-casting of mortgages, pre-foreclosure sales, and special forbearances, and take "appropriate" loss mitigation actions (*see* Doc. 1 at ¶ 38; *see also* 24 C.F.R. §§ 203.501, 203.605).

**U.S. Bank's Certifications to HUD**

In 1998, Star Bank, a predecessor to U.S. Bank, applied to HUD for approval as an FHA lender (Doc. 1 at ¶ 55; Doc. 1-2). In that application, Star Bank agreed that it would "comply with the provisions of the HUD regulations" (Doc. 1-2 at 3). Thereafter, U.S. Bank certified to HUD on

an annual basis its continued eligibility to participate in the FHA insurance program (Doc. 1 at ¶¶ 6, 59–64; *see* Doc. 1-1). For example, on March 30, 2010 and January 13, 2011, Sharon Bond, a U.S. Bank Vice President, submitted an annual certification to HUD of U.S. Bank's compliance with all HUD regulations and handbooks:

> I certify that I know, or am in the position to know, whether the operations of the above-named lender conform to HUD-FHA regulations, handbooks, Mortgagee Letters, Title I Letters, and policies; and that I am authorized to execute this report on behalf of the lender.
>
> I certify that the lender complied with and agrees to continue to comply with HUD-FHA regulations, handbooks, Mortgagee Letters, Title I letters, policies, and terms of any agreements entered into with the Department.
>
> I certify that to the best of my knowledge, the above-named lender conforms to all HUD-FHA regulations necessary to maintain its HUD-FHA approval, and that the above-named lender is fully-responsible for all actions of its principals, owners, officers, directors, managers, supervisors, loan processors, loan underwriters, loan originators and all other employees conducting FHA business for the above-named lender in all of its offices where it performs any functions of an FHA-approved lender.
>
> \* \* \* \* \*
>
> Each of my certifications is true and accurate to the best of my knowledge and belief. I understand that if I knowingly have made any false, fictitious, or fraudulent statement(s), representations, or certification on this form, I may be subject to administrative, civil and/or criminal penalties; including debarment, fines and imprisonment under applicable federal law.

(Doc. 1 at ¶¶ 56–64; Doc. 1-1). U.S. Bank filed the same annual certification in 2012 and 2013 (Doc. 1 at ¶ 64).

Each time U.S. Bank requested FHA insurance benefits following a foreclosure, U.S. Bank submitted Form 27011 to HUD (*id.* at ¶ 65). In each submission, U.S. Bank certified under the threat of False Claims Act liability:

> **Certification:** . . . The undersigned further agrees: (1) that in the event the Secretary finds it necessary to reconvey the above described property to the mortgagee, because of the mortgagee's noncompliance with HUD regulations, the mortgagee shall reimburse the Secretary . . . and (2) that if a mortgagee does not comply with HUD

3

> regulations, the mortgagee remains responsible for the property, and any loss or damage thereto, notwithstanding the filing of the deed to the Secretary for record, and such responsibility is retained by the mortgagee until HUD regulations have been fully complied with (203.379).
>
> **Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)
>
> **By signing below, the undersigned certifies that the statements and information contained hereon (face and reverse) are true and correct.**

(emphasis in original) (*id.* at ¶ 66; Doc. 25-1).

### U.S. Bank's Allegedly Deficient Loss Mitigation Practices

Relator alleges it consulted with "many people" whose mortgage loans were foreclosed by U.S. Bank (*id.* at ¶ 13). Citing its "unique contacts, experiences, research and investigation," Relator alleges U.S. Bank "repeatedly" initiated foreclosure proceedings on FHA-insured mortgage loans without complying with HUD's servicing and loss mitigation regulations (*id.* at ¶¶ 16, 68). Relator recounts three instances in 2008–09 when U.S. Bank did not meet face-to-face with an Ohio borrower or properly evaluate loss mitigation alternatives before foreclosing on the property (*id.* at ¶¶ 14, 18, 67, 74–101 (Forsythe Street Property Example), 102–29 (Gregory Avenue Property Example), 130–56 (Brooks Street Property Example)). Nevertheless, U.S. Bank filed a Form 27011 for each of the foreclosures and was paid on its FHA insurance claim (*id.* at ¶¶ 80–82, 108–10, 135–37).

Relator alleges that "the uniform consistency of U.S. Bank's disregard of the FHA regulations in these instances is representative of its disregard of the regulations" with respect to over 22,000 foreclosures handled by U.S. Bank nationwide (*id.* at ¶ 14). Based on those three examples, Relator concludes U.S. Bank knowingly presented claims to HUD for, and received, over $2.3 billion in FHA mortgage insurance benefits to which it was not entitled because of its noncompliance with HUD's regulations (*id.* at ¶ 21). Relator alleges that by foreclosing on those loans in knowing violation of

4

HUD servicing and loss mitigation regulations, U.S. Bank made false statements to HUD in its annual certifications and in its claims for FHA insurance benefits (*id.* at ¶ 12).

**Procedural History**

As required by Section 3730(b)(2) of the FCA, in April 2013, Relator filed the Complaint under seal (Doc. 1). The statute provides at least sixty days for the Department of Justice ("DOJ") to review a relator's claims. If the DOJ decides to intervene in the action, it assumes the role of lead prosecutor. 31 U.S.C. § 3730(b)(4)(A), (c)(1). Alternatively, the DOJ may decline to join the action, leaving the *qui tam* plaintiff as the sole prosecutor. 31 U.S.C. § 3730(b)(4)(B). During this time, the proposed defendant is not notified of the claim. 31 U.S.C. § 3730(b)(2), (3). In August 2014, following its investigation of Relator's claims, the DOJ declined to intervene and ABLE then served the unsealed Complaint on U.S. Bank (Docs. 12–14).

**STANDARD OF REVIEW**

Under Federal Civil Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 departs from the hyper-technical, code-pleading requirements, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Therefore, under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, which requires accepting all well-pleaded factual allegations as true and construing the complaint in the light most favorable to plaintiff. *See Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. And

"[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

A motion to dismiss under Federal Civil Rule 12(b)(1) may be treated as either a facial or factual attack on the court's subject matter jurisdiction. *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions the sufficiency of the pleading, and the court takes the allegations in the complaint as true and construes them in the light most favorable to plaintiff. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). When a Rule 12(b)(1) motion is a factual attack, as is the case here, "no presumptive truthfulness applies to the allegations" and "the district court must weigh the conflicting evidence to arrive at the factual predicate that subject matter does or does not exist." *United States ex rel. Whipple v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 782 F.3d 260, 265 (6th Cir. 2015). In ruling on a factual attack, the court may consider evidence outside the pleadings. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. In evaluating the applicability of the FCA public disclosure bar, this Court considered the Complaint (Doc. 1), public documents cited by the parties in its filings (Docs. 25, 30–31, 36 & 38), and a publicly available news article (cited *infra* at 15).

## ANALYSIS

Relator brings three FCA claims: U.S. Bank *caused* false claims related to the submission of individual-loan certifications, in violation of 31 U.S.C. § 3729(a)(1)(A) (Count I); U.S. Bank *used* false statements related to the submission of individual-loan and annual certifications, in violation of 31 U.S.C. § 3729(a)(1)(B) (Count II); and U.S. Bank *kept* the funds it received as a result of its false statements, in violation of 31 U.S.C. § 3729(a)(1)(G) (Count III).

U.S. Bank moves to dismiss on three grounds: (1) U.S. Bank has not expressly certified its compliance with loss mitigation requirements and thus has not made any false claims; (2) U.S. Bank has not impliedly certified its compliance with any regulation which is a condition of receiving payment on an FHA insurance claim; and (3) the Complaint fails to allege U.S. Bank acted knowingly (Doc. 25). As explained below, reading the Complaint in the light most favorable to Relator, Relator has sufficiently pled that U.S. Bank knowingly and falsely certified compliance with HUD and FHA regulations upon which payment was conditioned, and that U.S. Bank knowingly and fraudulently induced FHA to pay insurance benefits on claims it otherwise would not have paid (Counts I and II). However, Relator has failed to plead a reverse false claim theory (Count III).

**U.S. Bank's Alleged False Claims Act Violations (Counts I and II)**

The "chief purpose" of the False Claims Act is to "provide for restitution to the government of money taken from it by fraud." *United States v. Hess*, 317 U.S. 537, 551 (1943). The FCA creates civil liability for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the Government, or "knowingly makes, uses, or causes to be made or used, a false record or statement" to get a false or fraudulent claim paid or approved by the Government. 31 U.S.C. § 3729(a)(1)(A), (B). The FCA provides for treble damages and "a civil penalty of not less than $5,000 and not more than $10,000" for each false claim. 31 U.S.C. § 3729(a)(1).

A "claim" is "any request or demand, whether under a contract or otherwise, for money or property . . . that is presented to an officer, employee, or agent . . . or is made to a contractor, grantee or other recipient, if the money or property is to be spent or used on the Government's behalf . . . and if the United States Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded[.]" 31 U.S.C. § 3729(b)(2)(A). "In

7

addition to obvious cases of fraud, as where a provider bills for procedures or services that were not rendered or not necessary, a claim may be false under a 'false certification' theory, as 'when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment.'" *United States ex rel. Hobbs v. MedQuest Assocs., Inc.*, 711 F.3d 707, 714 (6th Cir. 2013) (quoting *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011)). A condition of payment is a circumstance where "the government would not have paid the claim had it known the provider was not in compliance" with the regulation. A regulation may in some cases be both a "condition of participation" in the government program and a "condition of payment" from the government program. *Id.*

False certifications may be express or implied. In an express false certification case, "the defendant is alleged to have signed or otherwise certified to compliance with some law or regulation on the face of the claim submitted." *Id.* In an implied false certification case, "liability can attach if the claimant violates its continuing duty to comply with the regulations on which payment is conditioned." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 468 (6th Cir. 2011) (quoting *United States ex rel. Augustine v. Century Health Servs., Inc.*, 289 F.3d 409, 415 (6th Cir. 2002)).

*Express Certification.* Relator cannot point to any express certification made by U.S. Bank that it was in compliance with HUD servicing or loss mitigation requirements. U.S. Bank's general certification of compliance with all applicable HUD regulations in its initial application, annual certifications, and on the Form 27011, are not specific enough to support an express false certification claim under the FCA. *Hobbs*, 711 F.3d at 714 (certification that defendant would "abide by the Medicare laws, regulations and program instructions" was insufficient).

*Implied Certification.* Relator has adequately alleged that by submitting its annual certification and HUD Form 27011 to claim FHA insurance benefits, U.S. Bank attested by

8

implication to its compliance with HUD loss mitigation requirements which are a condition of payment on its FHA insurance claim.

U.S. Bank offers two reasons why the Complaint fails to state a claim under an implied false certification theory. First, U.S. Bank argues that the regulations with which it allegedly falsely certified compliance are conditions of participation in the FHA insurance program and not conditions of receiving payment on FHA insurance claims (Doc. 25 at 14–16). The United States in its Statement of Interest (Doc. 34 at 3) explains that compliance with HUD's servicing regulations, including the loss mitigation rules, is "both a condition of payment and a condition of participation." *See Hobbs*, 711 F.3d at 714. Servicers have a statutory obligation to engage in loss mitigation before claiming FHA insurance benefits. *See* 12 U.S.C. § 1715u(a) ("upon default or imminent default . . . of any mortgage insured under this subchapter, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure"). A failure to engage in loss mitigation directly bears on whether HUD will have to pay an insurance claim on a foreclosed loan and, as explained by the United States in its Supplemental Statement of Interest, "goes to the heart of the government's bargain with a mortgagee to pay claims only where the loan was legitimately originated and serviced" (Doc. 43 at 8). Loss mitigation protects the insurance fund by reducing the likelihood of foreclosure and of claims for insurance benefits. 24 C.F.R. § 203.605(a); *see also* 70 Fed. Reg. 21572, 21575 (April 26, 2005) (HUD explaining that mortgagees' failure to perform required loss mitigation results in "greater losses to HUD" and "harm the insurance fund").

U.S. Bank argues it "did not impliedly make a false certification merely by requesting payment because the regulations governing submission and payment of claims do not make compliance a 'prerequisite to the government's payment.'" (Doc. 31 at 6) (quoting *Hobbs*, 711 F.3d at 714). U.S. Bank's reliance on *Hobbs* is misplaced. In *Hobbs*, the Sixth Circuit refused to find a condition of

9

payment in "isolated phrases" scattered across several sections of complex Medicare regulations, which would have required a "cut-and-paste approach [that was] not supported by the structure of the regulatory scheme, and [was] not reasonable to expect [of] Medicare providers." 711 F.3d at 715. Here, all of HUD's servicing regulations are contained in Subpart C and expressly link a mortgagee's right to receive and retain FHA insurance benefits to its compliance with HUD's loss mitigation rules. *See* 24 C.F.R. § 203.500 ("It is the intent of the Department that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed.").

Second, U.S. Bank argues that once a loan is endorsed for HUD insurance, the validity of the insurance claim is incontestable and Relator cannot allege that any false certification was material to the government's payment decision (Doc. 25 at 27–29). However the incontestability provision does not mean FCA liability cannot attach as a matter of law, and "does not destroy the causal nexus between the bank's fraud and the government's loss" (Doc. 43 at 6). Although HUD may initially pay insurance benefits even where a mortgagee has failed to mitigate, HUD retains the authority to impose a civil monetary penalty up to three times the paid insurance benefits from the mortgagee who failed to mitigate. 12 U.S.C. § 1735f-14(a)(2), (b)(1)(I); 24 C.F.R. § 30.35(c)(2). The penalty is a "punitive damage" and is "designed to remind mortgagees of the importance of complying with existing regulations and policies that require lenders to engage in loss mitigation." 70 Fed. Reg. at 21576.

U.S. Bank is also incorrect in asserting that compliance with HUD's loss mitigation regulations is not material to HUD's decision to pay an insurance claim (Doc. 25 at 28). "[L]iability does not arise merely because a false statement is included within a claim, but rather the claim itself must be false or fraudulent. A false statement within a claim can only serve to make the entire claim itself fraudulent if that statement is material to the request or demand for money or property." *United*

10

*States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 443 (6th Cir. 2005). U.S. Bank's repeated certification of its compliance with HUD regulations -- beginning with its initial application to become a HUD approved lender, renewed annually in its certifications, and confirmed with each FHA insurance claim filing -- has "a natural tendency to influence" or is "capable of influencing" the payment or receipt of money from the HUD insurance program. *Id.* at 445. Read in the light most favorable to Relator, the Complaint adequately pleads that U.S. Bank violated the FCA when it certified compliance with its continuing duty under HUD regulations on which payment is conditioned.

*Scienter*. The FCA requires a showing that defendant acted "knowingly," which includes "actual knowledge," "deliberate ignorance," or "reckless disregard of the truth or falsity of the information" on which the claim is based. 31 U.S.C. § 3729(b)(1); *see also United States ex rel. Wall v. Circle C Const., L.L.C.*, 697 F.3d 345, 356 (6th Cir. 2012) ("An aggravated form of gross negligence (*i.e.*, reckless disregard) will satisfy the scienter requirement for an FCA violation."). Proof of specific intent to defraud is not required. 31 U.S.C. § 3729(b)(1)(B); *see also Wall*, 697 F.3d at 356.

Construing the Complaint in the light most favorable to Relator and accepting all factual allegations as true, Relator sufficiently alleges U.S. Bank knowingly committed fraud (*see, e.g.*, Doc. 1 at ¶¶ 1, 12, 14–15, 19, 21, 164, 173–74, 181). Relator quotes U.S. Bank's annual HUD certifications, in which a U.S. Bank vice president certified "I know, or am in the position to know" whether U.S. Bank conformed to HUD regulations; based on that knowledge, the employee certified that U.S. Bank complied with and agreed to continue to comply with HUD regulations (*id.* at ¶ 60). The Complaint alleges U.S. Bank was aware HUD's regulations precluded foreclosures without loss mitigation, but disregarded those rules and foreclosed (*id.* at ¶ 70). For the three representative FCA

11

violations, the Complaint alleges U.S. Bank knew it failed to comply with HUD regulations by not scheduling a pre-foreclosure face-to-face meeting with the mortgagors and nevertheless foreclosed on the properties and submitted FHA insurance claims (*id.* at ¶¶ 99, 127, 154, 159).

### U.S. Bank's Alleged Reverse False Claim Violations (Count III)

The FCA imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or . . . avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Allegations of a reverse false claim require "proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation" -- a duty to pay money or property. *Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*, 190 F.3d 729, 736 (6th Cir. 1999). Relator claims U.S. Bank is obligated to repay HUD all money it received for provable false claims (Doc. 1 at ¶¶ 180–83). However, the Complaint does not allege any obligation U.S. Bank owed HUD at the time U.S. Bank made the allegedly false claim. The possibility that U.S. Bank could be found liable to repay a claim or to pay a penalty is not an "obligation." *See Chesbrough*, 655 F.3d at 473 (finding relators did not identify "any concrete obligation" defendant owed the government at the time of the alleged false statement and "merely alleg[ing] that [defendant] is obligated to repay all payments it received from the government" was insufficient to state reverse false claim). Relator's reverse false claim theory fails.

### FCA Public Disclosure Bar

U.S. Bank argues that even if Relator has properly alleged a knowing false claim (which this Court has found as to Counts I and II), the Complaint should nonetheless be dismissed because Relator's allegations have been publicly disclosed and Relator is not an original source. This Court

12

agrees. Relator has failed to demonstrate that the allegations in the Complaint are not based upon publicly disclosed information.

"In addition to encouraging whistleblowers to act as private attorneys-general in bringing suits for the common good, the FCA also seeks to discourage opportunistic plaintiffs from bringing parasitic lawsuits whereby would-be relators merely feed off a previous disclosure of fraud." *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 507 (6th Cir. 2009) (internal quotation marks and citations omitted). The FCA's public disclosure provision, 31 U.S.C. § 3730(e)(4)(A), "limits the subject matter jurisdiction of federal courts over *qui tam* actions based upon previously disclosed information." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 973 (6th Cir. 2005); *see also Whipple*, 782 F.3d at 264 ("The public-disclosure bar . . . is recognized to be a clear and explicit withdrawal of subject matter jurisdiction."). The party asserting that jurisdiction exists has the burden of proof. *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 329 (6th Cir. 1998); *United States ex rel. McKenzie v. BellSouth Telecomms., Inc.*, 123 F.3d 935, 938 (6th Cir. 1997).

The FCA public disclosure bar precludes actions "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). To determine whether the jurisdictional bar applies, a court must consider "first whether there has been any public disclosure of fraud, and second whether the allegations in the instant case are 'based upon' the previously disclosed fraud." *United States ex rel. Gilligan v. Medtronic, Inc.*, 403 F.3d 386, 389 (6th Cir. 2005); *see also Walburn*, 431 F.3d at 974 ("In determining whether the jurisdictional bar of § 3730(e)(4) applies to a relator's case, we consider: '(A) whether there has been a public disclosure; (B) of the allegations or transactions that form the

13

basis of the relator's complaint; and (C) whether the relator's action is 'based upon' the publicly disclosed allegations or transactions.'") (quoting *Jones*, 160 F.3d at 330).

*Public Disclosure.* A disclosure is "public" if it appears "in a Federal criminal, civil, or administrative hearing . . . in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or from the news media." 31 U.S.C. § 3730(e)(4)(A).

In the wake of the mortgage crisis, the public was inundated with media coverage from nearly every news outlet reporting allegations of mortgagees' servicing failures and improper foreclosures (*see* Doc. 25 at 33; *see, e.g.*, Doc. 25-2 at 7–8 (October 15, 2010 Wall Street Journal article noting that "the Office of the Comptroller of the Currency is examining big mortgage servicers' foreclosure practices, a move that could lead to regulatory reprimands of banks for botched foreclosure documentation"), Doc. 25-2 at 36–37 (April 13, 2011 Cleveland Plain Dealer article titled "Nation's largest banks engaged in 'misconduct and negligence' during mortgage crisis, may have foreclosed on some improperly" and identifying U.S. Bank).

The specific issue of whether mortgagees complied with HUD's loss mitigation requirement of meeting face-to-face with borrowers has been litigated nationwide, including in Ohio state courts against U.S. Bank (Doc. 25 at 34). *See, e.g.*, *U.S. Bank, Nat'l Ass'n v. Detweiler*, 191 Ohio App.3d 464 (2010) (finding triable issue existed as to whether U.S. Bank complied with HUD conditions precedent to foreclosure, including face-to-face meeting with mortgagor). In its own Opposition, Relator concedes "all eight Ohio appellate courts" and "courts in at least sixteen other states" have found foreclosures illegal when commenced without following HUD regulations, including foreclosures by U.S. Bank which pre-date the Complaint (Doc. 30 at 26, n.5). *See Poteet*, 552 F.3d at 513 (finding state court complaint sufficient to qualify as a public disclosure).

Long before Relator's Complaint, the government was on notice of allegations that U.S. Bank did not comply with HUD's loss mitigation requirements. In March 2011, the Office of the Comptroller of the Currency issued a public Consent Order concluding that U.S. Bank "engaged in unsafe or unsound banking practices" by "fail[ing] to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training." OCC Consent Order, *In re U.S. Bank, Nat'l Ass'n* (AA-EC-11-18), at 2–3. The Consent Order required that U.S. Bank adopt an Action Plan ensuring it "achieves and maintains effective mortgage servicing, foreclosure, and loss mitigation activities" and addressing "governance and controls to ensure compliance with . . . servicing guides of the Government Sponsored Enterprises ("GSEs") or investors, including those with the Federal Housing Administration." *Id.* at 4–6. The Consent Order also required that U.S. Bank retain an independent consultant to review certain foreclosure actions, including whether U.S. Bank complied with its loss mitigation policies. *Id.* at 5–6.

In addition to the Consent Order, notice of U.S. Bank's loss mitigation violations was published in an April 2011 Federal Reserve report (Doc. 25-3). The report detailed the results of an inter-agency review of fourteen loan servicers, including U.S. Bank, and included an analysis of whether servicers were "in direct communications with borrowers and whether loss-mitigation actions . . . were considered as alternatives to foreclose" (Doc. 25-3 at 6). The review concluded the servicers' foreclosure processes were under-developed, insufficient, and inadequate (Doc. 25-3 at 7).

Relator's allegations that U.S. Bank did not comply with FHA requirements and that HUD lost money because of a mortgagee's non-compliance is also not new information. In May 2011, U.S. Bank agreed to pay HUD $1.2 million to resolve allegations it failed to comply with FHA requirements in connection with twenty-seven mortgages. HUD documented losses of over $465,000

15

in relation to those loans. *See* "HUD Announces $1.2 Million settlement with U.S. Bank," HUD Press Release No. 11-095 (May 20, 2011), *available at* http://portal.hud.gov/hudportal/HUD?src=/press/press_releases_media_advisories/2011/HUDNo.11-095 (last accessed May 11, 2015).

***Complaint "Based Upon" Disclosed Fraud.*** The Sixth Circuit has construed "based upon" to mean "supported by." *McKenzie*, 123 F.3d at 940. "[A] public disclosure reveals fraud if the information is sufficient to put the government on notice of the likelihood of related fraudulent activity." *Poteet*, 552 F.3d at 512. The key issue is whether "enough information exists in the public domain to expose the fraudulent transaction or the allegation of fraud." *Walburn*, 431 F.3d at 975 (quoting *Jones*, 160 F.3d at 331).

Relator contends that no public disclosure specifically addresses U.S. Bank submitting fraudulent claims for FHA mortgage insurance payouts, but rather "describe only generalized problems found throughout the industry in foreclosure processes" (Doc. 30 at 36). A public disclosure need not use the word "fraud" or provide a specific allegation of fraud to trigger the jurisdictional bar. *Poteet*, 552 F.3d at 512; *Dingle v. Bioport Corp.*, 388 F.3d 209, 214 (6th Cir. 2004) ("The words fraud or allegations need not appear in the disclosure for it to qualify."); *United States ex rel. Burns v. A.D. Roe Company, Inc.*, 186 F.3d 717, 724 (6th Cir. 1999) ("[P]ublicly disclosed documents need not use the word "fraud," but need merely to disclose information which creates an inference of impropriety.") (internal quotation marks omitted). "[T]he information suggesting fraud need not even come from the same source as long as the different sources 'together provide information that leads to a conclusion of fraud.'" *Poteet*, 552 F.3d at 512 (quoting *Gilligan*, 403 F.3d at 390).

The primary focus of the Complaint is alleged failure of loss mitigation and servicing. "Any 'action based *even partly* upon public disclosures' will be jurisdictionally barred." *Poteet*, 552 F.3d at 514 (emphasis in original) (quoting *McKenzie,* 123 F.3d at 940). A review of news articles,

16

publicly available court filings, published Federal audit reports and government publications, all pre-dating the Complaint, demonstrate sufficient information was publicly disclosed regarding U.S. Bank's loss mitigation failures from which the Government could infer the alleged fraudulent transactions referenced in the Complaint.

*Original Source*. Having failed to show the FCA claims are not based upon public disclosures, ABLE must prove to be an "original source" of the information. 31 U.S.C. § 3730(e)(4). An original source is "an individual: (1) with direct and independent knowledge of the information on which the allegations are based; and (2) who has voluntarily provided the information to the government before filing an action under the FCA which is based upon the information." *Jones*, 160 F.3d at 333 (citing 31 U.S.C. § 3730(e)(4)(B)). The parties do not dispute that prior to filing the Complaint, ABLE made a "comprehensive disclosure to the government" (Doc. 1 at ¶ 25).

The Complaint does not establish ABLE as an original source. ABLE is "an Ohio non-profit corporation dedicated to providing high-quality legal advocacy in civil matters to help low-income individuals and groups in western Ohio achieve self-reliance, equal justice, and economic opportunity. In furtherance of its mission, ABLE advocates for low- and moderate-income families who participate as mortgagors in the FHA single-family insured mortgage program." (*Id.* at ¶ 26). "ABLE has consulted with many people whose mortgage loans U.S. Bank foreclosed upon without fulfilling its requirement to engage in the Loss Mitigation Measures" and has "unique information" through its "contacts, experiences, research, and investigation" about how mortgagors were denied Loss Mitigation Measures (*id.* at ¶¶ 13–17). ABLE claims to be "uniquely aware" of three examples of U.S. Bank's FCA violations through "direct contacts and communications" with former U.S. Bank mortgagors and claims to have met with those mortgagors (*id.* at ¶¶ 73, 84, 112, 139; Doc. 46 at 41:1–9) (Relator's counsel explaining "the complaint itself, it makes clear that [ABLE has] gone and

17

spoken with homeowners who have been affected by U.S. Bank's actions. That's the original information that they have."). At the Motion hearing, Relator's counsel stated ABLE is not "required to say exactly how we went and found" the three mortgagors (Doc. 46 at 42:21–22).

ABLE is not the model whistleblowing insider contemplated by the FCA and does not claim to have inside information on the mortgage industry or U.S. Bank's loss mitigation practices. ABLE's knowledge of U.S. Bank's alleged false claims is neither direct nor independent, and adds nothing to the public disclosures that have already been made. ABLE was not the first to inform the government of the alleged fraud being perpetrated by U.S. Bank. ABLE filed the Complaint approximately three years after the alleged FCA violations and two years after the Consent Order. ABLE derived the facts relating to the three representative examples from conversations with the foreclosed mortgagors, whose own foreclosure actions are public record. *See United States ex rel. Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.,* 958 F. Supp. 2d 846, 864 (6th Cir. 2013) (finding relator was not an original source where "most if not all of Relator's information appears to come from her husband"); *United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1006–07 (10th Cir. 1996) (A relator's knowing "must not be derivative of the information of others, even if those others may qualify as original sources."). The Complaint merely strings together information ABLE could have gleaned from news reports, government publications, court filings, publicly available documents, and conversations with individuals who participated in the events at issue. ABLE does not become an original source of information by putting its own spin on prior public disclosures of U.S. Bank's regulatory failures.

18

## CONCLUSION

Because Relator's FCA claims against U.S. Bank are barred by the public disclosure doctrine, U.S. Bank's Motion to dismiss is granted.

IT IS SO ORDERED.

            s/ *Jack Zouhary*
            JACK ZOUHARY
            U.S. DISTRICT JUDGE

May 12, 2015